# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEVE SACHS,<br><br>               Plaintiff,<br><br>v.<br><br>STEVEN SPRAGUE, ET AL,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      CIVIL ACTION<br>    NO. 04-30032-MAP |

### DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR ENTRY OF A PROTECTIVE ORDER
### TO STAY DISCOVERY PURSUANT TO FED. R. CIV. P. 26(C)

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Defendants Messrs. Sprague, Feeney, Bagalay, Bushnell, Gilder and McConnaughy and nominal defendant Wave Systems Corp. ("Defendants") hereby respectfully submit this Memorandum of Law in Support of Their Motion for Entry of a Protective Order to Stay Discovery Pursuant to Fed. R. Civ. P. 26(c).

## Factual And Procedural Background

Wave Systems Corp. ("Wave" or the "Company") is incorporated in Delaware and maintains its principal place of business in Lee, Massachusetts.  Wave is a developer of trusted computing applications, services, and infrastructures designed to protect the security of data in personal and business computing.  On December 18, 2003 the Company announced that the Securities and Exchange Commission ("SEC") had begun an investigation of certain statements Wave made to the market and trading by certain of Wave's management during August, 2003 (though no Wells notice has issued and no civil injunctive proceedings have been brought to date).  Wave's stock price dropped from $1.81 on December 17 to $1.50 on December 19, 2003.  Predictably, securities class actions alleging fraud by hindsight followed the drop in stock price, along with follow-form shareholder derivative suits, all currently pending in this Court.

On September 1, 2004, this Court held a status conference in both cases, and among other things, ordered that the three derivative actions be consolidated into one action (the "Derivative Litigation"), and that the pending securities actions be consolidated into one action (the "Securities Litigation").  This Court ordered that the Plaintiffs in both litigations file consolidated amended complaints.  The consolidated amended complaint is due to be filed in the Derivative Litigation on October 21, 2004, and the consolidated amended complaint is due to be filed in the Securities Litigation on October 15, 2004.  Accordingly, in both actions there is not yet even an operative complaint.

In this Derivative Litigation, there has been no Rule 26(f) discovery conference, and neither party has provided Rule 26(a) initial disclosures. Nonetheless, on September 21, 2004, in total disregard of Federal Rule of Civil Procedure 26 and Local Rule 26.2, and in a classic example of filing a baseless action in the hopes that discovery may later turn up a claim, the Plaintiffs in the Derivative Litigation served far-reaching interrogatories and requests for production of documents. *See* Exs. A and B respectively.

### Summary Of Grounds For Motion

The Plaintiffs' brazen attempt to serve discovery here, in contravention of the "absolute bar on . . . conducting any discovery whatsoever … until [the party seeking discovery] has first provided the detailed disclosures mandated by Fed. R. Civ. P. 26(a)(1) and Local Rule 26.2(A),"[1] must be blocked. Wholly apart from the Plaintiffs' attempt to launch a fishing expedition before they have even obtained their angling license, the Plaintiffs' purported discovery in this Derivative Litigation is *impermissible as a matter of law*. In addition, the discovery constitutes an abusive litigation tactic that offends Congress' intent behind its legislative reform of securities and related tag-along litigation. Finally, as a matter of common sense, discovery is entirely unworkable at this embryonic stage of the litigation, where the Plaintiffs have yet to even file their consolidated amended complaint.

Accordingly, the Defendants respectfully request that this Honorable Court enter a protective order staying all discovery until resolution of the Defendants' contemplated motion to dismiss this Derivative Litigation pursuant to Rule 23.1, and until resolution of the contemplated motion to dismiss the Securities Litigation.

---

[1] *United States v. All Funds, Monies, Secs., Mut. Fund Shares and Stocks*, 162 F.R.D. 4, 6 (D. Mass. 1995), *aff'd*, 81 F.3d 147 (1st Cir. 1996); *see also* Fed. R. Civ. P. 26(d) ("a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)").

## I.  DISCOVERY IS IMPERMISSIBLE AT THIS STAGE PURSUANT TO THE SUBSTANTIVE LAW GUIDING DERIVATIVE LITIGATION AND RULE 23.1

Pursuant to Fed. R. Civ. P. 23.1, a complaint in a shareholder derivative action must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for his failure to obtain the action or for not making the effort." *Id.*  The demand requirement embodied in Rule 23.1 safeguards a fundamental tenet of corporate governance, as explained by the First Circuit:

> The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged.

*Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977).  It has therefore long been established in the First Circuit that Rule 23.1 "is not a technical rule of pleading, but one of substantive right [and accordingly] the 'particularity' must appear in the pleading itself; *the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case.* Indeed, if the requirement could be met otherwise, it would be meaningless." *In re Kaufmann Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973) (citation omitted).

Here, Defendants do not believe that Plaintiffs have met or can meet the substantive burden imputed by Rule 23.1.  They intend to move to dismiss and Defendants are entitled to a ruling on the substantive issue of Rule 23.1 without first providing burdensome discovery.

Indeed, the First Circuit deems strict application of Rule 23.1 to be so critical that in *Gonzales Turul v. Rogatol Distrib., Inc.*, 951 F.2d 1 (1st Cir. 1991) the court reversed and dismissed a shareholder derivative action that was tried to verdict (in plaintiff's favor), solely because the complaint failed to allege either demand or futility of demand.  The First Circuit reasoned, in logic fully applicable to this motion, that *"[f]utility of demand will not be decided with the benefit of hindsight." Id.* at 3.  In this case the Plaintiffs seek just that by filing a derivative complaint alleging that demand is futile in the hopes that they might then obtain

discovery to prove what must have been pled with particularity in the first instance. As the Southern District of New York has held, applying Rule 23.1 principles that are analytically indistinguishable from that of the First Circuit, "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991) (dismissing derivative suit and refusing to permit discovery to bolster demand-refused allegations); s*ee generally, MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987) ("discovery cannot be used as a vehicle for discovering a right of action") (citation omitted).

The First Circuit's "vigorous enforcement" of Rule 23.1 fully comports with the stringent requirements of Delaware law, which governs here because Wave is incorporated in the State of Delaware.[2] Under applicable Delaware law, and in furtherance of the purposes of the demand requirement, there is a flat bar on discovery in shareholder derivative actions until the futility of demand has been adjudicated based on the allegations of the complaint. "In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility." *Beam ex rel. Martha Stewart Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1056 (Del. 2004) (citing *Rales v. Blasband,* 634 A.2d 927, 934 n.10 (Del. 1993) ("[D]erivative plaintiffs . . . are not entitled to discovery to assist their compliance with Rule 23.1"); *Levine v. Smith*, 591 A.2d 194, 209 (Del. 1991) (refusing to extend the availability of limited discovery to either demand refused cases or demand excused cases)). Accordingly, Delaware courts routinely bar plaintiffs' attempts to establish demand futility through discovery. *See, e.g.*, *Scattered Corp. v. Chicago Stock Exchange, Inc.*, 701 A.2d 70 (Del. 1997) (affirming stay of discovery pending motion to dismiss: "A plaintiff's standing to sue in a derivative suit, whether based on demand-refused or demand-

---

[2]    *Kamen v. Kemper Fin. Servs, Inc.*, 500 U.S. 90, 108-09 (1991) ("[The court] must apply the demand futility exception as it is defined by the law of the State of incorporation.").

excused [*i.e.* futility], must be determined on the basis of the well-pleaded allegations of the complaint" and accordingly "plaintiffs in a derivative suit are not entitled to discovery to assist in their compliance with the particularized pleading requirement of Rule 23.1"); *Stotland v. GAF Corp.*, No. 6876, 1983 WL 21371, at * 7 (Del. Ch. Sept. 1, 1983) (citing *In Re Kauffman Mut. Fund Actions*, 479 F.2d 257 (1st Cir. 1973)) (granting motion to stay discovery pending a motion to dismiss: "[p]laintiffs are not entitled to take discovery in order to prove allegations of futility").[3]

In sum, permitting the Plaintiffs to take discovery now -- before they have even filed their consolidated amended complaint and before resolution of the Defendants' motion to dismiss -- would effectively eviscerate Rule 23.1's stringent and prudent requirements. The Plaintiffs' purported discovery is simply impermissible under the law of the First Circuit and the applicable law of Delaware, and the Defendants' motion for a stay and protective order should be granted.

## II. THIS COURT SHOULD ISSUE A PROTECTIVE ORDER TO PREVENT THE PLAINTIFFS' BURDENSOME AND POTENTIALLY DUPLICATIVE DISCOVERY AND TO EFFECTUATE THE PURPOSES OF THE PSLRA

Pursuant to the Federal Rules of Civil Procedure 26(c), this Court may "for good cause shown" make "any order which justice requires to protect a party or person from annoyance,

---

[3]        Similarly, federal courts reviewing motions to stay discovery pending resolution of a Rule 23.1 motion, applying the law of Delaware, also routinely grant motions to stay discovery:

> In conjunction with the present motion, Lewis filed a motion for this Court's permission to take limited discovery regarding the reasons for the Board's refusal of Lewis' demand for legal action. Ordinarily, there is a presumption that the demand refusal was the product of a valid business judgment. It is the plaintiff-shareholder's burden to overcome that presumption, and if he or she can plead such facts that would raise a reasonable doubt about the presumption's validity, discovery would be permitted. Because that is not the case here, we deny Lewis' motion to take discovery.

*Lewis v. Hilton*, 648 F. Supp. 725, 728 n.1 (N.D. Ill. 1986) (applying Delaware law and noting at n.2 that the same standard applies in demand excused  -- *i.e.* futility cases -- as in demand refused cases).

embarrassment, oppression, or undue burden or expense . . . ."  In this spin-off litigation arising from virtually identical facts as are alleged in the Securities Litigation, the Plaintiffs seek far-reaching discovery going to both the merits of this case and the Securities Litigation.  *See* Exs. A and B.

Importantly, the same discovery sought here is entirely unavailable in the Securities Litigation pursuant to the PSLRA's stay on discovery until Defendants' motion to dismiss is resolved.  The PSLRA's stay effectuates Congress' intent of protecting corporate and individual defendants named in stock-drop lawsuits from the burdens, expense and distraction of discovery before the legal sufficiency of the pleadings is even determined.  The stay bars discovery even of state law claims pending alongside securities claims as well as state court actions.  Here, the pending Derivative Litigation is clearly closely related to the pending Securities Litigation.  This Court should not allow Congress' purpose to be circumvented with as-of-yet needless and potentially duplicative discovery, simply because the claims raised in this action are pending in a separate federal action, rather than in the Securities Litigation or in state court.

A.    **The PSLRA Is Intended To Prevent Abusive Practices In Securities And Related State Court Actions By Staying Discovery Until Resolution Of Defendants' Motion To Dismiss**

The PSLRA provides that "in any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . ."  15 U.S.C. § 78u-4(b)(3)(B).  Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, *see* H.R. REP. NO. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 735, or that the plaintiff will find during discovery some sustainable claim not alleged in an otherwise unsustainable complaint,

see S. REP. NO. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693.[4]  *See Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003) ("The rationale underlying the stay was to prevent costly 'extensive discovery and disruption of normal business activities' until a court could determine whether a filed suit had merit, by ruling on the defendant's motion to dismiss. The stay protected defendants from plaintiffs who would use discovery to substantiate an initially frivolous complaint.").

The PSLRA's safeguards did not have the desired effect, primarily because plaintiffs' lawyers utilized state court proceedings to circumvent Congress' purposes.  Congress responded with the passage of the Securities Litigation Uniform Standards Act ("SLUSA') in 1998.  *Id.* The purpose of SLUSA was "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court." *Id.*  Congress addressed these problems through SLUSA, in part, "by granting the power to federal court judges to quash discovery in state court actions if discovery in the state case

---

[4]     Accordingly, courts have consistently held that the stay applies to state law claims as well as securities claims.  *Sarantakis v. Gruttadauria*, No. 02-1609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) ("Lifting the mandatory stay as to the closely related state claims would be equivalent to lifting the stay for the federal claims and would be an improper end run around the PSLRA.") (citations and internal quotation omitted); *SG Cowen Secs. Corp. v. United States Dist. Court for the N. Dist. of Calif.,* 189 F.3d 909, 913 n.1 (9th Cir. 1999) (granting petition for writ of mandamus to vacate district court's order allowing limited discovery and rejecting plaintiffs' argument that discovery is permitted where plaintiffs assert state law claims, reasoning that that would improperly circumvent the automatic stay provision of the PSLRA); *Angell Inv., L.L.C. v. Purizer Corp.*, No. 01-6359, 2001 WL 1345996, at *2 (N.D. Ill. Oct. 31, 2001) (rejecting argument that "the PSLRA's discovery stay . . . does not apply" to state law claims;); *In re Trump Hotel S'holder Derivative Litig.*, No. 96-7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (staying discovery of entire action, including derivative claims, based on single securities cause of action: "There is simply nothing in either the text or the legislative history or the PSLRA that suggests that Congress intended to excerpt federal securities actions in which there happens to be both diversity of citizenship and pendent state law claims."); *Benbow v. Aspen Technology, Inc.*, No. Civ. A. 02-2881, 2003 WL 1873910 (E.D. La. Apr. 11, 2003) ("It is clear that plaintiffs' claims, state and federal, arise from precisely the same factual circumstances, and therefore require the same discovery generally.  Thus, lifting the mandatory stay as to the closely related if not substantially similar State claims would be tantamount to lifting the stay as to the federal securities claim."); *Winer Family Trust v. Queen*, No. Civ. A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) (recognizing that PSLRA stay applies to breach of fiduciary duty claims brought along with securities claims).

conflicted with an order of the federal court" thus giving "federal judges tools to combat abuse of discovery proceedings in individual actions that may be brought in State court." *Id.*

**B.    The Plaintiffs Should Not Be Permitted To End-Run The PSLRA With Potentially Duplicative Discovery Simply Because Their Claims Are Pending In A Separate Federal Action Based Upon Diversity Jurisdiction**

Undoubtedly, if this action were maintained in state court, the PSLRA stay on discovery, applicable to state courts through SLUSA, would apply. *E.g.*, *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946 (S.D. Ohio 2003) (Federal court entertaining securities litigation staying discovery in related state court stockholder derivative suits under PSLRA). But because the action is pending in federal court under diversity jurisdiction, it is arguably not within the express reach of the PSLRA's plain text.

In light of the power conferred upon by this Court by Rule 26(c), however, the jurisdictional limitations inherent in the text of the PSLRA's stay (as applied to state court actions through SLUSA) become less important. In particular, this Court has broad discretion to stay discovery upon a showing a good cause, depending on the breadth and burden of the requested discovery and the potential prejudice to the party opposing the stay. *See In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003). In *AOL*, the court, pursuant to Rule 26(c), ordered a limited stay of all non-ERISA-specific discovery in a federal ERISA action arising out of substantially the same facts as a related securities action. The Court found that the breadth of the discovery was burdensome, seeking much of the same information that would later be requested in the securities litigation should the defendants' 12(b)(6) motion be denied, and there was no credible prejudice to the plaintiffs. The court also noted that issuing the stay would serve the purposes of the PSLRA:

> If plaintiffs in a securities case could, by tacking ERISA claims onto underlying Securities actions, obtain discovery to which they would otherwise not be entitled under the PSLRA, then the PSLRA's mandatory stay provision would, as a practical matter, never apply. Congress could not possibly have intended for the PSLRA to be so easily marginalized.

*Id.* at *2.

Here, the Plaintiffs' far reaching discovery seeks a broad range of information that, should the Securities Litigation survive a motion to dismiss, will inevitably be requested again. As to any arguably non-duplicative discovery, aside from the fact that discovery is not permissible on grounds related to Rule 23.1 (as explained in Part I) this action may very well be dismissed, rendering the Plaintiffs' premature discovery ultimately unnecessary and wasteful. The Plaintiffs cannot legitimately claim prejudice by a stay -- they have yet to even file their amended complaint. And as in *AOL*, permitting discovery here, in a case based on virtually the same allegations as are made in the Securities Litigation, would serve to undermine the very purposes of the PSLRA. The Defendants should not be subject to the Plaintiffs' costly fishing expedition before the legal sufficiency of the pleadings has been determined. The Defendants' motion for a protective order should be granted on these grounds as well.

## III.  PLAINTIFFS' DISCOVERY IS PREMATURE AND UNWORKABLE

As a practical matter, the Plaintiffs' discovery is both premature and unworkable. Here, the Plaintiffs have yet to even file their consolidated amended complaint, risking the futility of the expense and distraction of discovery in the event that the case is dismissed. Further, without the Plaintiffs' complaint, there will be no basis from which to discern whether any of the purported discovery is appropriate, relevant, burdensome, overbroad, vague, or calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26. In a word, the Plaintiffs are attempting to conduct discovery in a vacuum, devoid of a legal construct from which the appropriate scope of discovery can be discerned. The Defendants will be prejudiced in their

ability to respond within the scope of the claims alleged against them, because they cannot know what those claims are.

Moreover, the discovery is premature pursuant to both the Federal Rules of Civil Procedure and the Local Rules. The parties have not held a conference pursuant to Rule 26(f), a prerequisite to seeking discovery under the Federal Rules. Fed. R. Civ. P. 26(d) ("a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). Nor have their been any initial disclosures, a prerequisite to initiating discovery under the Local Rules. Local Rule 26.2(A) ("before a party may initiate discovery, that party must provide to other parties disclosure of the information and materials called for by Fed. R. Civ. P. 26(a)(1)"). Indeed, the First Circuit imposes an "absolute bar" on conducting any discovery "whatsoever … until [the party seeking discovery] has first provided the detailed disclosures mandated by Fed. R. Civ. P. 26(a)(1) and Local Rule 26.2(A)."[5]  The discovery should be stayed.

**<u>Conclusion</u>**

For the foregoing reasons, the Defendants' Motion for Entry of a Protective Order to Stay Discovery Pursuant to Fed. R. Civ. P. 26(c) should be granted.

---

[5]      *All Funds*, 162 F.R.D. at 6.

Respectfully submitted,

**STEVEN SPRAGUE, GERALD T.
FEENEY, JOHN E. BAGALAY, JR.,
NOLAN BUSHNELL, GEORGE
GILDER, JOHN E. McCONNAUGHY,
JR. AND NOMINAL DEFENDANT
WAVE SYSTEMS CORP.**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated:  October 5, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served electronically and via mail upon the attorney of record for each party on October 5, 2004.

/s/ Michael D. Blanchard
Michael D. Blanchard

# EXHIBIT A

CTDOCS:1542982.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVE SACHS, Derivatively On Behalf of WAVE SYSTEMS CORP., | ) Lead Civil Action No. 04-30032-MAP ) Consolidated with  04-30038-MAP |
| Plaintiff, | )                              04-30044-MAP ) ) |
| vs. | ) ) |
| STEVEN SPRAGUE, GERARD T. FEENEY, JOHN E. BAGALAY, JR., NOLAN BUSHNELL, GEORGE GILDER AND JOHN E. MCCONNAUGHY, JR., | ) ) ) ) |
| Defendants, | ) ) |
| - and - | ) ) |
| WAVE SYSTEMS CORP., a Delaware corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Please take notice that, pursuant to Rule 33 of the Federal Rules of Civil Procedure,

plaintiff requests that defendants, Steven Sprague, Gerard T. Feeney, John E. Bagalay, Jr., Nolan

Bushnell, George Gilder, John E. McConnaughy, Jr., and nominal defendant, Wave Systems

Corp., answer the following interrogatories in writing, separately and under oath within thirty

days.

## DEFINITIONS

In addition to District of Massachusetts Local Rule 26.5, the following definitions apply:

1.      "Wave" or the "Company" means nominal defendant Wave Systems Corp., its

predecessors, successors, parents, subsidiaries, including divisions, affiliates, operating units,

controlling persons, controlled persons, officers, directors, employees, representatives or agents.

377159

2.      "Individual Defendant" or "Individual Defendants" refers to Steven Sprague, Gerard T. Feeney, John E. Bagalay, Jr., Nolan Bushnell, George Gilder and John E. McConnaughy, Jr., as well as their respective agents, attorneys, advisors or anyone acting or purporting to act on their behalf.

3.      "Communication" or "communications" refers to any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind, computer electronics or electronic data, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind.

4.      "Identify," when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

5.      "Identify," when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (*i.e.* correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

6.      "Meeting" refers to a formal or informal meeting in person or by any other means of communications, including by telephone.

7.      "Person" or "Persons" shall include natural persons, as well as firms, partnerships, associations, institutions, joint ventures, government entities, administrative agencies, professional associations, corporations, hospitals, and every other organization of whatever sort.

8.      "Telephone Records" means, without limitation, telephone directories, Rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local and long distance).

9.      "Document" is used in its broadest sense and is intended to be comprehensive and equal in scope to usage of this term in Federal Rule of Civil Procedure 34(a).   A copy or duplicate of a document that has any non-conforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate document within the meaning of this term.   Documents include, by way of example only, memoranda, letters, envelopes, correspondence,  notes, whether handwritten or otherwise, Post-its, bulletins, charges, directives, expense records,  travel records, accounting work papers, photographs, film, recordings, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, notes and minutes of meetings, resolutions, interoffice memoranda, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, journals, telephone records, desk calendars, appointment books, circulars, charts, transcripts, directories, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities.

10.     The term "document" also includes "Electronic Data" which means any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of

mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memories, hard disks, floppy disks, zip drives, CD-ROM, Bernoulli Boxes and their equivalents, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM and RAM of any kind) on or in any other vehicle for digital data storage and/or transmittal.

11.    The terms "you" and "your" refer to each answering defendant and include each of their predecessors, parents, partners, present and former divisions, branches, affiliates or other entities under common control, each of their authorized agents, attorneys, servants, employees, officers, directors, representatives and any other person acting on any of their behalf.

12.    All singular terms include the plural, and all plural terms include the singular.

13.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope and are not to be interpreted in such a manner as to exclude any information within the scope of the request.

14.     The use of a verb in any tense, mood or voice shall be construed as the use of the verb in all other tenses, moods or voices, whenever necessary to bring within the scope of any interrogatory all information that might otherwise be construed to be outside its scope.

15.     The terms "all," "any" and "each" are to be construed as all, any and each.

16.     "Including" means "including but not limited to."

## INSTRUCTIONS

1.     These interrogatories shall be deemed to be continuing, and you are required to supplement your answers based upon any information of which you become aware after you serve your initial responses to these interrogatories, in accordance with the Federal Rules of Civil Procedure.

2.     If you are unable to answer or respond fully to any interrogatory, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full.

3.     To the extent any interrogatory is objected to, set forth all reasons therefor. If you claim privilege as a ground for not answering any interrogatory in whole or in part, describe the factual basis for your claim of privilege in sufficient detail so as to permit the court to adjudicate the validity of the claim. If you object in part to any interrogatory, answer the remainder completely.

4.     If any interrogatory does not apply to you, you must state "not applicable" with respect to such interrogatory and state the factual basis for such contention.

5.     In answering each interrogatory state whether the information furnished is within the personal knowledge of the person answering and, if not, the name of each person to whom the information is a matter of personal knowledge.

6.    In answering each interrogatory identify each person who assisted or participated in preparing or supplying any of the information given in the answer to or relied on in preparing answers to that interrogatory.

7.    If an interrogatory requests that you identify a person or persons, for each such person, state the following information:

    (a)    whether the person is and/or has been employed by the Company;

    (b)    the dates of each such person's employment with the Company;

    (c)    the employment position(s) held by the person during the Relevant Period;

    (d)    the nature of any other relationship the person does or has maintained with the Company;

    (e)    the subject matter or nature of responsive information within the person's knowledge, custody or control;

    (f)    the person's current or last known home and business addresses; and

    (g)    the person's current or last known home and business telephone numbers.

8.    If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not responding to an Interrogatory, or producing any document, or any part thereof, each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination whether the claim of privilege is valid, shall be set forth in complete detail.    With respect to a document to which a privilege is being claimed, the following information at the very minimum should be provided:

    (a)    date;

    (b)    author;

    (c)    names and addresses of any persons who received copies, if any;

(d)  title;

(e)  type of tangible thing, letter, memorandum, telegram, report, etc.; and

(f)  general description of the subject matter (without revealing privileged information).

9.      If any of the documents referred to in response to these interrogatories have been lost, destroyed, removed from your files or altered in any manner after the document was initially made, taken or prepared, provide the following information:

(a)  a description of the document;

(b)  the date of each such occurrence;

(c)  a description of each such occurrence, including the nature of each alteration and the circumstances of the loss, destruction or removal;

(d)  the reason for each such occurrence;

(e)  the name, address and job title of the persons who took such action;

(f)  the name, address and job title of the persons who authorized, directed or acknowledged the action at the time it was taken; and

(g)  whether there has been any attempt to produce, duplicate or find a copy of any lost, destroyed, or originally unaltered documents, and, if so, a description of the attempt and its result.

## **INTERROGATORIES**

INTERROGATORY NO. 1:  List all business relationships or business affiliations between you and any of the Individual Defendants.

INTERROGATORY NO. 2: Identify all communications or meetings you or others acting at your behest have had with KPMG, LLP. For each such communication or meeting, specify the date, location, method of communication, purpose and any person who participated in the meeting or communication or was the designated recipient of the communication (whether held in person, telephonically, by videolink or otherwise).

INTERROGATORY NO. 3: Identify each meeting you or anyone acting at your behest attended, either telephonically, by videolink or in person, which concerned Wave. For each such meeting, specify the date, location and purpose of the meeting.

INTERROGATORY NO. 4: Identify each meeting you or anyone acting at your behest attended, either telephonically, by videolink or in person, which concerned revenue from contracts with IBM and Intel. For each such meeting, specify the date, location and purpose of the meeting.

INTERROGATORY NO. 5: Identify the business entities in which you are or you have been a founder, owner, officer, director, general or limited partner, manager or beneficial owner, including the full name of the business operation and the address of its principal office or location of its facility.

INTERROGATORY NO. 6: State the date, location and persons who attended all meetings of the Board of Directors of Wave and any committees thereof from July 1, 2002 to the present.

INTERROGATORY NO. 7: State the date, location and persons who attended all meetings of Wave's Audit Committee from July 1, 2002 to the present.

INTERROGATORY NO. 8:  State the date, location and persons who attended all meetings of Wave's Compensation Committee from July 1, 2002 to the present.

INTERROGATORY NO. 9:  State the date, location and persons who attended all meetings of Wave's Nominating Committee from July 1, 2002 to the present.

INTERROGATORY NO. 10:State the date, location and persons who attended all meetings of Wave's Executive Committee from July 1, 2002 to the present.

INTERROGATORY NO. 11:Identify the duties and responsibilities of Wave's Board of Directors and all committees thereof.

INTERROGATORY NO. 12:List all personal relationships or affiliations between you and any of the Individual Defendants (*i.e.,* social affiliations, charities, schools, clubs, etc.).

INTERROGATORY NO. 13:Specifically identify the search criteria used by you to search for e-mails or stored electronic files to respond to plaintiffs' Interrogatories or Requests for Documents.

Dated: September 21, 2004.

THE PLAINTIFFS, Derivatively on behalf of
WAVE SYSTEMS CORP.

By: _____
KEITH A. MINOFF
ROBINSON DONOVAN, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115
Telephone: 413/732-2301
Facsimile: 413/785-4658
BBO No. 551536

Liaison Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

...reby certify that on this day a true copy of
... above document was served upon the
...torney of record for each party by mail/by hand.

Date: 9/21/04 _____

BRIAN J. ROBBINS
JEFFREY P. FINK
ROBBINS UMEDA & FINK, LLP
1010 Second Ave., Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

FEDERMAN & SHERWOOD
WILLIAM FEDERMAN
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone: 405/235-1560
Facsimile: 405/239-2112

LAW OFFICES OF ALFRED G. YATES, JR.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: 800/391-5164
Facsimile: 412/471-1033

Co-Lead Counsel for Plaintiffs

FARUQI & FARUQI, LLP
NADEEM FARUQI
SHANE T. ROWLEY
DAVID H. LEVENTHAL
320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330
Facsimile: 212/983-9331

Counsel for Plaintiff Harvey

377159

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVE SACHS, Derivatively On Behalf of WAVE SYSTEMS CORP., <br><br>                           Plaintiff, <br><br> vs. <br><br> STEVEN SPRAGUE, GERARD T. FEENEY, JOHN E. BAGALAY, JR., NOLAN BUSHNELL, GEORGE GILDER AND JOHN E. MCCONNAUGHY, JR., <br><br>                           Defendants, <br><br>   -  and – <br><br> WAVE SYSTEMS CORP., a Delaware corporation, <br><br>                        Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Lead Civil Action No. 04-30032-MAP <br><br> Consolidated with 04-30038-MAP <br>                              04-30044-MAP |

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Please take notice that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiffs request that defendants, Steven Sprague, Gerard T. Feeney, John E. Bagalay, Jr., Nolan Bushnell, George Gilder, John E. McConnaughy, Jr., and nominal defendant, Wave Systems Corp., produce for inspection and copying the documents requested below, at ROBINSON DONOVAN, P.C., 1500 Main Street, Suite 1600, Springfield, MA 01115, within thirty days.

### DEFINITIONS

In addition to District of Massachusetts Local Rule 26.5, the following definitions apply:

1.     "Wave" or the "Company" means nominal defendant Wave Systems Corp., its predecessors, successors, parents, subsidiaries, including divisions, affiliates, operating units, controlling persons, controlled persons, officers, directors, employees, representatives or agents.

377152

2

2.      "Individual Defendant" or "Individual Defendants" refers to Steven Sprague, Gerard T. Feeney, John E. Bagalay, Jr., Nolan Bushnell, George Gilder and John E. McConnaughy, Jr., as well as their respective agents, attorneys, advisors or anyone acting or purporting to act on their behalf.

3.      "Communication" or "communications" refers to any exchange of information by any means of transmission, sending or receipt of information of any kind by or through any means including, but not limited to, speech, writings, documents, language (machine, foreign or otherwise) of any kind, computer electronics or electronic data, sound, radio or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types or other media of any kind.

4.      "Compensation" shall be interpreted broadly and includes, but is not limited to, cash, stock, loans, bonuses and debt forgiveness.

5.      "Statements" means those statements made by Defendants referenced in the *Sachs v. Sprague* Verified Shareholder Derivative Complaint.

6.      "Identify," when used to refer to a natural person, shall mean to set forth that person's: (i) full name and title, if any; (ii) present or last known address; (iii) present or last known business and home telephone number(s); and (iv) present or last known employer.

7.      "Identify," when used to refer to a document, shall mean: (i) the date of each document; (ii) the type of each such document (*i.e.* correspondence, memorandum, business record, etc.); (iii) the identity of the author(s) or preparer(s) of each such document; and (iv) the present location of each such document or copies thereof.

8.      "NASD" means National Association of Securities Dealers, Inc.

9.      "Meeting" refers to a formal or informal meeting in person or by any other means of communications, including by telephone.

3

10.    "Person" or "persons" shall include natural persons, as well as firms, partnerships, associations, institutions, joint ventures, government entities, administrative agencies, professional associations, corporations, hospitals and every other organization of whatever sort.

11.    "SEC" means the Securities and Exchange Commission, including its national regional and branch offices and commissioners, directors, administrators, branch chiefs, attorneys, accountants, investigators, paralegals and staff.

12.    "SEC filings" means all documents filed or prepared for the purpose of filing with the SEC and any other state or federal regulatory agency, including, but not limited to, Forms 8-K, 10-K, 10-Q, Schedules 13-D, 14A, 14D-1 and 14D-9 and any drafts thereof or amendments thereto.

13.    "Telephone Records" means, without limitation, telephone directories, Rolodexes, messages, telephone logs, recordings of telephone conversations and telephone bills (local and long distance).

14.    "Document" is used in its broadest sense and is intended to be comprehensive and equal in scope to usage of this term in Rule 34 (a) of the Federal Rules of Civil Procedure. A copy or duplicate of a document that has any non-conforming notes, marginal annotations or other markings, and any preliminary version, draft or revision of the foregoing is a separate document within the meaning of this term. Documents include, by way of example only, memoranda, letters, envelopes, correspondence, notes, whether handwritten or otherwise, Post-its, bulletins, charges, directives, expense records, travel records, accounting work papers, photographs, film, recordings, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, videotape, magnetic or optical disks, "floppy disks," "PowerPoint" or other presentation software systems, telegrams, mailgrams, notes and minutes of meetings, resolutions, interoffice memoranda, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, journals,

4

telephone records, desk calendars, appointment books, circulars, charts, transcripts, directories, news releases, trade releases, advertisements, press books, teletype messages, licenses, financial statements, stenographers' notebooks, punchcards, computer printouts and data, telecopier or facsimile transmissions and printouts, letters of credit, stock certificates and securities.

15.    The term "document" also includes "Electronic Data" which means any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment.  "Electronic data" also includes any and all items stored on computer memories, hard disks, floppy disks, zip drives, CD-ROM, Bernoulli Boxes and their equivalents, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips (including, but not limited to, EPROM, PROM, ROM and RAM of any kind) on or in any other vehicle for digital data storage and/or transmittal.

16.    The term "concerning" means about, addressing, alluding to, analyzing, commenting upon, comprising, in connection with, considering, constituting, containing, defining, describing, determining, disclosing, discussing, embodying, evaluating, evidencing, examining, explaining, regarding, in respect of, memorializing, mentioning, noting, pertaining to, recording, referring to, relating to, reflecting, regarding, relevant to, respecting, responding to, setting forth, showing, stating, studying, summarizing, supporting, or touching upon, either

377152

5

directly or indirectly, in whole or in part, and should be given the broadest possible scope consistent with the Federal Rules of Civil Procedure.

17.    The terms "you" and "your" refer to the person responding to these requests and include each of his/her predecessors, parents, partners, present and former divisions, branches, affiliates or other entities under common control, each of their authorized agents, attorneys, servants, employees, officers, directors, representatives and any other person acting on his/her behalf.

18.    All singular terms include the plural, and all plural terms include the singular.

19.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside its scope and are not to be interpreted in such a manner as to exclude any information within the scope of the request.

20.    The use of a verb in any tense, mood or voice shall be construed as the use of the verb in all other tenses, moods or voices, whenever necessary to bring within the scope of any interrogatory all information that might otherwise be construed to be outside its scope.

21.    The terms "all" "any" and "each" are to be construed as all, any and each.

22.    "Including" means "including but not limited to."

## RELEVANT PERIOD

The Relevant Period, unless otherwise stated in a request, shall mean the period from July 1, 2002 through the date of production, including all documents or information that relates in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received before or after that period.

## INSTRUCTIONS

1.    The instructions set forth in Rules 26 (to the extent applicable) and 34 of the Federal Rules of Civil Procedure are incorporated by reference herein.

6

2.    The terms defined above and the individual requests for production and inspection should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.    These document requests are continuing and require supplemental responses as specified in Federal Rule of Civil Procedure 26(e) if you obtain additional information called for by the request between the time of the original response and the time set for trial.  Each supplemental response shall be served on plaintiffs no later than thirty days after the discovery of the further information, and in no event shall any supplemental response be served later than the day before the first day of trial.

4.    The fact that a document is produced by any of the Individual Defendants in this action or by any other party does not relieve you of your obligation to produce your copy of the same document, even if the two documents are identical in all respects.

5.    You are required to produce all of the requested documents that are in your possession, custody or control, or that of your affiliates, or merged or acquired predecessors and your present and former investigators, attorneys, directors, officers, partners, employees or other agents, as well as your present or former independent contractors over which you had control, and any other person acting on your behalf.

6.    Documents produced for inspection and copying shall be produced as kept in the ordinary course of business as provided by the Federal Rules of Civil Procedure.  If a document was prepared in several copies, or if additional copies were thereafter made, and if such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notations on the front or back of the document, then all such non-identical copies must be produced.

7.    All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained by you.  If for any reason the container cannot be produced, produce the copies of all labels or other identifying marks.

377152

8.    Documents shall be produced in such a fashion as to identify the department, branch or office in whose possession each was located and, where applicable, the natural person in whose possession each was found and the business address of each document's custodian(s).

9.    Documents attached to each other shall not be separated.

10.    To the extent you seek to withhold documents that may be responsive to these requests under any claim of privilege, provide a privilege log that provides information with sufficient specificity to permit counsel for plaintiffs and the Court to determine the validity of the claimed privilege, including, at a minimum, the following information:

      a.    the date of the document or communication;

      b.    the number of pages in and the nature and title of the document, and a description of the general subject matter of the document or communication;

      c.    any identifying, index or reference number for the document or the file in which the document is found, as well as the name of any such file;

      d.    the identity of each and every attachment or enclosure for the document;

      e.    the name, employer and position of each author, preparer (other than stenographic or clerical personnel), sender, addressee and recipient of the document and the name, employer, and position of each participant in or witness to the communication;

      f.    the name, employer and position of each person now in possession of the original or a copy of the document;

      g.    a statement of whether or not every line and paragraph of the document is claimed to be subject to privilege, of the precise nature of the privilege being claimed, and of the facts which constitute the basis on which such privilege is claimed; and

8

     h.     the document request to which the information in the document is responsive.

11.    Each document requested must be produced in its entirety and without deletion or excision, regardless of whether you consider the entire document relevant or responsive to these requests. If you have redacted any portion of a document, you should stamp the word "redacted" on each page of the document that you have redacted and identify the area that has been redacted with brackets (*i.e.* "[ . . . ]"). Redactions should be indicated on the privilege log.

12.    If any document that may be responsive to this request was, but no longer is, in your possession, custody or control, or no longer exists or cannot be found, provide a log that shows the following for each such document:

     a.     the document's file or code number;

     b.     the nature and type of the document;

     c.     a description of the document's contents;

     d.     the form of the document and its mode of storage, *e.g.*, paper, cards, tapes, film, electronic facsimile, computer storage devices, videotape or other medium;

     e.     the number of pages of the document;

     f.     the names and addresses of the document's authors and the name and address of the company by which the authors were employed;

     g.     the dates the document was in your custody, possession and control and the individuals who had such custody, possession, or control of the document, along with their position;

     h.     whether the document is missing, damaged, destroyed, transferred, or otherwise disposed of, the date that action occurred or was discovered, and

the persons who took that action and the persons who ordered, directed, advised or approved that action;

i.    the document's current location and the name and address of its current custodian, if any; and

j.    all persons having knowledge of the information contained in the document.

## DOCUMENT REQUESTS

REQUEST NO. 1.:    All documents concerning the Individual Defendants' or any Wave executive officer's compensation, employment, severance, stock option plans, retention bonus, non-competition, change-of-control, or consulting agreements, or other corporate perquisites, including, without limitation, executed and all draft copies of any such agreements. (This Request is made without regard to the "Relevant Time Period" limitation set forth above.)

REQUEST NO. 2.:    All documents concerning loans made by Wave to any of Wave's executive officers or to any of the Individual Defendants, or any agreements by which any of the Individual Defendants or Wave executive officers borrowed money or received any incentives or any gifts from Wave. (This Request is made without regard to the "Relevant Time Period" limitation set forth above.)

REQUEST NO. 3.:    All documents identifying any affiliation, including, without limitation, any business relationship or business affiliation, between any of the Individual Defendants, or between any of the Individual Defendants and Wave, including, without limitation, common board of director memberships or common membership in any organization. (This Request is made without regard to the "Relevant Time Period" limitation set forth above.)

REQUEST NO. 4.:    All documents concerning any contract, monetary transaction, business relationship or business agreement among or between any of the Defendants; among or between any entity the Individual Defendants are, or have been, affiliated with or employed by and Wave; or among or between any entity any of the Individual Defendants are, or have been, affiliated with or employed by and another entity which any of the other Individual Defendants are, or have been, affiliated with or employed by.

REQUEST NO. 5.:    All documents evidencing the duties and responsibilities of the Board of Directors and all committees thereof (including, but not limited to, the Audit Committee, the Compensation Committee, the Nominating Committee and the Executive Committee) of Wave, including, but not limited to, all by-laws, articles of incorporation, charters and amendments thereto.

REQUEST NO. 6.:    All documents concerning any meetings of Wave's Board of Directors or any committees (including, without limitation, the Audit Committee, the Compensation Committee, the Nominating Committee and the Executive Committee), subcommittees or special committees thereof, whether formal or informal, including, without limitation, minutes, packets, packages, recordings, agendas, summaries, memoranda, transcripts, notes from such meetings, and all documents prepared for, distributed, reviewed or submitted at, or prior to, such meetings.

REQUEST NO. 7.:    All documents concerning Wave's SEC filings, including, without limitation, drafts of past filings, drafts of documents to be filed with the SEC and communications concerning such filings or drafts.

REQUEST NO. 8.:    All documents concerning any communications between any of the Individual Defendants or Wave and any outside auditing firm, including, but not limited to, KPMG, LLP.

REQUEST NO. 9.:    All documents concerning the Defendants' statements, including, without limitation, Defendants' statements made to financial or securities analysts or members of the financial press.

REQUEST NO. 10.:    All documents concerning Wave's policies regarding the purchase or sale of its securities by any Company employee, officer, director or any family member or entity owned, controlled by or affiliated thereto.

REQUEST NO. 11.:    All documents concerning ownership or transactions by the Individual Defendants concerning Wave securities, equity and assets.

REQUEST NO. 12.:    All documents concerning Wave's document retention or destruction policies, including, without limitation, document retention or destruction policies respecting e-mail and other electronically-stored or recorded documents.

REQUEST NO. 13.:    All documents concerning insurance policies, indemnification agreements or hold harmless agreements that may provide coverage or indemnification to any Individual Defendant for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made in defense of this action.

REQUEST NO. 14.:    All documents concerning any investigation into Wave's accounting practices, whether internal or by the SEC or NASD.

REQUEST NO. 15.:    All documents concerning the revenue generated to Wave from contracts with IBM and Intel.

REQUEST NO. 16.:    All documents produced to the SEC or NASD concerning any investigation or request for information from the SEC or NASD.

*This space intentionally left blank.*

12

THE PLAINTIFFS, Derivatively on behalf of
WAVE SYSTEMS CORP.

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of
the above document was served upon the
attorney of record for each party by mail/by hand.

Date: _9/21/04_

By: _____
KEITH A. MINOFF
ROBINSON DONOVAN, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115
Telephone: 413/732-2301
Facsimile: 413/785-4658
BBO No. 551536

Liaison Counsel for Plaintiffs

BRIAN J. ROBBINS
JEFFREY P. FINK
ROBBINS UMEDA & FINK, LLP
1010 Second Ave., Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

FEDERMAN & SHERWOOD
WILLIAM FEDERMAN
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone: 405/235-1560
Facsimile: 405/239-2112

LAW OFFICES OF ALFRED G. YATES, JR.
ALFRED G. YATES, JR.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Telephone: 800/391-5164
Facsimile: 412/471-1033

Co-Lead Counsel for Plaintiffs

FARUQI & FARUQI, LLP
NADEEM FARUQI
SHANE T. ROWLEY
DAVID H. LEVENTHAL
320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330
Facsimile: 212/983-9331

Counsel for Plaintiff Harvey

377152