## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEVE SACHS, | ) | Lead Civil Action No. 04-30032-MAP |
| | ) | |
| Plaintiff, | ) | Consolidated with 04-30038-MAP |
| | ) | 04-30044-MAP |
| vs. | ) | |
| | ) | |
| STEVEN SPRAGUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED CONSOLIDATED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by their attorneys, submit this Consolidated Amended Derivative Complaint (the "Complaint") against the Defendants named herein.

### NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by shareholders of Wave Systems Corp. ("Wave Systems," "Wave" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy Defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred from July 31, 2003 through the present (the "Relevant Period") and that have caused substantial losses to Wave Systems and other damages, such as to its reputation and goodwill.

1

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a) in that many of the acts and the conduct constituting the violations of law complained of herein occurred in this District, and because Nominal Defendant Wave Systems maintains its principal executive offices in this District.

## SUMMARY OF THE ACTION

4.    Wave Systems creates technologies and services to secure and sell digital information. The Company's EMBASSY technology is a hardware and software-based device that enables secure transaction processing and distributed information metering in users' personal computers.

5.    During the Relevant Period, Wave Systems represented itself as a developer, producer and marketer of hardware and software based digital security products for the Internet-- a highly competitive, evolving and yet to be defined marketplace. Despite its more than 16 years in business, Wave Systems described itself as a "development stage company" and has yet to successfully complete commercial marketing of any products its business model relies upon. Since its inception in 1988, Wave Systems has not realized any significant revenues and its largest development contract was cancelled in 2002. For fiscal years ended December 31, 2002, 2001 and 2000, Wave Systems incurred loses of approximately $43,467,000, $48,701,000, and $47,656,000, respectively.

6.    As reported in the Company's filings with the Securities and Exchange Commission ("SEC"), as of December 31, 2002, Wave Systems had an accumulated deficit of approximately $233,092,000 and working capital of only $8.8 million, requiring an additional $11 million in cash to keep its doors open through the end of December 31, 2003.

7.    Desperate for funds and with no significant revenue stream in sight, on April 30, 2003 the Company closed a private placement of Series H Stock and Warrants ("Series H Placement" or "Placement") for gross proceeds of $5,485,000, netting the Company additional funds of $4,465,571, after agreeing to pay $1,020,429, or 19% of the total proceeds, in fees and commissions. Out of this desperation, the Company also agreed to pay the preferred shareholders dividends at an annual rate of 10% in 2003, increasing to 12% on April 30, 2004. Significantly, the Placement terms also greatly limited Wave Systems' ability to raise additional funds through equity offerings, by giving the Series H shareholders a right of first refusal.

8.    Without the financial wherewithal to pay the dividends due, or to redeem the preferred stock, Wave Systems had agreed to terms that tied the Company's hands financially. Wave Systems' only escape route was to trigger the automatic conversion of the preferred shares to the Company's Class A Common Stock, under the terms of the Placement, by causing Wave Systems stock to trade above $1.90 per share for 15 of 20 consecutive trading days.

9.    As of June 30, 2003, even with the additional funding in place, the Company had an accumulated deficit of $245.8 million and working capital of only $2.6 million.

10.    Teetering on the brink, with the final blow embodied in the onerous terms of the Placement, Defendants devised a plan to artificially and materially inflate the Company's stock price in the short term in order to convert the Series H Stock to non-dividend paying common stock. In addition, if the plan succeeded in artificially inflating the Company's stock price certain of the Individual Defendants would be able to sell shares from their personal holdings of Wave Systems stock at prices the market would otherwise not bear.

11.    To this end, Defendants primed the market to expect a major development in the Company's 16 year history - - a significant revenue stream. Specifically on June 30, 2003, one month prior to the start of the Relevant Period, on June 30, 2003 the Company reported the following in its Form 10-K/A for fiscal year ended December 31, 2002 under "Recent Developments":

> During 2002, several manufacturers of semiconductors for the PC industry announced products that have the capability to function as TPM's (Trusted Platform Modules) that meet the TCPA []standard for trusted computing. (Compaq Computer, Hewlett-Packard, IBM, Intel and Microsoft established the TCPA in an effort to define and promote trusted computing....) The offering of these products by major suppliers of semiconductors to the PC market is an important development in the creation of the market for hardware based trusted computing. **As a result of this development, Wave has begun executing a strategy to leverage the work it has done in developing a hardware trusted computing platform toward becoming a major developer of services to this market, the development of which is beginning to be driven by some of the major suppliers of semiconductors to the PC industry. Wave is actively pursuing business relationships with these companies in an effort to become a developer of applications that will be essential to the deployment of these new products, thereby creating a substantial new revenue opportunity for Wave.**

(Emphasis added.)

4

12.    In the same filing, Defendants forecast significant revenue growth from deals in the Company's pipeline. As the Company stated in the Form 10-K/A, under "Results of Operations":

> Revenue and gross margins during the year ended December 31, 2002, versus the same period in 2001 is indicative of a downward trend, with neither period showing significant revenues. The amount of revenues in both years has not reached a level that would contribute significantly to Wave's operations and has been sporadic. Wave does not foresee that it will achieve significant revenues at least until the latter part of 2003. **Our sales forecast for the year ended December 31, 2003 approximates $5 million in gross margin contribution. However, this forecast is not supported by a backlog of orders at this time, but rather the anticipation that various deals that we are currently pursuing will close**. Wave continues to work toward solidifying strategic alliances with the major personal computer manufacturers to force collaborative efforts to distribute its products to consumers . . . .

(Emphasis added.)

13.    In apparent fulfillment of Defendants' touted anticipation of revenue growth, at the start of the Relevant Period on July 31, 2003, Wave Systems announced a purported licensing agreement with Intel Corporation, followed soon thereafter by an announcement on August 4, 2003 that Wave Systems had entered into a purported partnership arrangement with IBM.

14.    Against the backdrop of the Company's forecast for $5 million in gross margin contribution from revenue growth, the combined announcements caused Wave Systems' stock to skyrocket. On July 31, 2003, following the Company's Intel announcement, Wave Systems' common stock closed at $2.25 per share, up from the prior day's close of $0.84 per share, representing a 168% one day gain on extremely heavy volume of 19 million shares traded. On August 4, 2003, following the Company's IBM announcement, Wave Systems' share price rose 21%, or $0.77 per share, to close

at $4.42 per share, on very heavy volume of over 45 million shares traded. The full terms and true nature of the purported Intel and IBM deals which would have revealed to the market their unlikely prospects for generating anything close to the Company's forecasted revenue growth, however, were not disclosed.

15.    In this regard, a former Wave Systems employee stated that he was involved with the Intel deal and that his contacts at Intel considered it to be "a small deal" and not a lucrative arrangement for Wave Systems. Nevertheless, Defendants pumped up the value of the Company's stock through materially false and misleading statements concerning expected revenues from Wave Systems' purported relationships with Intel and major PC manufacturers, which were misrepresented to the investing public. Defendants richly profited by their misrepresentations that caused a dramatic increase in the price of Wave Systems' stock – certain of the Individual Defendants unloaded 36% and 50% of their personally held Wave Systems stock, receiving total proceeds of over $1 million within days of the misleading deal announcements.

16.    On December 18, 2003 the Company reported that the SEC had begun a formal investigation relating to the Defendants' public statements concerning Wave Systems' business during and around August 2003, as well as insider trading in Wave Systems securities which occurred in and around that time.    On news of the investigation, the price of Wave Systems shares fell 17.13%, or $0.31 per share, to close at $1.50 per share on extremely high volume on December 19, 2003.

### THE PARTIES

17.    Plaintiff Steve Sachs ("Sachs") is and was at times relevant hereto, an owner and holder of Wave Systems common stock. Sachs is a citizen of New York.

6

18.     Plaintiff Jeff Swanson ("Swanson") is and was at all relevant times an owner and holder of Wave Systems common stock.    Swanson is a citizen of Washington.

19.     Plaintiff Charlene Harvey ("Harvey") is and was at all relevant times an owner and holder of Wave Systems common stock.    Harvey is a citizen of Virginia.

20.     Nominal Defendant Wave Systems is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 480 Pleasant Street, Lee, Massachusetts.

21.     Defendant Steven Sprague ("Steven Sprague") has been the Chief Executive Officer ("CEO") of the Company since March 2000 and a member of its Board of Directors since 1997. Steven Sprague was Chief Operating Officer of the Company from May 1996 to March 2000. Steven Sprague is the son of Peter J. Sprague ("Peter Sprague"), the founder of the Company and its former long-time Chairman of the Board and CEO. Peter Sprague resigned as Chairman of the Board in March 2003 and currently serves as Chairman of the Board and Chief Executive Officer of Wavexpress, the Company's wholly owned subsidiary. Because of Steven Sprague's positions, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Steven Sprague participated in the issuance of false and/or misleading statements, including the preparation of the false

7

and/or misleading press releases and/or recklessly permitted same. For the year 2003, Wave Systems paid Defendant Steven Sprague $450,000 in salary and bonus, and granted him 225,000 options to purchase Wave Systems stock. During the Relevant Period, Steven Sprague sold 150,000 shares of Wave Systems stock for $533,841.00. Defendant Steven Sprague is a citizen of Massachusetts.

22.    Defendant Gerard K. Feeney ("Feeney") has been Senior Vice President of Finance and Administration and Chief Financial Officer of the Company since June 1998 and Secretary of the Company since February 1999. Because of Feeney's positions, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Feeney participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and/or recklessly permitted same. For the year 2003, Wave Systems paid Defendant Feeney $466,399 in salary and bonus, and granted him 135,000 options to purchase Wave Systems stock. During the Relevant Period, Feeney sold 100,000 shares of Wave Systems stock for proceeds of $500,000. Defendant Feeney is a citizen of Massachusetts.

23.    Defendant John E. Bagalay ("Bagalay") has been a Director of the Company since 1993. He has been Chairman of the Board of Directors since March 2003. Because of Bagalay's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and

future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Bagalay participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and/or recklessly permitted same. Defendant Bagalay is a citizen of Massachusetts.

24. Defendant Nolan Bushnell ("Bushnell") has been a Director of the Company since 1999. Because of Bushnell's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.   During the Relevant Period, Bushnell participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and/or recklessly permitted same.  During the Relevant Period, Bushnell sold 10,000 shares of Wave Systems stock for $35,742. Defendant Bushnell is a citizen of California.

25. Defendant George Gilder ("Gilder") has been a Director of the Company since 1993 and the Chairman of the Company's Executive Committee since 1996. Because of Gilder's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and

9

connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Gilder participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and/or recklessly permitted same. Defendant Gilder is a citizen of Massachusetts.

26.    Defendant John E. McConnaughy, Jr. ("McConnaughy") has been a Director of the Company since 1988. Because of McConnaughy's position, he knew the adverse non-public information about the business of Wave Systems, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McConnaughy participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and/or recklessly permitted same. Defendant McConnaughy is a citizen of Connecticut.

27.    The Defendants identified in ¶¶21, 23-26 are referred to herein as the "Director Defendants." The Defendants identified in ¶¶21-22 are referred to herein as the "Officer Defendants." The Defendants identified in ¶¶21-22, 24 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

28.     The current Board of Directors of Wave Systems, and the Board of Directors at the time this lawsuit was filed, consists of five members, i.e., Steven Sprague, Bagalay, Bushnell, Gilder and McConnaughy.  Each of the Directors has been named as a Defendant herein.  As further alleged herein, the Board is incapable of making an impartial determination as to whether to institute legal proceedings to redress the wrongful conduct alleged herein because there is a substantial likelihood that its members would be found liable for non-exculpated breaches of their fiduciary duties to the Company and shareholders by intentional misconduct and/or completely failing to perform their oversight duties to the Company, failing to oversee the Company's compliance with legally mandated disclosure standards and systemic failure to assure that a reasonable information and reporting system existed.  The Directors are also incapable of making an impartial decision concerning whether to institute legal proceedings against Defendant Steven Sprague because of their extensive personal and business entanglements with Steven Sprague and his father Peter Sprague and because of the Sprague family's domination and control of the Board.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

29.     By reason of their positions as officers, directors and/or fiduciaries of Wave Systems and because of their ability to control the business and corporate affairs of Wave Systems, the Individual Defendants owed Wave Systems and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Wave Systems in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in

11

furtherance of the best interests of Wave Systems and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

30.    Each director and officer of the Company owes to Wave Systems and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

31.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Wave Systems, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with Wave Systems, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of Wave Systems.

32.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Wave Systems, and was at all times acting within the course and scope of such agency.

33.    To discharge their duties, the officers and directors of Wave Systems were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such

duties, the officers and directors of Wave Systems were required to, among other things:

a.    Refrain from acting upon material inside corporate information to benefit themselves;

b.    Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

c.    Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

d.    Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

e.    Remain informed as to how Wave Systems conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

f.    Ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

34.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Wave Systems, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

35.    The Individual Defendants breached their duties of loyalty and good faith by allowing the other Defendants to cause or by themselves causing the Company to misrepresent its condition and business prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of the Individual Defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws, as well as an SEC investigation. As a result, Wave Systems has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

a.    Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

14

b.     Costs incurred in investigating and defending Wave Systems and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

36.     Moreover, these actions have irreparably damaged Wave Systems' corporate image and goodwill. For at least the foreseeable future, Wave Systems will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Wave Systems' ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

37.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

38.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow Defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at Wave Systems and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and   (iii) deceive the investing public, including shareholders of Wave

Systems, regarding the Individual Defendants' management of Wave Systems' operations, the Company's financial health and stability, and future business prospects. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

39.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least July 2003 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true fact that Wave Systems was misrepresenting its performance from operations and business prospects.

40.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Wave Systems common stock so they could: (i) dispose of over $1 million of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

## SUBSTANTIVE ALLEGATIONS

### Background

41.     Wave Systems was incorporated in Delaware in August of 1988 under the name of Indata Corp., and changed its name to Cryptologics International, Inc. in December of 1989 before it settled on the name of Wave Systems Corp. in January of

1993. The Company made its initial public offering on August 31, 1994 at a price to the public of $5.00 per share. Until October 3, 1997, the Company's stock traded on The Nasdaq National Market tier of the Nasdaq. From October 3, 1997 to October 24, 1997, the stock traded on the Nasdaq Small Cap market before being delisted from the exchange for not meeting minimum listing requirements. By year-end 1997, the Company had burned through some $48 million, and the December balance sheet showed a total of $758,000 in cash and a working capital deficit of some $600,000. KPMG Peat Marwick noted a "going concern" risk in their independent auditor's report.

42.    The Company managed to raise enough money to keep going by issuing stock and convertible securities in small increments through the end of 1997 and early 1998. The Company raised $800,000 by issuing 800,000 shares of stock and 160,000 warrants to six accredited investors in a private placement in September 1997. In October of the same year, the Company raised another $2.25 million by issuing 112,500 shares of convertible stock to another investor. In March of 1998, the Company raised another $3 million by issuing more convertible stock.

43.    The Internet stock boom came along at the perfect time, and Wave Systems caught it in full swing in March of 1999, when it was able to sell just over 2 million shares at $11 per share to a group of institutional investors, raising $23 million. This financing alleviated any danger of running out of cash in the short term. The Company was relisted on the Nasdaq, and began trading again on April 6, 1999, closing that day at $23.50 per share. However, in July 2003, the Company's share price had plummeted to less than $1, and with that drop, the Company's officers lost their ability to raise any capital for the Company or to line their own pockets via insider selling. The

Individual Defendants then formulated a scheme to re-inflate the Company's shares by associating the Company "publicly" with two of the World's biggest technology companies - Intel and IBM. This, the Individual Defendants believed, would trick the public into believing that the Company had new lifelines which would infuse profits into the Company via agreements with these companies. With the "appearance" of two new separate revenue streams, the Individual Defendants sought to, and did, raise monies via a private placement to keep the Company on life support in addition to pocketing over $1 million in insider trading proceeds.

44.    The scheme deceived the investing public regarding Wave Systems' business, operations, management and the intrinsic value of Wave Systems common stock, causing Wave Systems stock to trade at an artificially inflated price, thus adversely affecting the Company's value, exposing the Company to litigation regarding violations of the federal securities laws, exposing the Company to an SEC investigation and compromising the Company's ability to secure future business partners and financing.

## Pre-Relevant Period Statements and Events

45.    In a press release issued by the Company on May 15, 2003 reporting on the Series H Placement, Defendant Steven Sprague made the following comments concerning the "expected reality" of imminent revenues:

> We are pleased to have successfully completed the private placement in the face of extremely challenging conditions in the economy and capital markets. We believe our ability to complete this transaction provides recognition of our industry position and the central role Wave can play in the rapidly emerging trusted computing marketplace. Wave has staked out a unique position with trusted computing services and infrastructure that seamlessly operate with the leading industry platforms. **Recent interactions at**

**several industry events suggest that key industry participants are finally beginning to recognize the value Wave can add and are evaluating ways that they can work with us to benefit from our position.**

During 2003 we expect to receive trusted computing-oriented license revenue relating to our agreement with National Semiconductor as they begin to address the emerging trusted computing enterprise market. **It is also our goal to generate services revenues this year associated with the other chip vendors that are also addressing this opportunity. This is an exciting time for us, as we begin to see our long-held vision of revenue-producing trusted computing services become an expected reality**.

(Emphasis added.)

47.    Within one month of the start of the Relevant Period, Wave Systems reported its financial results for its fourth quarter and fiscal year ended December 31, 2002 in its Form 10-K/A filed with the SEC on June 30, 2003 ("2002 10-K/A"). The filing was signed by each of the Individual Defendants.

48.    The filing contained a report from Wave's independent auditor, KPMG, LLP, indicating that "the Company has suffered recurring losses from operations and has an accumulated deficit that raises substantial doubt about its ability to continue as a going concern" beyond the second quarter of 2003.

49.    The Individual Defendants and the Company also disclosed in the 2002 10-K/A that the Company had successfully raised $5,487,000 through a private placement of Series H Stock and Warrants which closed on April 30, 2003. Without any significant revenue during its history, the Company raised the majority of its funding through equity offerings.

50.    However, the funds obtained through the Placement came at great expense to the Company. Wave paid 19% or $1,020,429 in commissions and fees, and

19

obligated itself to pay dividends on the preferred stock, accruing "on the initial liquidation preference amount of each share ($10,000) at an annual rate of 10%, increasing to 12% on April 30, 2004." No other class of Company stock paid a dividend.

51.    In addition, the terms of the Placement were highly restrictive concerning the Company's ability to raise additional funds through future equity offerings. Under the terms of the Placement, for a period of two years from April 30, 2003, the holders of the Series H Stock had the right of first refusal with respect to any financing arrangements contemplated by the Company, whereby they could opt to exchange their Series H stock for any new equity securities offered by the Company--- essentially restricting Wave Systems from raising funds on more favorable terms than those offered to the Series H holders.

52.    The highly restrictive Series H Placement obligated the Company to terms it could not perform - payment of the 10 and 12% dividend - and restricted its ability to seek additional funding. Moreover, Wave Systems did not have the resources to redeem the preferred shares and escape the terms it could not perform.

53.    However, the preferred stock was convertible to Class A Common Stock at the option of the shareholder at an initial conversion price of $0.76 per share on the first trading day following Wave Systems' annual stockholders' meeting, which at the start of the Relevant Period was scheduled to be held on August 4, 2003. More importantly, the Series H Stock carried a mandatory conversion provision whereby if the closing bid on Wave's Class A Common Stock exceeded $1.90 for 15 of 20 consecutive trading days, the Series H Stock and any dividends accrued thereon, would automatically convert into Class A Common Stock at the conversion price. In addition,

20