exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Wave Systems to millions of dollars in liability for possible violations of applicable securities laws;

      f.    The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein;

      i.    Defendant Steven Sprague is the son of Peter Sprague, the Company's founder and its former Chairman and CEO. Peter Sprague has been a Director of uWink, Inc. ("uWink"), a publicly held company, since December 2003 and owns 8% of its common shares. Director Bushnell, a director of the Company since 1999, is the Chairman and CEO of uWink. According to an April 15, 2001 article in Redhearing, Peter Sprague was then uWink's largest outside investor. In 2003 Bushnell was paid $159,773 for his services as CEO and President of uWink. uWink uses Wave Systems' wave chip in uWink's application set and on-line video games. Moreover, Peter and Steven Sprague are long-time friends of Bushnell. In 1999, Peter Sprague told the periodical the *American Banker* that "he met Mr. Bushnell more than 20 years ago on a television show where they 'were trying to predict the electronic future. We have since worked separately and together to try to make some aspects of that future occur.'" ("In Brief: Atari Pioneer Joins Security Firm's Board," *American Banker*, Vol. 164, No. 141, July 26, 1999). "I am a friend of Peter and Steven Sprague" Bushnell told David S. Isenberg. (Smart Letter #549, "Trip Notes from a Shrinking

Planet," April 9, 2001 www.isen.com/archives/010409.hmtl.).    Peter Sprague and Bushnell are also members of the Academy of Distinguished Entrepreneurs at Babson College and two of eight members of MetaMarket.com's Think Tank. Peter Sprague is Think Tank's Chairman. Because of the personal and business entanglements between Bushnell and Steven and Peter Sprague, Bushnell could not possibly make an impartial determination whether to sue Defendant Steven Sprague. Moreover, if Bushnell were to sue Steven Sprague, he would jeopardize his position with and corresponding financial benefits derived from uWink through adverse action by Peter Sprague - - Steven Sprague's father, a member of uWink's Board of Directors and one of its largest shareholders;

        ii.     Peter Sprague is also a long-time friend of Defendant/Director Gilder. Gilder, a director of the Company since 1993, is an author and publisher. For the last 8 years he and *Forbes Magazine's* Steve Forbes have hosted the "Gilder/Forbes Telecosm Conference." Gilder also publishes the "Gilder Technology Report." He was at one time perhaps Wall Street's most influential technology stock analyst and he wrote obsessively and enthusiastically about technology companies, especially those involved in telecom, including Wave Systems. Gilder has long been a promoter of Wave Systems. According to a June 14, 2004 *Boston Globe* article, "Wave has been touted throughout the years by George Gilder, the Western Massachusetts newsletter publisher and telecom theorist. . . ." He is also the author of the popular 2000 book "Telecosm." In a September 24, 1989 discussion with Brian Lamb published by the National Cable Satellite Corporation, in which the focus of the discussion was Gilder's then recent book "Microcosm:  The Quantum

42

Revolution in Economics and Technology," Gilder spoke of his longtime friendship with Peter Sprague and Peter Sprague's wife, as well as Peter Sprague's inspiration for his book:

> *Lamb*:  Other things out of the acknowledgement [of the book] I wanted to ask you about.  **"I am deeply indebted to Peter Sprague and Nick Kelly for introducing me to this crucial subject."**  Who are these two men?
>
> *Gilder*:    **Well, Peter Sprague is Chairman of National Semiconductor Corporation. He lives down the road.  His wife was an old friend of mine.  He's an old friend of mine and my wife's and we've just have [sic] known each other for years.**  And he is Chairman of National Semiconductor and has at first intrigued me with technology.  I became conscious of semiconductors because of his role in industry.

(emphasis added).  Gilder has also been a promoter and enthusiastic supporter of the Spragues.  For instance, in an August 9, 2004 article entitled "Tech Guru Reboots – Internet Evangelist's Stock Picks in Peril, Sparks Lawsuit," the *New York Post* wrote:

> With the Company's Nasdaq-traded stock selling for about $1.88 per share, **he [Gilder] championed a man named Steven Sprague to become the Company's president and chief operating officer.**
>
> **Saying of Sprague, "I have spent the last 20 years of my life interviewing and observing technology CEO's and I believe Sprague has the potential to be the best of the bunch."**
>
> **In fact, Steven is the son of Wave Systems founder and Chairman of the Board, Peter Sprague. Other than that, Steven possessed no notable credentials for the job at all.**
>
> Nonetheless, roused by what came to be known as the "Gilder Effect," Wave System's stock began to climb, and by the time the tech bubble popped in the spring of 2000, it was selling for more than $50 per share.
>
> Thereafter the stock quickly plunged back to the $2 range and with the Gilder name no longer working its magic, the Company issued a series of stock-hyping press releases about deals with Intel and IBM that caused the Securities and Exchange Commission to open

43

a formal securities fraud investigation in February of 2004 that is still underway.

(emphasis added). In addition, Defendants Gilder and Steven Sprague often participate together in technology conferences. For instance, Steven Sprague was a speaker at Gilder sponsored "The Sixth Annual Gilder/Forbes Telecosm Conference" held September 30-October 2, 2002 at Resort at Squaw Creek, Lake Tahoe, California. Gilder was also a speaker and the moderator. Gilder and Steven Sprague also spoke at Gilder sponsored "The Third Annual Gilder/Forbes Storewidth Conference" on March 24-25, 2003 at St. Regis Monarch Beach Resort in Dana Point, California. And Steven Sprague spoke at the Telecosm99 Conference sponsored by Gilder at Lake Tahoe, California, on September 27-29, 1999. Gilder was also a speaker and moderator at the conference. Wave Systems also is affiliated with Gilder's company, Gilder Technology Group, a publisher of monthly technology reports and of which Gilder is Chairman. Because of Gilder's longtime business relationship and friendship with Peter and Steven Sprague, his blind and enthusiastic support of Steven Sprague, his ringing endorsement of Steven Sprague as an outstanding CEO - - "I believe [Steven] Sprague has the potential to be the best of the bunch" - -, and his gratitude and "deep indebtedness" to Peter Sprague for inspiring and helping Gilder with his book, Gilder cannot possibly make an impartial determination whether to sue Steven Sprague. In addition, if Gilder were to recommend that legal proceedings be instituted against Steven Sprague to remedy Steven Sprague's breaches of fiduciary duty it would be an admission by Gilder of Steven Sprague's failure as a corporate executive as well as Gilder's failure as a technology company analyst and judge of corporate executive talent. This Gilder would not do;

iii.    Peter Sprague is also a trustee of the Strang Clinic. Defendant Director McConnaughy, a director since the early days of the Company (1988), is the Chairman of the Board of Trustees of the Strang Clinic. Because of his longstanding relationship with Peter and Steven Sprague, McConnaughy is incapable of making an impartial determination whether to sue Steven Sprague;

iv.    Bagalay, a longtime Director of the Company, having served as a Director since 1993, is also incapable of making an impartial determination whether to sue Steven Sprague due to Bagalay's longtime relationship with Peter and Steven Sprague;

g.    The Board is controlled and dominated by Steven and Peter Sprague. According to a Hoover's Company profile of Wave Systems issued Oct. 6, 2004, the "Sprague family own 65% of Wave Systems Class B common shares, giving them voting control over the Company."[1]    The Sprague's and the Company's management's domination and control of the Board have been commented on by the media and admitted by Steven Sprague. For instance in an August 26, 2003 article, "A Wave of Delusion" the *Free Republic*, reported:

> Wave's liberal use of financial-engineering techniques to benefit its officers has long been a sticking point even among its most devout shareholders.
>
> Board of Protectors. In 2001, certain executives took out big personal loans from the company to pay various outstanding debts. Wave's board later approved bonuses matching the amounts of some of the loans executives used to pay down their debts — a maneuver similar to the one at the heart of the Tyco International (TYC) accounting scandal, which has resulted in criminal indictments of three Tyco officers who, prosecutors allege, used the

[1]    This is because in certain situations, each Class B share entitles the Class B shareholder to five votes in matters submitted to the vote of shareholders versus one vote per common share.

company as their "personal piggy bank." The Sarbanes-Oxley Act of 2002 made the practice of granting personal loans to officers illegal.

Wave made a loan of $250,000 to the company's chief financial officer, Gerard Feeney, in 2001 so he could pay capital-gains taxes on exercised Wave stock options. After extending the due date on the loan in 2002, the company approved a bonus on March 27, 2003, "in an amount equal to Mr. Feeney's obligations with respect to such loan and accrued interest," according to Wave's 2003 Schedule 14(a) proxy filing. Feeney repaid the loan with the funds from the bonus.

Wave also made loans in 2001 to then-Chairman and Chief Executive Peter Sprague totaling about $1.06 million — during a year in which the company lost $48.7 million and saw its stock price plunge 40% to $1.33. In 2002, Wave's compensation committee approved a payment of a bonus of $174,391 so that Sprague could repay part of the debt. This left Sprague owing $999,518. On March 31, 2003, Sprague resigned as chairman and chief executive and assumed the CEO post of Wave subsidiary WavXpress. His son, Steven Sprague, was named CEO. The company put in place a loan-loss reserve against the elder Sprague's debt in a Nov. 15, 2002, 10(q) filing with the SEC, essentially forgiving the loan.

Then, on Aug. 5 [2003], Wave announced that Sprague would repay the loan in full. **Why would he pay back a debt the company had already written off? Look no further than the company's skyrocketing shares. "Before [the run-up], the stock was under a dollar," says the 64-year-old Sprague, who served as chairman of National Semiconductor (NSM) from 1965 to 1995. "I saw a window of opportunity, and it was trading in such huge quantities that selling 100,000 shares didn't make much of a difference."**

"He just wanted to put [the issue] behind him," says Wave spokesman David Collins, of Jaffoni & Collins, a PR firm. "The loan wasn't only a problem for the company from a cash-flow standpoint, it was increasingly a problem from a shareholder-perception standpoint."

Wave says it made the personal loans to Feeney and Sprague so that they wouldn't have to sell shares to pay their debts. But the record shows that the Spragues have a long history of insider selling. On Jan. 7, 2002, for instance, Peter Sprague sold 60,000 shares of Wave at $2.46 for $147,800. The following month, he

46

sold an additional 10,000 shares at $2 each, and on March 5, as the stock's price continued to fall, he unloaded another 10,000 shares at $1.83. **Steven Sprague, meanwhile, on Aug. 6, 2003, exercised options on 150,000 shares, most of which he sold for a total of more than a half a million dollars. And on Aug. 5, CFO Feeney sold 100,000 shares at $5 a piece — right near the stock's 52-week high.**

**Against the backdrop of Sarbanes-Oxley, it's difficult to avoid the conclusion that the loans were suspect moves for a company that was hemorrhaging cash. James Fisher, director of Emerson Center for Business Ethics at Saint Louis University, says that in such situations, the company's board of directors is often to blame for being too pliant. "If the board is under the thumb of management," says Fisher, "then there's some justification for concluding that these are ill-considered policies most likely designed to enrich the managers, who, from all appearances, haven't been able to guide the firm successfully."**

There can be little doubt that at the time many of these decisions were made, Wave's management exercised significant influence over its board. Peter Sprague was chairman of the seven-member board during his reign as CEO. Steven Sprague, formerly the president and chief operating officer, was a director when his father was chairman. Now, he's chairman of Wave's five-member board, which also includes George Gilder, author of the popular 2000 book "Telecom" and a lead cheerleader of the tech boom, who has been a director since the company's IPO. "Having insiders sell stock in a company that's precarious is more damaging than having the company make loans to its officers," says Gilder in defense of the board's decision. (Gilder declined to comment on Wave's future prospects, citing concerns about potential class-action litigation if the company should fail.)

**Steven Sprague isn't unaware of the power he and his father have wielded. "Put yourself in the shoes of any board of directors that has to make that call against somebody who probably hired all the people that are on the board," he says. "[Complying] was the right thing to do."**

(emphasis added).  The  loans by the Company to Peter Sprague and Defendant

Feeney and the circumstances surrounding those loans which are described in the *Free*

47

*Republic* article are also described in the Company's April 29, 2004 Proxy filed with the SEC. The Sprague's domination of the Board is further evidenced by the fact that the Board has permitted the Company to serve as the employer of the Sprague family. In addition to Peter and Steven Sprague's long-time positions with Wave Systems and Peter Sprague's current position as Chairman and CEO of Wavexpress, the Company's subsidiary, Steven Sprague's brother Michael Sprague is a long-time employee of the Company. From 1997 until November 1, 1999 Michael Sprague was employed by the Company at an annual salary of $110,000. Since his departure from Wave Systems, he has been an employee of Wavexpress, the Company's subsidiary, and was paid $143,750, $125,319 and $120,000 for the years ending December 31, 2003, 2002 and 2001, respectively. In short, the Board is dominated by Steven and Peter Sprague and for this reason too Defendants Bushnell, Gilder, Bagalay and McConnaughy are incapable of making an impartial determination whether to sue Steven Sprague. Moreover, if the Defendant Directors were to determine to institute legal proceedings against Steven Sprague, they would jeopardize their long held Board memberships with the Company as well as the prestige and compensation that go with them;

h.    The Defendant Directors of Wave Systems, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Wave Systems' stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Defendants exhibited a sustained and systemic failure to fulfill their fiduciary duties,

48

which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness;

      i.    In order to bring this suit, all of the Directors of Wave Systems would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

      j.    The acts complained of constitute violations of the fiduciary duties owed by Wave Systems' officers and directors and these acts are incapable of ratification;

      k.    Any suit by the current directors of Wave Systems to remedy these wrongs would likely expose the Individual Defendants and Wave Systems to additional liability for violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants (Steven Sprague is presently a Defendant in the securities class action lawsuits,) thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

      l.    Wave Systems has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Wave Systems any part of the damages Wave Systems suffered and will suffer thereby or to recover the profits received by Steven Sprague, Feeney and Bushnell through illegal insider trading;

m.     If the current Directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

n.     If Wave Systems' current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Wave Systems. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the Defendants in this case contain provisions that eliminate coverage for any action brought directly by Wave Systems against these Defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Wave Systems, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the

current directors will not cause Wave Systems to sue them, since they will face a large uninsured liability.

95.    Plaintiffs have not made any demand on shareholders of Wave Systems to institute this action since such demand would be a futile and useless act for the following reasons:

a.    Wave Systems is a publicly held company with approximately 63 million shares outstanding, and thousands of shareholders;

b.    Making demand on such a number of shareholders would be impossible for Plaintiffs who have no way of finding out the names, addresses or phone numbers of shareholders; and

c.    Making demand on all shareholders would force Plaintiffs to incur huge expenses, assuming all shareholders could be individually identified.

## FIRST CAUSE OF ACTION

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

96.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

97.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Wave Systems common stock on the basis of such information.

98.    The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Wave Systems common stock.

51

99.    The Insider Selling Defendants' sales of Wave Systems common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

100.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## SECOND CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty

101.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

102.    The Individual Defendants owed and owe Wave Systems fiduciary obligations.  By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Wave Systems the highest obligation of good faith, fair dealing, loyalty and due care.

103.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

104.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial condition and business prospects of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good

52

faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

105.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Wave Systems has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

106.    Plaintiffs on behalf of Wave Systems have no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Against All Defendants for Abuse of Control

107.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

108.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Wave Systems, for which they are legally responsible.

109.    As a direct and proximate result of the Individual Defendants' abuse of control, Wave Systems has sustained significant damages.

110.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

111.    Plaintiffs on behalf of Wave Systems have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against All Defendants for Gross Mismanagement

112.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

113.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Wave Systems in a manner consistent with the operations of a publicly held corporation.

114.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Wave Systems has sustained significant damages in excess of hundreds of millions of dollars.

115.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

116.    Plaintiffs on behalf of Wave Systems have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Against All Defendants for Waste of Corporate Assets

117.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

118.    As a result of the Individual Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, the Individual Defendants have caused Wave Systems to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

119.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

120.    Plaintiffs on behalf of Wave Systems have no adequate remedy at law.

## SIXTH CAUSE OF ACTION

### Against All Defendants for Unjust Enrichment

121.    Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

122.    By their wrongful acts and omissions, the Insider Selling Defendants were unjustly enriched at the expense of and to the detriment of Wave Systems.

123.    Plaintiffs, as shareholders and representatives of Wave Systems, seek restitution from these Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of Individual Defendants' trading activities or their other assets so as to assure that Plaintiffs have an effective remedy;

C.    Awarding to Wave Systems restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants;

D.    Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:  October 28, 2004.

Keith A. Minoff
ROBINSON DONOVAN, P.C.
1500 Main St., Suite 1600
Springfield, MA  01115
Telephone:  (413) 732-2301
Fax:  (413) 785-4658

Liaison Counsel for Derivative Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: _10/28/04_

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
1010 Second Ave., Suite 2360
San Diego, CA  92101
Telephone:  (619) 525-3990
Fax: (619) 525-3991

FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN
120 North Robinson, Suite 2720
Oklahoma City, OK  73102
Telephone:  (405) 235-1560
Fax: (405) 239-2112

LAW OFFICES OF ALFRED G. YATES,
    JR., P.C.
ALFRED G. YATES, JR.
GERALD L. RUTLEDGE
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Telephone:  (412) 391-5164
Fax:  (412) 471-1033

Co-Lead Counsel for Derivative Plaintiffs