**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **STEVE SACHS,**<br>**Plaintiff,**<br>**v.**<br>**STEVEN SPRAGUE, ET AL,**<br>**Defendant.** | **CIVIL ACTION**<br>**NO. 04-30032-MAP**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

I. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE PRE-SUIT DEMAND REQUIREMENTS OF RULE 23.1 .......... 3

A. The Plaintiffs' Conclusory Allegations Of Potential Liability For Securities Violations Provide No Facts That Could Demonstrate The Requisite "Substantial Likelihood" Of Personal Liability For Any Of The Director Defendants .......... 6

1. The Plaintiffs Have Utterly Failed To Plead Any Facts Which Could Show A "Substantial Likelihood" Of Personal Liability For Any Of The Directors .......... 7

2. The Plaintiffs' Allegations That Steven Sprague Has Been Named In A Securities Class Action Fails To Establish The Requisite "Substantial Likelihood" Of Personal Liability As To Him Or Any Other Director Defendant .......... 9

3. Wave's Certificate Of Incorporation Renders The Plaintiffs' Non-Exculpated Claims Nugatory .......... 10

B. The Plaintiffs' Conclusory Allegations Of Social And Business Relationships Between The Outside Directors And Non-Defendant Peter Sprague Fail To Rebut The Presumption Of Independence For The Outside Directors .......... 11

1. The Plaintiffs Fail to Allege Particularized Facts Of A Disqualifying Relationship Between "The Spragues" And Any Outside Director .......... 12

2. The Plaintiffs' Claim That The Sprague Family Dominates And Controls The Board Fails .......... 18

C. The Plaintiffs' Deficient Allegations Of Two Director's Purported Insider Selling Is Insufficient To Impugn The Independence Of Either Director Or The Remaining Three Members Of The Board As A Matter Of Law .......... 21

D. The Remaining Boilerplate Conclusions Pled In Various Sub-Paragraphs Of Paragraph 94 Are Insufficient To Excuse Demand Under Rule 23.1 .......... 22

II. EACH COUNT OF THE CONSOLIDATED AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED .......... 25

A. Counts II-VI Of The Complaint Must Be Dismissed Pursuant To Rule 12(b)(6) Because The Plaintiffs Have Failed To Allege Legally Cognizable Damages .......... 25

B. Counts II-VI Also Fail To State A Claim Because The Complaint Fails To Allege Separately The Individual Defendants' Participation In The Purported Wrongful Acts .......... 26

TABLE OF CONTENTS
(continued)

Page

C. Counts II-VI Are Barred By Wave's Certificate of Incorporation And Accordingly Fail To State A Claim ........ 27

D. Count V (Waste) Also Fails To State A Claim Upon Which Relief May Be Granted........ 27

E. Count VI (Unjust Enrichment) Fails To State A Claim Upon Which Relief May Be Granted........ 28

F. Count I (Alleged Insider Trading) Must Be Dismissed Pursuant To Rule 9(b) And Rule 12(b)(6) ........ 28

TABLE OF AUTHORITIES

Page

*Akins v. Cobb,* No. Civ .A. 18266, 2001 WL 1360038 (Del. Ch. Nov. 1, 2001) ..........5, 20

*In re Amdocs Ltd. Sec. Litigation*, No. 04-110, 2004 WL 2735530 (8th Cir. Dec. 2, 2004) ....................8

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)....................5, 19

*In re Baxter International, Inc. Shareholders Litigation*, 654 A.2d 1268 (Del. Ch. 1995) ....................6

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004) .................... *passim*

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. Sept. 30, 2003) ....................15, 16

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ....................18, 20, 28

*Brophy v. Cities Serv., Co.*, 70 A.2d 5 (Del. Ch. 1949)....................29

*Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571 (Del. Ch. 1998)....................28

*Decker v. Clausen*, Nos. Civ.A. 10,684 &10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ....................24

*Dollens v. Zionts,* No. 01 C02826, 2002 WL 1632261 (N.D. Ill. July 22, 2002)..............26

*Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001) ....................27

*In re Grace Energy Corp. Shareholders Litigation*, *No. Civ. A. 12,464*, 1992 WL 145001 (Del. Ch. June 26, 1992) ....................12

*Grobow v. Perot*, 526 A.2d 914 (Del. Ch. 1987)....................12, 23

*Grossman v. Johnson*, 674 F.2d 115 (1st Cir. 1982) ....................4

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003).................... *passim*

*Haseotes v. Bentas*, No.Civ.A. 19155 NC, 2002 WL 31058540 (Del. Ch. Sept. 3, 2002) ....................5

*Heit v. Baird*, 567 F.2d 1157 (1st Cir. 1977)....................3, 4

*Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004) ......13, 17

*Kaltman v. Sidhu*, No. Civ. 3:03-CV-1057-H, 2004 WL 357861 (N.D. Tex. Feb. 26, 2004) ....................10

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98 (1991) ....................4

*In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973) ....................3

*LaSalle National Bank v. Perelman*, 82 F. Supp. 2d 279 (D. Del. 2000)....................28

*Landy v. D'Allesandro*, 316 F. Supp. 2d 49 (D. Mass. 2004)....................4, 21

*Levine v. Prudential Bache Properties, Inc.*, 855 F. Supp. 924 (N.D. Ill. 1994)....................23

*Lewis v. Fites*, No. Civ. A. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993)....................10, 23

*Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268 (D. Mass. 1998)....................9

*In re General Motors Class H S'holders Litig.*, 734 A.2d 611 (Del. Ch. 1999) ....................19

*In re McKesson HBOC, Inc. Sec. Litigation*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ....................27

*In re PEC Solutions Sec. Litigation*, NO. 03-CV-331, 2004 WL 1854202 (E.D. Va. 2004)....................9

*In re Paxson Communication Corp. S'holders Litigation*, No.CIV.A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001)....................18

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ....................5, 6

*Rattner v. Bidzos*, No.Civ.A. 19700, 2003 WL 22284323 (Del. Ch. Sep 30, 2003) . *passim*

*In re Sagent Technology, Inc., Derivative Litigation*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003)....................27

*Odyssey Partners, L.P. v. Fleming Companies, Inc.*, 735 A.2d 386 (Del. Ch. 1999) ....................15

*Sekuk Global Enterprises Profit Sharing Plan v. Kevenides*, Nos. 24-C-03 007496, 007876 & 008010, 2004 WL 1982508 (Md. Cir. Ct. May 25, 2004)....................20

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995).................... *passim*

*Shields on Behalf of Sundstrand Corp. v. Erickson*, 710 F. Supp. 686 (N.D. Ill. 1989) ....................23

*In re Sonus Networks, Inc. Derivative Litigation*, No. 040753BLS, 2004 WL 2341395 (Mass. Super. Sept. 27, 2004) .......... 8, 24

*Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682 (Jan. 26, 2004 N.D. Tex.) .......... 24

*Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990) .......... 3

*Stepak v. Addison*, 20 F.3d 398 (11th Cir. 1994) .......... 24

*Stepak v. Dean*, 434 A.2d 388 (Del. Ch. July 8, 1981) .......... 19

*In re Stratus Computer, Inc. Sec. Litigation,* Civ.A. 89-2075-Z, 1992 WL 73555 (D. Mass. March 27, 1992) .......... 4, 7, 8, .......... 27, 23

*In re Symbol Technologies Sec. Litigation*, 762 F. Supp. 510 (E.D.N.Y. 1991) .......... 26

*In re United Telecommunications, Inc., Sec. Litigation*, No. 90-2251-EEO, 1993 WL 100202 (D. Kan. March 4, 1993) .......... 26

*In re Walt Disney Co. Derivative Litigation*, 731 A.2d 342 (Del. Ch. 1998), *aff'd in part, rev'd in part sub nom* .......... 18

*In re Westinghouse Securities Litigation*, 832 F. Supp. 989 (W.D. Pa. 1993) .......... 10

*White v. Panic*, 783 A.2d 543 (Del. 2001) .......... 28

*Zimmerman ex rel. Priceline.com, Inc. v. Braddock*, No. Civ. A. 18473-NC, 2002 WL 31926608 (Del. Ch. Dec. 20, 2002) .......... 13

**STATUTES**

15 U.S.C. § 78u-5(i)(1) .......... 9

DEL. CORP. CODE ANN. tit.8, § 102 .......... 11

Defendants Messrs. Sprague, Feeney, Bagalay, Bushnell, Gilder and McConnaughy and nominal defendant Wave Systems Corp. (collectively, "Defendants") respectfully submit this Memorandum of Law In Support of their Motion To Dismiss the Consolidated Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6) and 23.1.

## PRELIMINARY STATEMENT

The Plaintiffs bring this action, purportedly on behalf of Wave Systems Corp. ("Wave" or the "Company"), against members of Wave's Board of Directors (the "Board" or the "Director Defendants") and Wave's Chief Financial Officer (the "CFO"). Wave, a developer of trusted computing applications, services, and infrastructures designed to protect the security of data in personal and business computing, is a Delaware corporation with its principal place of business in Lee, Massachusetts. On December 18, 2003 the Company announced that the Securities and Exchange Commission ("SEC") had begun an investigation of certain statements Wave made to the market and of trading by certain of Wave's management during August 2003 (though no Wells notice has issued and no civil injunctive proceedings have been brought to date). Wave's stock price dropped from $1.81 on December 17 to $1.50 on December 19, 2003. Predictably, securities class actions alleging fraud by hindsight followed the drop in stock price, along with follow-form shareholder derivative suits, all currently pending in this Court.

### Summary Grounds For Dismissal

The Complaint is admittedly *derivative* in nature—brought by three shareholders of Wave, purportedly on behalf of the Company—claiming that the Company has been harmed by its allegedly misleading disclosures and insider trading. These purported claims belong to the Company. Critically, the question of whether to bring litigation on behalf of Wave—like any other business decision—is not one to be resolved by the shareholders. Rather, that decision is reserved for the Company's Board.

Indeed, the decision to sue is so fundamentally the prerogative of the board of directors that the Federal Rules of Civil Procedure have effectively codified the business judgment rule,

requiring that any shareholder who wishes to bring claims on behalf of the corporation must first make a pre-suit demand to do so on the company's board of directors. Consistent with the protection of the business judgment rule, the Federal Rules of Civil Procedure and the law of the First Circuit *require dismissal* of any derivative complaint that fails either (i) to allege that a pre-suit demand has been made on the board and refused or (ii) to allege "with particularity" the reasons why such a demand has not been made, *i.e.*, is futile. Fed. R. Civ. P. 23.1.

The Complaint here admittedly has been brought without first making the requisite pre-suit demand. Instead, the Plaintiffs allege that demand in this case was futile because a majority of the five-person Board was not independent. The Plaintiffs' primary grounds for asserting futility rest on alleged "relationships" between Wave's Board members and *Peter* Sprague—the Company's *former* Chairman and CEO, who is the father of Defendant Stephen Sprague. These conclusory allegations are mere surplusage, devoid of facts that could show how typical relations between Board members and another Board member's father cause a disqualifying interest for demand purposes. Indeed, the Delaware Supreme Court has held that similar allegations of friendships, business relations and moving in the same social circles, concerning a director with 94% voting control, is not even a "close call." Otherwise, the Complaint is replete with boilerplate allegations that could be levied at virtually every board of directors in corporate America, entirely lacking the particularity necessary to allow these shareholders to usurp the authority of *this* Board by bringing suit. Without the factual particularity required by Rule 23.1—vigorously enforced in the First Circuit—the Complaint must be dismissed.

The Complaint must also be dismissed as a matter of law for failure to state a claim. First, as to Counts II-VI, the Plaintiffs have failed to allege any legally cognizable theory of damages. As several courts have held, a derivative action must be dismissed where—as here—the alleged damage amounts to defense costs for collateral actions and an injury to business reputation. Even if damages were adequately alleged (and they are not), the Complaint nonetheless fails with respect to Counts II-VI, which Counts are *barred* by Wave's Certificate of Incorporation under Delaware law. Count I (insider trading) fails as well, both for failing to

satisfy the applicable strict pleading requirements of Rule 9(b) and for failing to plead the elements of the claim.

In sum, the Plaintiffs may not displace the Board and proceed with this action. They have not satisfied Rule 23.1. Moreover, Rule 23.1 aside, the Plaintiffs have failed to plead any legally cognizable claim. Accordingly, the Complaint must be dismissed.

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE PRE-SUIT DEMAND REQUIREMENTS OF RULE 23.1

As required by Fed. R. Civ. P. 23.1, a complaint in a shareholder derivative action *must* "*allege with particularity* the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . *and the reasons for his failure to obtain the action or for not making the effort*." *Id*. (emphasis added). The demand requirement embodied in Rule 23.1 safeguards a fundamental tenet of corporate governance: "directors, rather than shareholders, manage the business and affairs of the corporation." *Spiegel v. Buntrock*, 571 A.2d 767, 772-73 (Del. 1990). "The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. Consequently, such decisions are part of the responsibility of the board of directors." *Id*. at 773. As the First Circuit has explained:

> The purpose of the demand requirement is, of course, to require resort to the body legally charged with conduct of the company's affairs before licensing suit in the company's name by persons not so charged. Given the expense of litigation and the normal presumptions running in favor of those acting for the company, this seems only reasonable.

*Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977). Acknowledging that the pre-suit demand requirement protects core principles of corporate governance, the First Circuit recognizes that Rule 23.1 "is not a technical rule of pleading, but one of substantive right." *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973).

Failure to comply with Rule 23.1 requires dismissal, and in the First Circuit, Rule 23.1 is "vigorously enforced." *Landy v. D'Allesandro*, 316 F. Supp. 2d 49, 58 (D. Mass. 2004) (citing *Heit*, 567 F.2d at 1160). Accordingly, where a derivative plaintiff has brought suit without first making a demand on the board, the complaint is scrutinized for strict compliance with Rule 23.1: "Not only must any reasons excusing demand satisfy the substantive state law, but Rule 23.1 imposes an independent federal requirement that such reasons be *pled with particularity." In re Stratus Computer, Inc. Sec. Litig.*, Civ. A. 89-2075-Z, 1992 WL 73555, at *9 (D. Mass. Mar 27, 1992) (emphasis added).[1] To meet the strict pleading standards imposed by Federal Rule 23.1, specific facts must be pled—conclusory allegations are insufficient. *Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) (requiring "particularized allegations and specific facts"); *Landy*, 316 F. Supp. 2d at 59-60 (mere conclusions are ignored).

Under the law of Delaware,[2] where "plaintiffs do not challenge any particular business decision made by the Board"—as here— "the standard set forth in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) applies to the determination of whether demand is excused." *See Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003). The *Rales* standard requires the Plaintiffs to allege particularized facts that create a reasonable doubt as to whether the Board[3] (as existing at the

---

1 All unreported cases are submitted herewith in the Compendium of Unreported Authorities Cited in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Complaint.

2 Because Wave is a Delaware corporation, Delaware law controls the substantive futility analysis. *E.g.*, *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 98 (1991).

3 "[F]or purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant." *Rattner v. Bidzos*, No.Civ.A. 19700, 2003 WL 22284323, at *9, n.47 (Del. Ch. Sep 30, 2003). Accordingly, the allegations concerning non-director defendant Gerard Feeney are irrelevant.

time the Complaint was filed) could exercise independent and disinterested business judgment in responding to the demand:

> [I]t is appropriate in these situations to examine whether the board that would be addressing the demand can impartially consider the merits without being influenced by improper considerations. Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its *independent and disinterested business judgment* in responding to the demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).[4] The Delaware Supreme Court teaches that a director is interested "whenever divided loyalties are present, or a director has received, or is

---

[4] Alternatively, "[w]here the [derivative] lawsuit attacks *a decision* made by the board, the appropriate futility standard is that articulated in *Aronson v. Lewis*." *Haseotes v. Bentas*, No.Civ.A. 19155 NC, 2002 WL 31058540, at *4 (Del. Ch. Sept. 3, 2002). In *Aronson*, the Delaware Supreme Court articulated a two-part test for demand excusal: "demand is excused where the complaint alleges, with particularity, facts that establish a reasonable doubt as to whether (a) the directors are disinterested and independent, or (b) the challenged transaction is otherwise the product of a valid exercise of the directors' business judgment." 473 A.2d 805, 814 (Del. 1984) (emphasis added). "The essential predicate for the *Aronson* test is the fact that *a decision* of the board of directors is being challenged in the derivative suit." *Rales*, 634 A.2d at 933. Accordingly, the Delaware courts have held that *Rales*, and not *Aronson*, supplies the governing law when, as is the case here, the derivative plaintiff challenges alleged insider trading and misrepresentations in public statements, but does *not* allege that she is challenging a decision by the Board. *See Guttman v. Huang*, 823 A.2d 492, 500-01 (Del. Ch. 2003) (*Rales* applied to allegations of insider trading and false financial statements); *Rattner*, 2003 WL 22284323 (same); *Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) (same). Here, the Plaintiffs fail to allege any *board decision* as a basis for the suit. Rather, the Complaint appears to attack the alleged insider trading of certain defendants, and alleged omissions or misstatements in the Company's public disclosures. *E.g.*, Compl. ¶¶ 13-14, 21-22, 24. "The absence of board action . . . makes it impossible to perform the essential inquiry contemplated by *Aronson*—whether the directors have acted in conformity with the business judgment rule [in consciously deciding to act or refrain from acting]." *Rales*, 634 A.2d at 933. As in *Guttman* and *Rattner*, the *Rales* test applies.

Even if *Aronson* somehow applied, however, the Complaint could not pass muster. At minimum, the Plaintiffs must particularly allege a *business decision* made by the Board to be measured by the good faith, disinterested and informed basis factors of the business judgment rule. Nowhere does the Complaint allege any such "decision," let alone with the particularity required by Rule 23.1. *Akins v. Cobb*, No. Civ .A. 18266, 2001 WL 1360038, at *7-8 (Del. Ch. Nov. 1, 2001) (dismissing derivative action based on alleged board approval of lucrative employee benefits for officers for failure to plead specific facts showing failure to exercise business judgment). In any event, the Delaware courts have recognized that "the differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different" in application." *Guttman*, 833 A.2d at 500. Here the Plaintiffs have satisfied neither test.

entitled to receive, a personal benefit from the challenged transaction which is not equally shared by the stockholders." *Id.* at 933. A director is independent if his or her "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* at 936 (quoting *Aronson*, 473 A.2d at 816).

The Plaintiffs here do not allege that a demand has been made on the Board, but rather attempt to comply with Rule 23.1 by alleging that demand is excused because it would have been "futile." *E.g.*, Compl. ¶ 95. The conclusory allegations of the Complaint, however, fail to satisfy either the substantive law of Delaware under *Rales* or the strict pleading requirements imposed by Rule 23.1 and the First Circuit. The Complaint must be dismissed.

### A. The Plaintiffs' Conclusory Allegations Of Potential Liability For Securities Violations Provide No Facts That Could Demonstrate The Requisite "Substantial Likelihood" Of Personal Liability For Any Of The Director Defendants

The Complaint asserts claims predicated on violations of securities laws and insider trading. In that connection, the Plaintiffs allege that Defendant Sprague is named in a securities class action, Compl. ¶¶ 94(k), and that the Director Defendants "conspired" to commit securities violations. *E.g.*, Compl. ¶¶ 38, 40. Accordingly, say the Plaintiffs, the entire Board is subject to potential liability for securities violations and breaches of fiduciary duty based on the same, and their independence or disinterest is compromised with respect to a decision to bring suit. Compl. ¶ 94(k). Where, as here, Plaintiffs assert directorial interest based on potential liability arising from alleged securities violations, the plaintiffs must plead particularized facts demonstrating that a majority of the directors face a "*substantial likelihood*" of liability for the challenged conduct. *See Guttman*, 823 A.2d at 500-01; *Rattner*, 2003 WL 22284323, at *12; *Seminaris*, 662 A.2d at 1354.[5] The Complaint, however, utterly fails to plead *any* facts with particularity concerning each individual director's potential liability.

---

[5] The test is *not* whether the Complaint merely states a claim. "Although a short and plain statement showing that the pleader is entitled to relief is normally sufficient to state a claim, it does not satisfy the *requirement of pleading more than a mere threat of liability*" in the Rule 23.1 context. *In re Baxter Int'l,*

**1. The Plaintiffs Have Utterly Failed To Plead Any Facts Which Could Show A "Substantial Likelihood" Of Personal Liability For Any Of The Directors**

The Plaintiffs have failed to plead with particularity (as they must) the factual basis for an assertion that the Defendants have a substantial likelihood of personal liability. Aside from cryptic allegations that the Defendants "participated in the issuance of false and/or misleading statements… and/or recklessly permitted the same" (with the factual predicate of such "participation" left to conjecture), or "caused the Company" to issue press releases or file false financial statements (e.g., Compl. ¶¶ 81-90) (again the Plaintiffs reveal no facts), or "conspired" to permit false and misleading statements (Compl. ¶¶ 37-40) (the conspiracy remains obscure) the Complaint here contains *no* particulars relating to the personal liability of any of the Director Defendants for violations of securities law, the alleged conduct which serves as predicate to the Complaint.

First, the Complaint attributes all allegedly bad acts to all the Defendants without differentiation or specification as to who did what and when, failing Rule 23.1. In *Stratus*, involving derivative claims against a board for their purported participation in a securities scheme to defraud, the complaint similarly contained only "vague allegations of participation, implication, knowledge and dissemination [with] no reference to adverse circumstances that would provide a foundation upon which to build these charges." 1992 WL 73555, at *8. This Court held that the failure to separately identify each director's role in the alleged conduct was fatal:

> Nowhere does Count IV charge the outside directors with any specific wrongdoing. Rather, Count IV seems to implicate them only because of their status as directors. That tenuous connection, however, is an insufficient basis for alleging a cause of action. . . . *[W]here a complaint alleges "violation of . . . fiduciary duties" without "attempt[ing] to delineate among the defendants their participation or responsibilities in the activities which are the subject of th[e] suit," it does not give the defendants the notice required . . . .*

---

*Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (emphasis added). Rather, the Complaint must demonstrate a "substantial likelihood" of personal liability. *Seminaris*, 662 A.2d at 1353.

*Id.* (citations omitted) (emphasis added); *see also Haseotes v. Bentas*, No.Civ.A. 19155 NC, 2002 WL 31058540, at *4 (Del. Ch. Sept. 3, 2002) (Van Gestel, J.) (applying Delaware law, dismissing derivative suit alleging, *inter alia*, director defendants permitted misleading financial statements; "There are no particularized allegations as to any specific act by any particular board member individually or by the board as a whole"); *Seminaris*, 662 A.2d at 1354 (no substantial likelihood of personal liability for securities violations or fiduciary duty based thereon: allegations of conspiracy to inflate stock supported only by allegations of signing misleading 10-K insufficient).

Second, the Complaint here fails to particularly allege how the statements made to the market were misleading. Repeatedly, the Complaint alleges that Wave's statements to the market concerning the Intel and IBM arrangements were purportedly misleading because the Defendants knew that the "deal[s] would not generate the revenue stream forecasted by the Company . . . ." *E.g.*, Compl. ¶¶ 80, 84. Notably absent from the Complaint, however, is any statement made by any of the Defendants that "forecast" any guaranteed "revenue stream."[6] Indeed, the Plaintiffs have in bold-faced print set out Wave's disclosures which unequivocally apprise the market of just what the Plaintiffs contend was "concealed"—that the "deals" were not guaranteed to generate any revenue: "This licensing agreement is non-exclusive and there are no minimum licensing requirements on the part of IBM pursuant to the agreement"; "This licensing agreement is non-exclusive and there are no minimum licensing requirements on the part of Intel pursuant to the agreement." Compl. ¶¶ 83. Even if the Plaintiffs had pled sufficient facts to show that any statements of the Company regarding future expectations of revenue were

---

[6] The closest Plaintiffs come is by their citation to a press release stating "Our sales forecast for the year ended December 31, 2003 approximates $5 million in gross margin contribution." Compl. ¶ 54. The very next sentence, however, demonstrates that the statement "bespeaks caution" and is therefore not actionable as a matter of law. "*However, this forecast is not supported by a backlog of orders at this time, but rather the anticipation that various deals that we are currently pursuing will close.*" *Id*. *See In re Amdocs Ltd. Sec. Litig.*, 2004 WL 2735530 (8th Cir. Dec. 2, 2004) (securities complaint alleging fraudulent statements concerning customer demand failed to state a claim under Rule 12(b)(6) because the statements included information about deteriorating markets, and accordingly were not actionable under the "bespeaks caution" doctrine).

misleading (and they have not), such statements are insulated from liability under the PSLRA's "safe harbor" for "forward looking statements." *See* 15 U.S.C. § 78u-5(i)(1); *In Re PEC Solutions Sec. Litig.*, NO. 03-CV-331, 2004 WL 1854202, at *8 (E.D. Va. 2004) (dismissing securities complaint; defendants' statements regarding expected revenue growth and expected earnings per share were non-actionable, forward-looking statements because they "involve[d] financial projections that [would] not be determined to be true or false until some point in the future").

Third, the Complaint fails to plead facts that could show that any Defendant had the requisite *scienter* to sustain the securities fraud actions.[7] There are no particulars pled to show that any of the Defendants knowingly or recklessly misled the market.

**2. The Plaintiffs' Allegations That Steven Sprague Has Been Named In A Securities Class Action Fails To Establish The Requisite "Substantial Likelihood" Of Personal Liability As To Him Or Any Other Director Defendant**

Of the five Directors named as Defendants here, *only one* (Steven Sprague) is allegedly named as a defendant in the securities class actions. Compl. ¶94(k).[8] Accordingly, a super-majority of the Board faces *no* alleged potential for liability in the securities class actions or SEC investigation. But even if each of the Director Defendants were alleged to be named as defendants in the securities actions or SEC investigation, such allegations standing alone are insufficient to establish futility. In *Seminaris*, for instance, the shareholder plaintiff alleged that

---

[7] In the First Circuit, a plaintiff alleging securities fraud must show *scienter* by more than "motive" and "opportunity" to commit fraud. The PSLRA requires pleading of either *facts* showing directly that a defendant made a statement with knowledge that it was false or misleading, or *circumstances that strongly suggest that **each** defendant* acted with scienter. *See Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 271 (D. Mass. 1998) (motive and opportunity are inadequate methods for pleading scienter in securities fraud cases under PSLRA). The Complaint does conclusorily allege that two Director Defendants (*i.e.* a minority of the Board) sold stock based on insider information which in some circumstances could establish *scienter*, however, as shown in Part II.F, those allegations are patently insufficient here.

[8] The Defendants acknowledge that two of the Director Defendants here are named in the consolidated securities complaint. However, that fact existing outside the allegations of the Complaint is irrelevant for purposes of this motion. *E.g., Guttman*, 823 A.2d at 499 (refusing to consider allegations outside the complaint as a factor in analysis of the motion to dismiss).

demand would be futile regarding his claims arising from the company's dissemination of false and misleading information, in part because the directors faced "potential personal liability and criminal sanctions" arising from securities fraud claims and an SEC investigation of the company. 662 A.2d at 1354. The court held:

> I cannot agree with plaintiff that the threat of liability in the related actions has a greater impact on the directors' discretion than the threat of liability in this derivative action. *Plaintiff is merely uttering a slightly altered version of the discredited refrain—"you can't expect directors to sue themselves."*

*Id.* at 1355 (citation omitted) (emphasis added). *See also Lewis v. Fites*, No. Civ. A. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993) (dismissing derivative action based upon allegedly false and misleading disclosures despite the fact that the company had entered into a consent decree with the SEC and the company's management had been sued in securities class actions); *see also Kaltman v. Sidhu*, No. Civ. 3:03-CV-1057-H, 2004 WL 357861, at *5 (N.D. Tex. Feb. 26, 2004) (applying Delaware law, rejecting allegations that directors would not pursue derivative claims because one of the director defendants was also named in a securities suit); *In re Westinghouse Sec. Litig.*, 832 F. Supp. 989, 998 (W.D. Pa. 1993) ("plaintiffs' conclusory statements . . . that the individual defendants are liable to the corporation for contribution in connection with the purchaser class action, besides lacking ripeness, are not accompanied by particularized facts supporting demand futility.").

### 3. Wave's Certificate Of Incorporation Renders The Plaintiffs' Non-Exculpated Claims Nugatory

Each claim in the Complaint (other than Count I) is barred by the Company's Certificate of Incorporation and Delaware law. As permitted by DEL. CORP. CODE ANN. tit.8, § 102,[9]

---

[9] Delaware law allows corporations to limit directors' personal liability for non-intentional conduct committed in good faith and not for improper personal benefit. A corporation may adopt in its Certificate of Incorporation:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or

Wave's Certificate of Incorporation exculpates the Board from liability for breaches of fiduciary duty, excepting claims of breach of the duty of loyalty and intentional misconduct. *See* Exhibit A, Restated Certificate Of Incorporation Of Wave Systems Corp. Article Eighth, attached as Exhibit 3.1 to Amendment NO. 4 to Form S-1 filed with the Securities and Exchange Commission. Delaware recognizes that, when such a provision exists within a charter, "a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors, based upon particularized facts." *Guttman*, 823 A.2d at 501 (refusing to find demand excused where charter contained exculpatory clause and plaintiff failed to plead particular facts of potential liability outside clause). Count II for breach of fiduciary duty is not sufficiently particularized, and Counts III-VI are exculpated claims, and accordingly the Plaintiffs fail to establish demand futility on this basis.[10]

### B. The Plaintiffs' Conclusory Allegations Of Social And Business Relationships Between The Outside Directors And Non-Defendant *Peter* Sprague Fail To Rebut The Presumption Of Independence For The Outside Directors

As "outside directors,"—*i.e.* directors that are not employed by the Company in a managerial or officer capacity—Defendants Bagalay, Bushnell, Gilder, and McConnaughy are *presumed independent*. *See Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987) ("[O]utside directors . . . [a]re presumptively independent."). As the Delaware Supreme Court teaches:

> To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances *other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director.*

---

> which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit. No such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

DEL. CORP. CODE ANN. tit 8, § 102(b)(7).

10 Further, as explained in Part II, each count of the Complaint fails to state a claim.

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004) (emphasis added).

The Plaintiffs attempt to rebut the presumption of independence, relying primarily on superficial allegations of relationships between these outside directors and *nonparty* Peter Sprague—Defendant Steven Sprague's *father*, an alleged stockholder, former director, and the alleged founder of Wave.[11] As the Delaware Supreme Court has held, friendships may be sufficient to excuse demand where they "*border on or even exceed familial loyalty* and closeness. . . . and particularly when the allegations raise serious questions of either civil or criminal liability *of such a close friend*." *Beam*, 845 A.2d at 1050 (emphasis added) (citation omitted). The Plaintiffs allege no facts from which such a familial loyalty could be inferred, and even if they did, the allegations concern friendship with Peter Sprague, who risks *no* liability in connection with this litigation, the related securities class action, or the SEC investigation.

Otherwise, the Plaintiffs have simply failed to plead any facts that rise to the level required by *Beam* that could show that any of the outside directors would "risk their reputation" simply to preserve their relationship with Peter or Steven Sprague.

**1. The Plaintiffs Fail to Allege Particularized Facts Of A Disqualifying Relationship Between "The Spragues" And Any Outside Director**

For each outside director, the Plaintiffs' allegations fail to rebut the presumption of independence.

---

[11] *See In re Grace Energy Corp. S'holders Litig.*, No. Civ. A. 12,464, 1992 WL 145001 (Del. Ch. June 26, 1992) (denying preliminary injunction to block minority shareholder cash-out, holding that mere assertion of a director's longtime personal friendship with corporation's founding family was insufficient to constitute director interest).

**<u>Outside Director Bushnell</u>**

- **Bushnell and *Peter* Sprague are on uWink's Board:** Bushnell "is the Chairman and CEO of uWink. According to an April 15, 2001 article in Redhearing, Peter Sprague was then uWink's largest outside investor. In 2003 Bushnell was paid $159,773 for his services as CEO and President of uWink. uWink uses Wave Systems' wave chip in uWink's application set and on-line video games." "Peter Sprague has been a Director of uWink . . . a publicly held company, since December 2003 and owns 8% of its common shares." Compl. 94(f)(i).

The Plaintiffs apparently assert that Director Bushnell would not fairly consider a demand on Wave because his position as CEO of uWink might be jeapordized by Peter Sprague's alleged directorship and 8% interest in uWink. The Plaintiffs offer no facts to demonstrate that Peter Sprague dominates uWink's board, or that Bushnell's position as CEO is dependent solely upon Peter Sprague's discretion, as opposed to serving at the pleasure of the board as a whole. In *Yang*, involving derivative claims on behalf of Yahoo, the plaintiffs alleged that Yahoo's CEO, Semel, was beholden to director Yang. The court rejected the allegation as insufficient to show futility, noting that "Semel is Yahoo!'s highest-ranking officer and reports to the entire board, not Yang." *Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521, at *5 (Del. Ch. Aug. 2, 2004). Bushnell is uWink's highest ranking officer, and the Plaintiffs plead nothing to show that his position depends on anything other than the Board as a whole, not Peter Sprague. The allegation is even weaker when considering that the focus is uWink's board composition, not Wave's. *See Zimmerman ex rel. Priceline.com, Inc. v. Braddock*, No. Civ. A. 18473-NC, 2002 WL 31926608, at *9 (Del. Ch. Dec. 20, 2002) (holding that defendant director's serving on board of different corporation allegedly dominated by interested directors was insufficient without particularized allegations as to how the defendants controlled the company).

- **Bushnell and Spragues are Friends**: "Peter and Steven Sprague are long-time friends of Bushnell. In 1999, Peter Sprague told the periodical the *American Banker* that "he met Mr. Bushnell more than 20 years ago on a television show where they 'were trying to predict the electronic future. We have since worked separately and together to try to

make some aspects of that future occur.'" "I am a friend of Peter and Steven Sprague" Bushnell told David S. Isenberg." Compl. 94(f)(i).

This bare allegation of "longtime" friendship is insufficient to excuse demand as a matter of law. *Beam*, 845 A.2d at 1054 (holding that allegations centering on a "*Fortune* magazine article focusing on the close personal relationships among Moore [and] Stewart" did not present a "close call" as to Moore's independence: "bare social relationships clearly do not create a reasonable doubt of independence").

- **Bushnell and *Peter* Sprague are members of the same professional groups:** "Peter Sprague and Bushnell are also members of the Academy of Distinguished Entrepreneurs at Babson College and two of eight members of MetaMarket.com's Think Tank. Peter Sprague is Think Tank's Chairman." Compl. 94(f)(i).

The Plaintiffs fail to allege any facts that could show how Bushnell and Peter Sprague's mere common membership in such an Academy or as a part of a think tank would impugn Bushnell's independence. There is no allegation as to whether Bushnell receives material remuneration from these positions, nor as to whether Sprague has the power to affect Bushnell's membership. No inference, let alone a logical one, can be drawn from this allegation to support a reasonable doubt that Bushnell "would be more willing to risk his [] reputation than risk the relationship" with Peter Sprague. *Id*. at 1052.

**<u>Outside Director Gilder</u>**

- **Gilder touts Wave:** "According to a June 14, 2004 *Boston Globe* article, 'Wave has been touted throughout the years by George Gilder, the Western Massachusetts newsletter publisher and telecom theorist. . . .'" Compl. 94(f)(ii).

It would be odd for a director of a company *not* to publicly support the company. Indeed, in *Beam*, the Delaware Supreme Court affirmed the Chancery Court's rejection of a demand futility allegation based on a director's efforts to prevent negative publicity about Martha Stewart, the company's 94% owner/director, because the action would obviously be of benefit to

the company. *Beam*, 845 A.2d at 1053. In *Beam*, the court held that a motivation to benefit Martha Stewart's reputation was patently insufficient to excuse demand, as the director's action "was of benefit to MSO and its reputation, which is allegedly tied to Stewart's reputation." *Id.* (emphasis in original). Touting Wave in no way shows that Gilder is "beholden."

- **Gilder and *Peter* Sprague are friends/Gilder thanks *Peter* for inspiration for his book:** "In a September 24, 1989 discussion with Brian Lamb published by the National Cable Satellite Corporation, in which the focus of the discussion was Gilder's then recent book "Microcosm: The Quantum Revolution in Economics and Technology," Gilder spoke of his longtime friendship with Peter Sprague and Peter Sprague's wife, as well as Peter Sprague's inspiration for his book:

> *Lamb*: Other things out of the acknowledgement [of the book] I wanted to ask you about. **"I am deeply indebted to Peter Sprague and Nick Kelly for Introducing me to this crucial subject."** Who are these two men?
>
> *Gilder:* **Well, Peter Sprague is Chairman of National Semiconductor Corporation. He lives down the road. His wife was an old friend of mine. He's an old friend of mine and my wife's and we've just have [sic] known each other for years.** And he is Chairman of National Semiconductor and has at first intrigued me with technology. I became conscious of semiconductors because of his role in industry.

Compl. 94(f)(ii).

Allegations of friendship or being longtime neighbors are plainly insufficient. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 979-80 (Del. Ch. Sept. 30, 2003) (rejecting allegation of director's quote in an article "Arthur [Martinez] is an old friend to both me and Martha [Stewart]"); *see also Odyssey Partners, L.P. v. Fleming Companies, Inc.*, 735 A.2d 386, 410 (Del. Ch. 1999) (rejecting allegation of directorial interest: "That Field and Devening were neighbors or former neighbors is of no moment.").

As for Gilder's acknowledgment that Peter Sprague introduced him to technology and semiconductors, the allegation provides *no facts* from which Gilder's presumption of independence may be rebutted. There is no allegation that if Gilder were to bring suit, Peter Sprague has any power whatsoever over Gilder's ability to earn a living as an authority in the field simply because Peter "intrigued" him with semiconductors. If anything, the fact that

Gilder's economic worth is tied to his alleged reputation as an authority on the technology boom militates *against* an inference of a lack of independence: Gilder would be less likely to "risk his reputation" in the technology field solely to serve his relationship with Peter Sprague. *Beam*, 833 A.2d at 980 (allegations regarding friendship outweighed by director's prominence in business world; "One might say that Martinez's reputation … is essential to his career-a matter in which he would surely have a material interest.").

- **Gilder supported Steven Sprague as CEO:** "Gilder has also been a promoter and enthusiastic supporter of the Spragues. For instance, in an August 9, 2004 article entitled "Tech Guru Reboots Internet Evangelist's Stock Picks in Peril, Sparks Lawsuit," the *New York Post* wrote:

> With the Company's Nasdaq-traded stock selling for about $1.88 per share, **he [Gilder] championed a man named Steven Sprague to become the Company's president and chief operating officer.**
>
> **Saying of Sprague, "I have spent the last 20 years of my life interviewing and observing technology CEO's and I believe Sprague has the potential to be the best of the bunch."**

Compl. 94(f)(ii).

The purpose this allegation in the Complaint is puzzling. As a matter of corporate governance, without the support of the Board (including Gilder), Steven Sprague could not have become CEO—it is the Board that appoints officers. If such an allegation were colorable for demand futility purposes, every director on every board in America would be deemed "beholden" to the corporations' officers. *Beam*, 845 A.2d at 1053 (rejecting invitation to draw unreasonable inference of improper influence).

- "Defendants Gilder and Steven Sprague often participate together in technology conferences," including three Gilder-sponsored Conferences between 1999 and 2003. Compl. 94(f)(ii).

As *Beam* makes clear, the fact that directors "move in the same social circles" is insufficient. 845 A.2d at 1051 ("Allegations that Stewart and the other directors moved in the

same social circles … developed business relationships … and described each other as "friends" … are insufficient … to rebut the presumption of independence.").

- "Wave Systems also is affiliated with Gilder's company, Gilder Technology Group, a publisher of monthly technology reports and of which Gilder is Chairman." Compl. 94(f)(ii).

Without particularized facts showing how Wave is material to the financial wellbeing of Gilder's company, the Complaint fails to raise a reasonable doubt as to Gilder's independence. *See, e.g.*, *Yang*, 2004 WL 1728521, at *6 (allegations of independent directors' companies' dependence on Yahoo insufficient because they did "not assert particularized facts establishing that the business relationships are material"); *Beam*, 845 A.2d at 1045 (allegations that the company marketed goods through the directors' former company (Sears) insufficient).

**<u>Outside Director McConnaughy</u>**

- Peter Sprague is also a trustee of the Strang Clinic. Defendant Director McConnaughy, a director since the early days of the Company (1988), is the Chairman of the Board of Trustees of the Strang Clinic. Compl. 94(f)(iii).

The allegation includes nothing that could impugn Defendant McConnaughy's independence. No facts are pled as to how McConnaughy receives *any* benefit from Peter Sprague's trusteeship, let alone a material benefit. Even if such circumstances were pled, it would be insufficient to impute a lack of independence to McConnaughy. *See In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 359 (Del. Ch. 1998) (no reasonable doubt as to director's independence where a corporation's Chairman and CEO had given over $1 million in donations to the university at which the director was the university president and from which one of the CEO's sons had graduated), *aff'd in part, rev'd in part sub nom Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

**<u>Outside Director Bagalay</u>**

- "Bagalay, a longtime Director of the Company, having served as a Director since 1993, is also incapable of making an impartial determination whether to sue Steven Sprague due to Bagalay's longtime relationship with Peter and Steven Sprague." Compl. 94(f)(iv).

Vague and boilerplate allegations of friendships between board members do not satisfy Rule 23.1's particularity requirements. *See In re Paxson Communication Corp. S'holders Litig.*, No.CIV.A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001) (holding allegation that "[t]he Board members also have close personal and business ties with each other" is hopelessly vague and inadequate under Rule 23.1). The conclusory allegation of friendship here is even less pertinent, asserting only a relationship between a director and a board member's father.

In sum, the Plaintiffs offer numerous allegations in an attempt to show demand futility. But sheer volume cannot compensate for lack of substance. Here, the Plaintiffs' allegations amount to no more than an assertion of "structural bias"—presupposing "that the professional and social relationships that naturally develop among members of a board impede independent decisionmaking." *Beam*, 845 A.2d at 1050-51. As the Delaware Supreme Court has reaffirmed, structural bias is far from sufficient to excuse demand.

### 2. The Plaintiffs' Claim That The Sprague Family Dominates And Controls The Board Fails

The Plaintiffs also allege that the Board is dominated by the Spragues, because the media has reported that, as of Oct. 6, 2004, the Spragues (non-defendant Peter along with Steven) collectively own 65% of Wave's voting stock. Compl. ¶ 94(g). The allegation fails for at least two reasons.[12] First, any alleged "domination and control" must have existed at the time the

[12] The allegation also appears to be demonstrably false based upon the documents cited by and incorporated by reference in the Complaint. As explained in the Company's April 29, 2004 Proxy Statement, cited at Paragraph 94(g) of the Complaint, the entire beneficial ownership and voting power of Steven Sprague and his family members, including Class B shares convertible into Class A common

action was commenced, *i.e.* in [February of 2004], not in October 2004 as alleged.[13] Second, and more importantly, "[a] stockholder's control of a corporation does not excuse pre-suit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder." *Beam*, 845 A.2d at 1054. In *Beam*, Martha Stewart's *94%* voting stock ownership was held insufficient.[14]

In addition, the Plaintiffs allege the existence of an August 2003 article in the *Free Republic* reporting that, *in 2001*, the Company approved certain loans to Wave's founder, then-chairman and CEO *Peter* Sprague. The article goes on to conclude that "*at the time many of these decisions were made*, Wave's management exercised significant influence over its board." (Emphasis added). Apart from the fact that the article's conclusions concern Wave's Board vis-à-vis *Peter* Sprague in *2001*—as opposed to the board at issue, *i.e.*, Wave's February *2004* Board

---

shares, is 3.2%. *See* Exhibit B, Proxy Statement and Security Ownership information excerpted from Schedule 14A Proxy Statement filed with the Securities and Exchange Commission on April 29, 2004.

13 "[T]he futility of making the demand required by Rule 23.1 must be gauged *at the time the derivative action is commenced*, not afterward with the benefit of hindsight." *Stepak v. Dean*, 434 A.2d 388, (Del. Ch. July 8, 1981) (emphasis added). Importantly, facts intervening between the filing of the original complaint and the filing of an amended complaint are *irrelevant* to the analysis. *See Rattner*, 2003 WL 22284323, at *8 ("demand is excused if the particularized facts of the Amended Complaint create a reasonable doubt that, *at the time the original complaint was filed*, a majority of the Board could have exercised disinterested and independent business judgment in responding to [the] demand").

14 Notably, the Complaint contains no facts to show that a majority of the Board is overly reliant upon their compensation from Wave, *i.e*, that they engage in no other employment and that they are otherwise not financially secure. *Cf. In re General Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999) (whether a director is interested is determined "in the context of the director's economic circumstances," evaluating whether it is "improbable that the director could perform her fiduciary duties to the ... shareholders without being influenced by her overriding personal interest."). Indeed, the Complaint itself actually alleges facts that show that 4 out of 5 of the Directors—i.e. a majority—are financially independent of their positions at Wave, based on their vocations in other capacities. *See* Compl. ¶94(f)(i.) (Bushnell is Chairman and CEO of Uwink); Compl. ¶94(f)(ii.) (Gilder is an author and publisher.); Compl. ¶94(f)(iii.). Defendant McConnaughy is Chairman and Chief Executive Officer of JEMC Corporation while Defendant Bagalay is Senior Advisor to the Chancellor at Boston University and a former CEO and CFO of various corporations; both are successful and financially independent apart from Wave.

vis-à-vis *Steven* Sprague[15]—the conclusions asserted provide no support for the Plaintiffs here. *Brehm v. Eisner*, 746 A.2d 244, 252 (Del. Feb. 9, 2000) (affirming dismissal of suit based on media excerpts because, in part, the "quotations from the media in the Complaint simply echo plaintiffs' conclusory allegations"). Indeed, even if the Plaintiffs' attorneys actually plead the facts underlying the loans in accordance with Rule 11 (as opposed to alleging that an "article reported"), the allegation is insufficient. *Sekuk Global Enters Profit Sharing Plan v. Kevenides*, 2004 WL 1982508, at *7 (Md. Cir. Ct. May 25, 2004) (reasoning from Delaware law, "a history of consistently approving financial deals, and the payment of millions of dollars in employment benefits to the [allegedly dominating directors], which served no legitimate business purpose" is insufficient to excuse demand). [16]

In short, the Complaint is devoid of factual allegations concerning the personal, business or other relations among the Independent Directors sufficient to excuse demand.[17]

---

[15] For these same reasons, the purported quote from Steven Sprague, "Put yourself in the shoes of any board of directors that has to make that call against somebody who probably hired all the people that are on the board," and purportedly "[Complying] was the right thing to do" is irrelevant. Compl. ¶ 94(g) (alteration in the original). To the extent the article can be relied upon at all as an allegation of "fact" (despite the hearsay assertion), Steven's purported comment concerned a seven-member, 2001 board vis-à-vis Peter Sprague, the Company's founder that likely "hired" the Board existing at that time. Peter is no longer CEO or on the Board, the composition of the Board has changed with its reduction to five members, and there is no allegation that Steven "hired" any of the members of the 2004 Board.

[16] Defendant Gilder is also reported as commenting on the loans that "having insiders sell stock in a company that's precarious is more damaging than having the company make loans to its officers." Compl. ¶ 94(g) The Complaint does not appear to assert any cause of action based upon the loans or repayment terms referred to in the article quoted in Paragraph 94(g) of the Complaint. To the extent the Plaintiffs did assert that the outside directors face a substantial likelihood of personal liability or breached their fiduciary duty in purportedly approving the transaction, the claim would fail. The Plaintiffs do not allege, as they must, the specific facts of the Board's decision, which is fatal. *Akins v. Cobb*, No. Civ .A. 18266, 2001 WL 1360038, at *7-8 (Del. Ch. Nov. 1, 2001) (dismissing derivative action based on alleged board approval of lucrative employee benefits for officers for failure to plead specific facts showing failure to exercise business judgment: "where a compensation decision was made by a board comprised of a majority of independent directors, [the plaintiff's] burden is stringent"). Indeed, the quote attributed to Gilder, if anything, evidences a business judgment-insulated decision to permit the loans based on a view that such action better served the interests of the company than would insider selling.

[17] The Plaintiffs also allege that the Spragues' domination and control of the Board is evidenced by "the fact that the Board has permitted the Company to serve as the employer of the Sprague family." Compl. ¶

### C. The Plaintiffs' Deficient Allegations Of Two Director's Purported Insider Selling Is Insufficient To Impugn The Independence Of Either Director Or The Remaining Three Members Of The Board As A Matter Of Law

The Plaintiffs also allege that demand is futile because two directors, Sprague and Bushnell, sold stock during the "relevant period." Compl. ¶¶ 21, 24, 94(a). The alleged sale of stock by *two directors* cannot establish the lack of independence or disinterestedness of the *five-person board* as a matter of law. *See Rattner*, 2003 WL 22284323, at *10 (holding in case where 4 of 8 directors did not trade, "were Rattner's attack upon any of the four directors [] unsuccessful, a 'majority' of the Board would not be implicated and demand would not be excused"); *Landy*, 316 F. Supp. 2d at 73 ("One purchase by one director . . . does not create inappropriate interest on the part of the entire board").

In any event, the conclusory allegations here do not approach impugning these directors' disinterest or independence. Indeed, virtually every one of the necessary facts to show futility based on insider trading that were found missing from a derivative/insider trading complaint dismissed in *Rattner* are similarly missing here:

> Thus, absent from the particularized allegations of the Amended Complaint are the "precise roles that [the Director Defendants] played at the [C]ompany [and] the information that would have come to their attention in those roles." The Amended Complaint is also devoid of any *particularized facts that could lead to the inference that the timing of the trades reflected the Selling Defendants' impermissible insider trading*. The Amended Complaint contains no particularized facts regarding *the timing of the Director Defendants' trades in relation to permitted trading periods*; while the pattern observed does reflect trading activity on behalf of the Director Defendants after the release of allegedly misleading statements, *no particularized allegation of the Amended Complaint answers whether this temporal proximity was in fact part of the Company's practice to prevent Company insiders from improperly benefiting from informational asymmetries*. Moreover, although Rattner cursorily alleges that there were differences between prior years and the Relevant Period, *the Amended Complaint does not shed light upon the trading practices of the Director Defendants prior to the Relevant Period*.

---

94(g). As pled, the allegation is mere surplusage. The Plaintiffs offer no explanation as to how the Board is involved in any non-officer hiring decisions (a function that is not typically within a board of directors range of responsibilities) much less how the Board is involved in such decisions involving Wavexpress, a subsidiary of the Company. Even if such an explanation was forthcoming, the allegation is meaningless for futility purposes.

*Rattner*, 2003 WL 22284323, at *11 (emphasis added).

Most importantly, the Plaintiffs must allege—but have not—particularized facts to show that each sale was made based on and because of the insider information. *Id.* ("it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information."). *Nowhere* do the Plaintiffs allege the required information concerning these stock sales, and accordingly no director's independence is properly challenged on this basis.

### D. The Remaining Boilerplate Conclusions Pled In Various Sub-Paragraphs Of Paragraph 94 Are Insufficient To Excuse Demand Under Rule 23.1

The remainder of the Plaintiffs' demand futility allegations made in paragraph 94 of the Complaint are no more than boilerplate conclusions, generalized to all the inside and outside Director Defendants. *E.g.*, Compl. ¶¶ 94(a)-(e) and (h)-(n). Most of these allegations were addressed and rejected by this Court in *Stratus*, dismissing a derivative suit:

| **Plaintiffs' Allegations: Compl. ¶ 94** | **Virtually Identical Allegations Dismissed in *Stratus*** |
|---|---|
| (a) The directors actions have subjected Wave to possible *violations of securities laws and* constitute *violations of their fiduciary duties* (acts *incapable of ratification*). Compl. ¶ 94 (a), (j); | "(a) The acts complained of herein constitute *violations of the federal securities* and other federal laws and *fiduciary duties* owed by directors and officers and these acts are *incapable of ratification*;" |
| (b) Each of the directors *failed to prevent and correct material misrepresentations made by the company* Compl. ¶ 94 (e); | "(b) Each of the directors is *implicated in the dissemination of the false and misleading statements and omissions* alleged herein;" |
| (c) Each of the Individual Defendants had *access to adverse non-public information about the financial condition*, operations, and improper representations of the Company. Compl. ¶ 31, 94(a); | "(c) Each member of the Board of Directors had *access to confidential financial information* indicating Stratus' true and [sic] financial condition and prospects." |
| (d) The directors, because of their *inter-related business, professional and personal relationships* have developed debilitating conflicts of interest Compl. ¶ 94(f); | "(d) *Social, business and other relationships* tie the officers and directors of Stratus to one another, and any legitimate 'independent' action by Stratus against any of the individual defendants would be |

| | |
|---|---|
| | impossible;” |
| (e) The directors “*participated in the wrongs*” Compl. ¶ 94(e); | “(e) Each of the current directors *participated in, knew of, and was on notice of* the wrongful and illegal conduct alleged herein; . . .”[18] |

Faced with the same conclusory allegations as those grafted into the Complaint here, this Court in *Stratus* dismissed a complaint for failure to comply with Rule 23.1:

> Item (a) is . . . suspect as this complaint *fails to allege particular conduct that would violate federal securities laws*. . . . [A]llowing a complaint to circumvent the demand requirement through allegations as vague and conclusory as items (b) through (e) would render the demand requirement nugatory. *These items, in light of the factual allegations of the complaint, cannot be understood to allege particular misconduct by the individual directors nor particular circumstances specific to each director.* “[S]tripped of these conclusory allegations, the facts set forth in the complaint” fail to “make out with sufficient particularity misconduct that would excuse a demand on directors.”

*Id*. at *10 (emphasis added).[19]

In addition, the Plaintiffs here offer three other boilerplate, conclusory allegations insufficient to excuse demand under Rule 23.1. First, the Plaintiffs contend that if the Defendants are protected against personal liability by directors and officers (“D&O”) liability

---

[18] *In re Stratus Computer, Inc. Sec. Litig.*, Civ.A. 89-2075-Z, 1992 WL 73555, at *9-10 (D. Mass. March 27, 1992) (emphasis added).

[19] This Court’s conclusions wholly comport with Delaware law. *See Grobow*, 526 A.2d at 924-25 (allegations of securities law violations held insufficient to excuse demand); *Levine v. Prudential Bache Properties, Inc.*, 855 F. Supp. 924, 941 (N.D. Ill. 1994) (same, applying Delaware law); *Seminaris*, 662 A.2d at1354-54 (mere threat of personal liability of directors if suit is brought is insufficient); *Rattner*, 2003 WL 22284323, at *10 n.53 (holding allegation that “Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information” was insufficient); *Beam*, 845 A.2d at 1051 (general allegations of social and business relationships insufficient); *Lewis*, 1993 WL 47842, at *2 (allegations that directors “participated in and approved the alleged wrongs and would have to sue themselves. . . . have been rejected repeatedly”); *see generally Shields on Behalf of Sundstrand Corp. v. Erickson*, 710 F. Supp. 686 (N.D. Ill. 1989) (complaint alleging that directors had participated in the wrongs, that wrongdoers dominated and controlled board, that directors failed to act against those responsible for illegal conduct, even though the corporation was forced to pay over $127,000,000 to federal government, that challenged acts were illegal and fraudulent and could not be ratified, that most of the directors were officers of corporation and beholden to other officers, that the directors received benefits for service on board, and that directors amended certificate of incorporation to limit their liability for negligence; shareholders’ derivative action inadequately alleged futility of demand upon directors under federal or Delaware law.)

insurance, there may be an exclusion of coverage applicable in this case. Compl. ¶ 94(n). These allegations of a hypothetical "insured v. insured" exclusion in D&O policy have been soundly rejected. *See Spector v. Sidhu*, No. Civ. 3:03-CV-0841-H, 2004 WL 350682, at *5 (Jan. 26, 2004 N.D. Tex.) (applying Delaware law; "Many courts have found the existence of this clause, without more, to be insufficient to excuse demand."); *Decker v. Clausen*, Nos. Civ.A. 10,684 &10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (allegation that liability insurance would not cover an action brought by the company against its own directors is "variation [ ] on the 'directors suing themselves' and 'participating in the wrongs' refrain."); *Stepak v. Addison*, 20 F.3d 398, 411 (11th Cir. 1994) (same).

Second, the Plaintiffs conclusorily allege that McConnaughy and Bagalay are members of the Company's compensation committee which "determines the compensation level of the Company's executive officers and administers the Company's stock options." Compl. ¶ 94(b). So say the Plaintiffs, the other Directors cannot exercise independence of judgment due to potential ramifications regarding their compensation. Bare assertions of compensation committee membership fail. *In re Sonus Networks, Inc. Derivative Litig.*, No. 040753BLS, 2004 WL 2341395, at *4 (Mass. Super. Sept. 27, 2004) (applying Delaware law, dismissing derivative suit; "allegations that Fern and Severino, by virtue of their positions on Sonus's Compensation Committee" insufficient).

Third, the Plaintiffs allege that Directors McConnaughy, Bagalay and Bushnell, as members of the Audit Committee, "abdicated oversight responsibilities to the company and its shareholders." Compl. ¶ 94(d). Accordingly, the Plaintiffs allege, these directors "breached their duties and face a substantial likelihood of being held liable for same." *Id.* The Plaintiffs' unparticularized leap of illogic cannot substitute for requisite facts. To satisfy their burden, the Plaintiffs would at minimum need to plead particularized facts concerning the operations, practices, and actions of the audit committee. But where facts are necessary, the Complaint is

silent. Rejecting a similar argument in *Guttman*, the court ruled that demand was not excused, with reasoning fully applicable here:

> From the complaint, it is impossible to tell anything about the financial compliance systems in place at NVIDIA during the Contested Period. . . . For all I know, the NVIDIA audit committee met six times a year for half-day sessions, was comprised entirely of independent directors, had retained a qualified and independent audit firm that performed no other services for the company, was given no notice of the alleged irregularities by either management or the audit firm, had paid its audit firm to perform professionally credible random tests of management's integrity in recording revenue and other important financial data, and could not have been expected to discover the accounting irregularities, even when exercising a good faith effort, because discovery required disclosure by management or uncovering by the auditors of conduct deep below the surface of the financial statements.

823 A.2d at 506.

As in *Stratus, Sidhu, Sonus, Gutman* and a litany of other cases, the Plaintiffs' generic, one-size-fits-all allegations in paragraph 94 fail "to allege particular misconduct by the individual directors nor particular circumstances specific to each director," and therefore are insufficient under Rule 23.1.

## II. EACH COUNT OF THE CONSOLIDATED AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Counts II-VI Of The Complaint Must Be Dismissed Pursuant To Rule 12(b)(6) Because The Plaintiffs Have Failed To Allege Legally Cognizable Damages

Counts II-VI of the Complaint assert that the Company has been damaged by the acts of the Defendants because: (i) the revelation of the Company's misrepresentation of its condition and business prospects has damaged the Company's "reputation and goodwill"; and (ii) as a result of pending securities class actions and an SEC investigation, the Company will incur both investigation costs defense costs in resolving the suits. Compl. ¶¶ 1, 35, 36. These alleged damages are speculative, contingent on future events and, accordingly, not legally cognizable.

Indeed, the Northern District of Illinois addressed virtually identical damages claims in a shareholder derivative suit, and held that such claims must be dismissed. In *Dollens v. Zionts,* the plaintiff brought a two-count derivative complaint alleging insider trading and breaches of

fiduciary duty. No. 01 C02826, 2002 WL 1632261, at *8 (N.D. Ill. July 22, 2002). For the latter claim, the plaintiff alleged that the company had been damaged because shareholder class actions had been filed as a result of the alleged breach of fiduciary duties, and as the Plaintiffs allege here, the company's reputation was injured and the company was required to expend resources in defense of the actions. The court dismissed the claim insofar as it was predicated on these alleged damages:

> With respect to plaintiffs' claim for damages based on Westell's exposure to defending class actions, plaintiffs cannot bring a derivative action to recover expenses from a pending securities action involving Westell until the case has proceeded to final judgment or settlement. Thus, this claim for damages is premature and must be dismissed. Moreover, with respect to plaintiffs' claim for damages based on Westell's "integrity in the market" and "loss of goodwill," this claim is conclusional and insufficient because plaintiffs do not apprise defendants of the basis and extent of the alleged damages. Therefore, this claim is dismissed.

*Id.* at *8 (N.D. Ill. July 22, 2002) (citations omitted); *see also In re Symbol Technologies Sec. Litig.*, 762 F. Supp. 510, 517 (E.D.N.Y. 1991) (dismissing derivative suit, rejecting an injury in the marketplace theory and stating "damages must be shown to directly flow from the wrongful acts of defendants, and *not the mere commencement of legal proceedings against the corporation*") (emphasis added); *In re United Telecommunications, Inc., Sec. Litig.*, 1993 WL 100202 (D. Kan. March 4, 1993) (dismissing derivative case in light of pending securities case because "[w]here, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.").

The same holds true here. As in the preceding cases, this case too should be dismissed.

### B. Counts II-VI Also Fail To State A Claim Because The Complaint Fails To Allege Separately The Individual Defendants' Participation In The Purported Wrongful Acts

For the same reasons that the Plaintiffs have failed to plead a "substantial likelihood" of personal liability of the Defendants for demand purposes, see Part I. A. above, Counts II-VI fail to state a claim pursuant to Rule 12(b)(6). *Stratus*, 1992 WL 73555, at *8 (granting Rule

12(b)(6) motion, holding that the failure to separately identify each director's role in the alleged conduct was fatal).

### C. Counts II-VI Are Barred By Wave's Certificate of Incorporation And Accordingly Fail To State A Claim

The allegations of Counts II-VI of the Complaint purport to state claims grounded in negligence[20]—*i.e.*, the Defendants failed to correct disclosures (Count II), abused their control of the Company by doing the same (Count III),[21] grossly mismanaged the Company, by definition, a negligence claim (Count IV), wasted corporate assets by failing to conduct proper supervision (Count V) and were purportedly unjustly enriched based on the foregoing (Count VI). As noted above at Part I.B.3, pursuant to the exculpatory provision for directorial liability in Wave's Certificate of Incorporation, none of these claims may proceed to the extent they are based in negligence. *See Emerald Partners v. Berlin*, 787 A.2d 85, 91-92 (Del. 2001) ("The Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss"); *In re Sagent Technology, Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003) (holding exculpatory clause is properly considered on a motion to dismiss"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277-78 (N.D. Cal. 2000) (dismissing derivative claims that at most, implicated only the duty of care based on exculpatory clause in company's articles and Section 102(b)(7)).

### D. Count V (Waste) Also Fails To State A Claim Upon Which Relief May Be Granted

In Count V, the Plaintiffs allege that "the Individual Defendants have caused Wave Systems to waste valuable corporate assets by paying bonuses to certain of its executive officers . . . ." (Compl. ¶ 118). To plead a claim for waste, however, "a stockholder plaintiff must

---

20 While Count II alleges that the defendants breached their duty of loyalty, no facts are alleged to support the conclusion.

21 Count III also fails to state a legally cognizable claim in its own right. "Abuse of control," at most, appears to be another name for "breach of duty," and in this case Count III is no more than a reiteration of either Count II, IV or V.

generally show that the board 'irrationally squander[ed]' corporate assets—for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all." *White v. Panic*, 783 A.2d 543, 554 (Del. 2001).[22] The Plaintiffs fail to allege *any* facts to establish that the defendants "irrationally squandered" corporate assets in "paying incentive based bonuses and stock options to certain of its executive officers." Indeed, virtually *nothing* is pled regarding *any* of the purportedly "wasteful" compensation. Count V must be dismissed.[23]

**E. Count VI (Unjust Enrichment) Fails To State A Claim Upon Which Relief May Be Granted**

Under Delaware law, the elements of unjust enrichment are: 1) enrichment, 2) an impoverishment, 3) a relation between enrichment and impoverishment, 4) absence of justification and 5) absence of remedy provided by law. *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279 (D. Del. 2000); *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998). The Plaintiffs here allege only that "[b]y their the acts and omissions, the Insider Selling Defendants were unjustly enriched at the expense of and to the detriment of Wave Systems." (Compl. ¶ 122.) The Plaintiffs do not allege facts establishing Wave's "impoverishment." Count VI should be dismissed for failure to state a claim.

**F. Count I (Alleged Insider Trading) Must Be Dismissed Pursuant To Rule 9(b) And Rule 12(b)(6)**

Count I purports to plead a claim for insider trading against Defendants Sprague, Feeney and Bushnell. In support of the claim, the Plaintiffs conclusorily allege that these Defendants possessed proprietary non-public information regarding the Company's condition and business prospects, and that these Defendants sold stock while in possession of the information. Compl.

---

22 A claim of waste based upon executive compensation is particularly difficult to plead. *See Brehm*, 746 A.2d at 262, n.56 ("To be sure, directors have the power, authority and *wide discretion* to make decisions on executive compensation.") (emphasis added).

23 To the extent the Count for waste is based on expenses incurred in defending the securities actions, those damages are speculative and cannot sustain the claim. *See* Part II.B.1, above.

¶¶ 97-99. While Delaware law recognizes a common law cause of action for insider trading where directors misuse company information to profit at the expense of innocent buyers of their stock, *Brophy v. Cities Serv. Co*., 70 A.2d 5 (Del. Ch. 1949), the doctrine "is not designed to punish inadvertence, but to police intentional misconduct." *Guttman*, 823 A.2d at 505. Because the Plaintiffs' insider trading claims "sound in fraud," Rule 9(b) governs.[24]

To plead a claim for insider trading, "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Id*. The Plaintiffs plead no particularized facts to that effect and accordingly, the claims must be dismissed.

---

[24] *See Stratus*, 1992 WL 73555, at *7 (holding that derivative breach of fiduciary duty claims based on allegedly false and misleading statements was subject to Rule 9(b) because they sounded in fraud). Further, "Delaware case law makes the same policy judgment as federal law does, which is that insider trading claims depend importantly on proof that the selling defendants acted with *scienter*." *Guttman, 823 A.2d at 505.* Logically then, under Delaware law an insider trading claim "sounds in fraud" and must be pled with the particularity required by Rule 9(b). *Id.* at 505 n.31 (referencing federal standard of particularity applicable to insider trading and holding "that the plaintiffs did not, under Delaware law, plead particularized facts supporting an [insider trading] claim").

## CONCLUSION

For the forgoing reasons, the Defendants respectfully submit that the Complaint must be dismissed in its entirety, with prejudice.

Respectfully submitted,

**STEVEN SPRAGUE, GERALD T. FEENEY, JOHN E. BAGALAY, JR., NOLAN BUSHNELL, GEORGE GILDER, JOHN E. McCONNAUGHY, JR. AND NOMINAL DEFENDANT WAVE SYSTEMS CORP.**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO#636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: December 22, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on December 22, 2004.

/s/ Michael D. Blanchard
Michael D. Blanchard