# EXHIBIT A

Registration No. 33-75286

## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

RECD S.E.C.

AUG 17 1994

016

94 15 7138

AMENDMENT NO. 4
TO

# Form S-1

REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933

# Wave Systems Corp.
(Exact name of registrant as specified in its charter)

| Delaware | 7379 | 13-3477246 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary standard industrial classification code number) | (I.R.S. Employer Identification No.) |

**599 Lexington Avenue**
**New York, New York 10022**
**(212) 755-3282**
(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

224-109-D

DISCLOSURE INCORPORATED
AUG 18 1994
PROCESSED BY

**Thomas R. Dilk**
**Vice President and Chief Financial Officer**
**Wave Systems Corp.**
**599 Lexington Avenue**
**New York, New York 10022**
**(212) 755-3282**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| | |
|---|---|
| **Jeffrey N. Ostrager, Esq.**<br>**Curtis, Mallet-Prevost, Colt & Mosle**<br>**101 Park Avenue**<br>**New York, New York 10178-0061**<br>**(212) 696-6000** | **Lawrence B. Fisher, Esq.**<br>**Kelley Drye & Warren**<br>**101 Park Avenue**<br>**New York, New York 10178-0061**<br>**(212) 808-7800** |

TOTAL OF SEQUENTIALLY NUMBERED PAGES:
EXHIBIT INDEX ON SEQUENTIALLY NUMBERED PAGE ___ 109

223

**Approximate date of commencement of proposed sale to public:** As soon as practicable after the Registration Statement is declared effective.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box.  ☐

**The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933 or until the Registration Statement shall become effective on such date as the Commission, acting pursuant to said Section 8(a), may determine.**

## INDEX TO EXHIBITS

| Exhibit Number | Exhibit | Sequentially Numbered Page |
|---|---|---|
| 1.1 | — Form of Underwriting Agreement | 110 |
| 3.1 | — Restated Certificate of Incorporation of Registrant | 154 |
| 3.2 | — Bylaws of Registrant | 173 |
| 4.1 | — Form of Stock Certificate of Class A Common Stock | 190 |
| 4.2 | — Form of Representative's Warrant Agreement, including the form of Representative's Warrant | 113 |
| 5.1 | — Opinion of Curtis, Mallet-Prevost, Colt & Mosle | 221 |
| *†10.1 | — License Agreement, dated as of August 31, 1993, between Wave Systems Corp. and National Semiconductor Corporation. | |
| *†10.2 | — Joint Technology Development Agreement, dated as of May 1, 1992, between The Titan Corporation and Cryptologics International, Inc. (Exhibit A to this Agreement is omitted and filed separately as Exhibit 10.3) | |
| *†10.3 | — License and Cross-License Agreement, dated as of May 1, 1992, between The Titan Corporation and Cryptologics International, Inc. | |
| *10.4 | — Amendment to License and Cross-License Agreement, dated as of August 27, 1993, between The Titan Corporation and Wave Systems Corp. | |
| *10.5 | — Amended and Restated License Agreement, dated February 14, 1994, by and among Wave Systems Corp., Peter J. Sprague and John R. Michener. | |
| *10.6 | — Wave Systems Corp. 1994 Stock Option Plan. | |
| *10.7 | — Wave Systems Corp. Non-Employee Directors Stock Option Plan. | |
| 23.1 | — Consent of Curtis, Mallet-Prevost, Colt & Mosle (to be included as part of its opinion to be filed as exhibit 5.1 hereto) | |
| 23.2 | — Consent of KPMG Peat Marwick LLP (included on page S-1) | |
| *24. | — Powers of Attorney (included on signature pages) | |

* Previously filed.

† Confidential treatment has been requested as to portions of this exhibit.

109

Exhibit 3.1

154

RESTATED CERTIFICATE OF INCORPORATION

OF

WAVE SYSTEMS CORP.

Wave Systems Corp., a Delaware corporation, hereby certifies as follows:

1.    The name of the corporation is Wave Systems Corp. (the "Corporation"). The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on August 12, 1988.  The name of the Corporation when it was originally incorporated was Indata Corporation.

2.    This Restated Certificate of Incorporation amends and restates the provisions of the Certificate of Incorporation of the Corporation, and has been adopted in accordance with Sections 242 and 245 of the General Corporation Law of the State of Delaware.  This Restated Certificate of Incorporation was duly adopted by written consent of the stockholders and written notice has been given to stockholders who did not consent in writing, all in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

3.    Upon this Restated Certificate of Incorporation becoming effective pursuant to the Delaware General Corporation Law, all of the authorized shares of common stock of the Corporation issued and outstanding or held in treasury immediately prior to the effective time of this Restated Certificate of Incorporation (the "Old Common Stock") automatically shall be converted on a share-for-share basis into shares of Class B Common Stock without any action by the holders thereof.  All rights appertaining to the Old Common Stock, or accruing by virtue of the ownership thereof, shall immediately cease and terminate, and the holders thereof shall surrender the certificates therefor to the Corporation for cancellation and receive and accept in lieu thereof certificates of Class B Common Stock in exchange for, and in substitution of, the Old Common Stock as above provided.  The voting powers, designations, preferences and relative, participating, optional or other special rights and qualifications of the Class B Common Stock shall be as set forth in this Restated Certificate of Incorporation.

155

4.    The text of the Certificate of Incorporation of the Corporation is amended and restated to read in its entirety as follows:

FIRST.    The name of this Corporation is Wave Systems Corp. (the "Corporation").

SECOND.    The address of the Corporation's registered office in the State of Delaware is 32 Loockerman Square, Suite L-100, in the City of Dover, County of Kent, 19901.    The name of its registered agent at such address is The Prentice Hall Corporation System, Inc.

THIRD.    The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH.    (1)    The total number of shares of stock which the Corporation shall have authority to issue is Forty Million (40,000,000) shares divided into the following classes:

(a)    Twenty-Five Million (25,000,000) shares of Class A Common Stock with a par value of one cent ($0.01) per share;

(b)    Thirteen Million (13,000,000) shares of Class B Common Stock with a par value of one cent ($0.01) per share; and

(c)    Two Million (2,000,000) shares of Preferred Stock with a par value of one cent ($0.01) per share.

(2)    (a)    Each share of Class A Common Stock and each share of Class B Common Stock (collectively, the "Common Stock") shall be identical in all respects and shall have equal powers, preferences, rights, and privileges, except as otherwise provided in this Article FOURTH.

(b)    Except as otherwise provided in paragraph 2(c) of this Article FOURTH, each holder of Class A Common Stock shall be entitled to one (1) vote in respect of each share of Class A Common Stock standing in his name on the

-2-

156

stock transfer records of the Corporation, and each holder
of Class B Common Stock shall be entitled to one (1) vote in
respect of each share of Class B Common Stock standing in
his name on the stock transfer records of the Corporation on
all matters on which stockholders are entitled to vote or
give consent.  Except as otherwise required by law, the
holders of the Class A Common Stock and the holders of the
Class B Common Stock shall in all matters vote together as a
single class, provided, however, that the provisions of
paragraphs 2(b) and 2(c) of this Article FOURTH shall not be
altered, amended or repealed, in whole or in part, without
the affirmative vote of the holders of a majority of the
shares of the Class A Common Stock and the holders of a
majority of the shares of the Class B Common Stock, each
voting separately as a class.

        (c)  Notwithstanding anything to the contrary in
paragraph 2(b) of this Article FOURTH, each holder of Class
A Common Stock shall be entitled to one (1) vote in respect
of each share of Class A Common Stock standing in his name
on the stock transfer records of the Corporation, and each
holder of Class B Common Stock shall be entitled to five (5)
votes in respect of each share of Class B Common Stock
standing in his name on the stock transfer records of the
Corporation on the following matters:

        A.    Any election of directors in which one
or more directors have been nominated by any individual,
firm, corporation or other entity (each a "Person") or group
(within the meaning of Section 13(d)(3) of the Securities
Exchange Act of 1934, as amended) other than by the Board of
Directors of the Corporation, or in the event of an
"Election Contest" (as described in Rule 14a-11 promulgated
under the Securities Exchange Act of 1934, as amended) or
other solicitation of proxies or consents by or on behalf of
a Person or group (within the meaning of Section 13(d)(3) of
the Securities Exchange Act of 1934, as amended), other than
the Board of Directors of the Corporation, for the purpose
of electing directors; and

        B.    Any vote by the stockholders of the
Corporation on any merger, consolidation or reorganization
of the Corporation or any sale, lease, exchange or other
disposition of all or substantially all of the assets of the
Corporation to or with any other Person, unless the

-3-

157

particular business combination or other transaction has been recommended by the Board of Directors of the Corporation.

In addition to the foregoing, each holder of Class A Common Stock shall be entitled to one vote in respect of each share Class A Common Stock standing in his name on the stock transfer records of the Corporation, and each holder of Class B Common Stock shall be entitled to five votes in respect of each share of Class B Common Stock standing in his name on the stock transfer records of the Corporation on all matters on which stockholders are entitled to vote or give consent upon the acquisition (other than directly from the Corporation) by any Person or group (within the meaning of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended) of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Securities Exchange Act of 1934, as amended) of twenty percent (20%) or more of the combined voting power of the Corporation's then outstanding voting securities, except for acquisitions by: (i) the Corporation, (ii) any corporation or other Person of which a majority of its voting power or its equity securities or equity interest is owned directly or indirectly by the Corporation (a "Subsidiary"), (iii) any employee benefit plan of the Corporation or any Subsidiary, (iv) any entity holding securities of the Corporation organized, appointed or established by the Corporation or any Subsidiary for or pursuant to the terms of any such employee benefit plan, or (v) any Person who has beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Securities Exchange Act of 1934, as amended) of 3% or more of the combined voting power of the Corporation's outstanding voting securities at the time of the closing of the Corporation's initial public offering, or any group (within the meaning of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended) which includes any such Person.

(3)   Each share of Class B Common Stock shall be convertible, at the option of the holder thereof, into one fully paid and nonassessable share of Class A Common Stock. Any such conversion may be effected by any holder of Class B Common Stock at any time by surrendering such holder's certificate or certificates representing the Class B Common Stock to be converted, duly endorsed, at the office of the Corporation or any duly appointed and acting transfer agent

-4-

158

for the Class B Common Stock, as applicable, together with a
written notice to the Corporation at such office that such
holder elects to convert all or a specified number of shares
of Class B Common Stock represented by such certificate and
stating the name or names in which such holder desires the
certificate or certificates representing the Class A Common
Stock to be issued.  Any certificate for shares surrendered
for conversion shall be accompanied by instruments of
transfer, in form satisfactory to the Corporation, duly
executed by the holder of such shares or the duly authorized
representative of such holder.  Promptly thereafter, the
Corporation shall issue and deliver to such holder or such
holder's nominee or nominees a certificate or certificates
for the number of shares of Class A Common Stock to which
such holder shall be entitled as herein provided.  Such
conversion shall be deemed to have been made immediately and
automatically at the close of business on the date of
receipt by the Corporation or any such transfer agent, and
the person or persons entitled to receive the Class A Common
Stock issuable on such conversion shall be treated for all
purposes as the record holder or holders of such Class A
Common Stock at the close of business on that date.  A
number of shares of Class A Common Stock equal to the number
of shares of Class B Common Stock outstanding from time to
time shall be set aside and reserved for issuance upon
conversion of shares of Class B Common Stock.  Shares of
Class B Common Stock that have been converted hereunder
shall not be cancelled but shall remain as treasury shares
unless retired by resolution of the Board of Directors.
Class A Common Stock shall not be convertible into Class B
Common Stock.

        (4)   (a)  A Beneficial Owner (as hereinafter
defined) of shares of Class B Common Stock (hereinafter
referred to as a "Class B Stockholder") may transfer,
directly or indirectly, shares of Class B Common Stock,
whether by sale, assignment, gift or otherwise, only to a
Class B Permitted Transferee (as hereinafter defined) and no
Class B Stockholder may otherwise transfer Beneficial
Ownership (as hereinafter defined) of any shares of Class B
Common Stock.  In the event of any attempted transfer of the
Beneficial Ownership of any shares of Class B Common Stock
in violation of the limitation provided in the preceding
sentence, the shares of Class B Common Stock with respect to
which the transfer of such Beneficial Ownership has been

-5-

159

attempted shall be deemed to have been converted automatically, without further deed or action by or on behalf of any person, into shares of Class A Common Stock. A "Class B Permitted Transferee" shall be, if the Class B Stockholder is an individual:

(A)  the estate of the Class B Stockholder or any legatee, heir or distributee thereof;

(B)  the spouse or former spouse of the Class B Stockholder;

(C)  any parent or grandparent and any lineal descendant (including any adopted child) of any parent or grandparent of the Class B Stockholder or of the Class B Stockholder's spouse or former spouse;

(D)  any guardian or custodian (including a custodian for purposes of the Uniform Gift to Minors Act or Uniform Transfers to Minors Act) for, or any executor, administrator, conservator and/or other legal representative of, the Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof;

(E)  a trust (including a voting trust), and any savings or retirement account, such as an individual retirement account for purposes of federal income tax laws, whether or not involving a trust, principally for the benefit of such Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof, including any trust in respect of which such Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof has any general or special power of appointment or general or special non-testamentary power or special testamentary power of appointment limited to any Class B Permitted Transferee or Class B Permitted Transferees;

(F)  any corporation, partnership or other business entity if Substantial Beneficial Ownership (as hereinafter defined) thereof is held by such Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof; provided, however, that if such Class B Stockholder, and all Class B Permitted Transferees thereof, cease, for whatever reason, to hold

-6-

160

Substantial Beneficial Ownership of such corporation, partnership or other business entity, then any and all shares of Class B Common Stock that such corporation, partnership or other business entity, is the Beneficial Owner of shall be deemed to be converted automatically, without further deed or action by or on behalf of any person, into shares of Class A Common Stock;

(G)  any individual or entity which holds Class B Common Stock at the time of the transfer; and

(H)  the Corporation.

A "Class B Permitted Transferee" shall be, if the Class B Stockholder is a corporation, partnership or other business entity:

(A)  any employee benefit plan, or trust thereunder or therefor, sponsored by the Class B Stockholder;

(B) any trust (including any voting or liquidating trust) principally for the benefit of the Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof;

(C) any corporation, partnership or other business entity if Substantial Beneficial Ownership thereof is held by such Class B Stockholder and/or any Class B Permitted Transferee or Class B Permitted Transferees thereof; provided, however, that if such Class B Stockholder, and all Class B Permitted Transferees thereof, cease, for whatever reason, to hold Substantial Beneficial Ownership of such corporation, partnership or other business entity, then any and all shares of Class B Common Stock that such corporation, partnership or other business entity is the Beneficial Owner of shall be deemed to be converted automatically, without further deed or action by or on behalf of any person, into shares of Class A Common Stock;

(D) the stockholders of the corporation, partners of the partnership or other owners of equity interests in any other business entity, who receive such shares, by way of dividend or distribution (upon dissolution, liquidation or otherwise), provided that such transfer will not result

-7-

in Beneficial Ownership of any such shares by any person who did not have the power to control such corporation, partnership or business entity at the time such corporation, partnership or business entity first acquired Beneficial Ownership of such shares of Class B Common Stock (other than by any person who qualifies as a Class B Permitted Transferee pursuant to any other provision of this paragraph (4) (a) of this Article FOURTH);

(E) any individual or entity which holds Class B Common Stock at the time of the transfer; and

(F) the Corporation.

(b)  Any person who holds shares of Class B Common Stock for the Beneficial Ownership of another, including (A) any broker or dealer in securities; (B) any clearing house; (C) any bank, trust company, savings and loan association or other financial institution; (D) any other nominee; and (E) any savings plan or account, or related trust, such as an individual retirement account, principally for the benefit of any individual, may transfer such shares to the person or persons for whose benefit it holds such shares.

Notwithstanding anything to the contrary set forth herein, any holder of Class B Common Stock may pledge such shares to a pledgee pursuant to a bona fide pledge of such shares as collateral security for indebtedness due to the pledgee, provided that such shares may not be transferred to or registered in the name of the pledgee unless such pledgee is a Class B Permitted Transferee with respect to Class B Common Stock.  In the event of foreclosure or other similar action by the pledgee, such pledged shares shall automatically, without any act or deed on the part of the Corporation or any other person, be converted into shares of Class A Common Stock unless within five business days after such foreclosure or similar event such pledged shares are returned to the pledgor or transferred to a Class B Permitted Transferee.  The foregoing provisions of this paragraph shall not be deemed to restrict or prevent any transfer of such shares by operation of law upon incompetence, death, dissolution or bankruptcy of any Class B Stockholder or any provision of law providing for, or judicial order of, forfeiture, seizure or impoundment.

-8-

162

(c)  Any transferee of shares of Class B Common Stock pursuant to a transfer made in violation of paragraph (4)(a) of this Article FOURTH shall have no rights as a stockholder of the Corporation and no other rights against or with respect to the Corporation except the right to receive, in accordance with paragraph (3) of this Article FOURTH, shares of Class A Common Stock upon the conversion of such transferred shares.  Notwithstanding any other provision of this Restated Certificate of Incorporation, the Corporation shall, to the fullest extent permitted by law, be entitled to issue shares of Class B Common Stock to any person from time to time.

(d)  The Corporation and any transfer agent of Class B Common Stock may, as a condition to the transfer or the registration of any transfer of shares of Class B Common Stock permitted by paragraph (4)(a) of this Article FOURTH, require the furnishing of such affidavits or other proof as they deem necessary to establish that such transferee is a Class B Permitted Transferee.

(e)  For purposes of paragraph (4)(a) of this Article FOURTH, the term "Beneficial Ownership" in respect of shares of Class B Common Stock shall mean possession of the power and authority, either singly or jointly with another, to vote or dispose of, or to direct the voting or disposition of, such shares and the term "Beneficial Owner" in respect of shares of Class B Common Stock shall mean the person or persons who possess such power and authority.  For purposes of paragraph (4)(a) of this Article FOURTH,  the term "Substantial Beneficial Ownership" in respect of any corporation, partnership or other business entity shall mean possession of the power and authority, either singly or jointly with another, to vote or dispose of, or to direct the voting or disposition of, at least 80% of each class of equity ownership interest in such corporation, partnership or other business entity.

(5)  (a)  Holders of Class A Common Stock and Class B Common Stock shall be entitled to share ratably as a single class in all dividends and other distributions of cash, shares of capital stock of the Corporation, other securities of the Corporation or any other company or any other securities of the Corporation or any other right or property as may be declared thereon by the Board of Directors from

-9-

163

time to time out of assets or funds of the Corporation legally available therefor.

(b)    Dividends may be paid in shares of Class A Common Stock or Class B Common Stock, but shares of Class A Common Stock may be paid only to holders of Class A Common Stock and shares of Class B Common Stock may be paid only to holders of Class B Common Stock and the same number of shares shall be paid in respect of each outstanding share of Class A Common Stock and Class B Common Stock.

(c)    In the event the Corporation shall be liquidated (either partially or completely), dissolved or wound up, whether voluntarily or involuntarily, each share of Class A Common Stock and Class B Common Stock shall be entitled to an equal distribution of net assets.

(d)    Whenever the Corporation shall (A) declare a dividend on shares of any class of Common Stock in shares of such class of Common Stock or in securities convertible into or exchangeable for shares of such class of Common Stock, (B) subdivide the outstanding shares of any class of Common Stock, (C) combine the outstanding shares of any class of Common Stock into a smaller number of shares, or (D) issue any shares of any class of Common Stock upon reclassification of such shares, an identical dividend, subdivision, combination or other adjustment shall be made with respect to the shares of the other class or classes of Common Stock.

(e)    In any merger, consolidation, or business combination, the consideration to be received per share by the holders of Class A Common Stock and Class B Common Stock must be identical for each class of stock, except that in any such transaction in which shares of common stock are to be distributed, such shares may differ as to voting rights to the extent that voting rights now differ among the Class A Common Stock and Class B Common Stock.

(6)    In addition to a series of Preferred Stock designated as "Series A Cumulative Redeemable Preferred Stock," the terms of which are set forth below, the Board of Directors is authorized, subject to limitations prescribed by law and to the provisions of this Article FOURTH, to provide for the issuance of Preferred Stock from time to

-10-

164

time in one or more series with such distinctive serial
designations, rights, preferences, and limitations of the
shares of each such series as the Board of Directors shall
establish, by adopting a resolution and by filing a
certificate of designations pursuant to the General
Corporation Law of the State of Delaware.   The authority of
the Board of Directors with respect to each series shall, to
the extent allowed by such law, include the authority to
establish and fix the following:

> (a)   The number of shares initially
> constituting the series and the distinctive
> designation of that series;

> (b)   The extent, if any, to which the
> shares of that series shall have voting
> rights, whether none, full, fractional or
> otherwise limited;

> (c)   Whether the shares of that series
> shall be entitled to receive dividends (which
> may be cumulative or noncumulative) and, if
> so, the rate or rates, the conditions, and
> the times payable and whether payable in
> preference to, or in some other relation to,
> the dividends payable on any other class or
> classes or any other series of the same or
> any other class or classes of stock of the
> Corporation;

> (d)   The rights of the shares of that
> series in the event of voluntary or
> involuntary liquidation, dissolution or
> winding up of the Corporation, or upon any
> distribution of its assets;

> (e)   Whether the shares of that series
> shall have conversion privileges and, if so,
> the terms and conditions of such conversion
> privileges, including provision, if any, for
> adjustment of the conversion rate and for
> payment of additional amounts by holders of
> Preferred Stock of that series upon exercise
> of such conversion privileges;

165

(f)  Whether or not the shares of that series shall be redeemable, and, if so, the price at and the terms and conditions upon which such shares shall be redeemable, and whether that series shall have a sinking fund for the redemption or purchase of shares of that series, and, if so, the terms and amount of each sinking fund; and

(g)  Such other preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof.

Notwithstanding the fixing of the number of shares constituting a particular series upon the issuance thereof, the Board of Directors may at any time thereafter authorize the issuance of additional shares of the same series or may reduce the number of shares constituting such series (but not below the number of shares thereof then outstanding).

(7)  A statement of the designations, powers, preferences, rights, qualifications, limitations and restrictions in respect of Series A Cumulative Preferred Stock is as follows:

1.    Designation and Amount

The shares of this series shall be designated as "Series A Cumulative Redeemable Preferred Stock" (hereinafter referred to as the "Series A Preferred Stock"), par value $.01 per share, and the number of shares constituting such series shall be 360.

2.    Rank

The Series A Preferred Stock shall, with respect to dividend rights and rights on liquidation, winding up and dissolution, rank (a) on a parity with any other series of Preferred Stock hereafter established by the Board of Directors, and (b) prior to any equity securities of the Corporation to which the Series A Preferred Stock ranks prior, including the Common Stock par value $.01 share.

-12-

166

3.    **Dividends**

Holders of shares of Series A Preferred Stock will be entitled to receive, when and as declared by the Board of Directors of the Corporation out of assets of the Corporation legally available for payment, a dividend at the rate of Sixty Dollars ($60.00) per annum.   Dividends on the Series A Preferred Stock will be cumulative from the date of original issue, and shall be payable upon redemption of the shares of Series A Preferred Stock.   Unless full cumulative dividends on the Series A Preferred Stock have been declared and a sum sufficient for the payment thereof set apart for such payment, no dividends (other than in Common Stock or another stock ranking junior to the Series A Preferred Stock as to dividends and liquidation rights) shall be declared or paid or set aside for payment or other distribution made upon the Common Stock of the Corporation or on any other stock of the Corporation ranking junior to or on a parity with the Series A Preferred Stock as dividends or liquidation rights, nor shall any Common Stock or any other stock of the Corporation ranking junior to or on parity with the Series A Preferred Stock as to dividends and liquidation preference be redeemed, purchased or otherwise acquired for any consideration (or any payment made to or available for a sinking fund for the redemption of any shares or such stock) by the Corporation (except by conversion into or exchange for stock of the Corporation ranking junior to the Series A Preferred Stock as to dividends and liquidation preference).

4.    **Liquidation Preference**

In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of shares of Series A Preferred Stock are entitled to receive out of assets of the Corporation available for distribution to stockholders, before any distribution of assets is made to holders of Common Stock or any other stock of the Corporation ranking junior to or on a parity with the Series A Preferred Stock as to liquidation preference, liquidating distributions in the amount of One Thousand Dollars ($1,000) per share, except that if such voluntary or involuntary liquidation, dissolution or winding up of the Corporation is approved prior to April 19, 1993, then the amount of such liquidating distribution shall be Three Hundred Forty-Seven Dollars and Twenty-Two Cents

-13-

167

($347.22) per share.  The date of the approval of a liquidation, dissolution or winding up of the Corporation shall be the date upon which such action is approved by the stockholders of the Corporation.  If upon any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the amounts payable with respect to the Series A Preferred Stock and any other shares of stock of the Corporation ranking as to any such distribution on a parity with the Series A Preferred Stock are not paid in full, the holders of the Series A Preferred Stock and of such other shares will share ratably in any such distribution of assets of the Corporation in proportion to the full respective preferential amounts to which they are entitled.  After payment of the full amount of the liquidating distribution to which they are entitled, the holders of shares of Series A Preferred Stock will not be entitled to any further participation in any distribution of assets by the Corporation.  Under this paragraph 2, a distribution of assets in any dissolution, winding up, liquidation or reorganization shall not include (i) any consolidation or merger of the Corporation with or into any other corporation, (ii) any dissolution, liquidation, winding up, or reorganization of the Corporation immediately followed by reincorporation of another corporation, or (iii) a sale or other disposition of all or substantially all of the Corporation's assets to another corporation, provided that in each case effective provision is made in the certificate of incorporation of the resulting or surviving corporation or other side for the protection of the rights of the holders of the Series A Preferred Stock.

5.    Redemption

        5.1. <u>General</u>.  Shares of the Series A Preferred Stock shall be redeemable at any time, in whole but not in part, at the option of the Corporation, at one Thousand Dollars ($1,000) per share of the Series A Preferred Stock, except that if said Preferred Stock is redeemed on or before April 19, 1993, it shall be redeemable at Three Hundred Forty-Seven Dollars and Twenty-Two Cents ($347.22) per share.

        5.2. <u>Mandatory Redemption</u>.  On October 19, 1997, the Corporation shall purchase and redeem, at One Thousand

-14-

168

Dollars ($1,000) per share, all outstanding shares of Series A Preferred Stock.

5.3. <u>Dividend Payments</u>. The redemption prices set forth in Paragraph 5.1 and 5.2 are in addition to dividends payable with respect to the Series A Preferred Stock pursuant to Section 3.

5.4. <u>Notice of Redemption</u>. Notice of redemption will be mailed at least 15 days but not more than 60 days before the redemption date to each holder of shares of Series A Preferred Stock to be redeemed at the address shown on the books of the Corporation. On and after the redemption date, notwithstanding that any certificate representing Series A Preferred Stock so called for redemption shall not have been surrendered for cancellation, providing the funds for redemption have been set aside, the shares of Series A Preferred Stock represented thereby shall no longer be deemed outstanding, and the holders of such certificate or certificates shall have with respect to such shares no right in or with respect to the Corporation other than to receive the redemption price, without interest, upon the surrender of such certificates, and such Series A Preferred Stock shall not be transferred on the books of the Corporation except to the Corporation. Except as otherwise expressly provided in paragraph 1, nothing contained herein shall in any way limit the Corporation's right to purchase at such time and for such consideration as the Corporation shall deem appropriate, out of any funds legally available for such purpose, any preferred stock from any holder thereof of the Corporation.

5.5. <u>Status of Redeemed Shares</u>. Any Series A Preferred Stock which is redeemed shall resume the status of authorized but unissued shares of preferred stock of the Corporation.

6.    Voting Rights

6.1. <u>General</u>. The holders of the Series A Preferred Stock shall not be entitled to voting rights with respect to the shares of Series A Preferred Stock held by such holders, except as required under the laws of the State of Delaware.

-15-

169

6.2. <u>Issuance of Other Series of Preferred Stock</u>. Without the consent of the holders of Series A Preferred Stock, the Corporation may issue other series of preferred stock which are pari passu with the Series A Preferred Stock as to dividends and liquidation preferences.

FIFTH.  The business, property, and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.  The number of directors shall be fixed by, or in the manner provided in, the By-laws. Advance notice of nominations for the election of directors, other than nominations by the Board of Directors or a committee thereof, shall be given to the Corporation in the manner provided in the By-laws.

SIXTH.  In furtherance and not in limitation of the powers conferred by law, the Board of Directors is expressly authorized to make, alter, amend and repeal the By-laws of the Corporation, subject to the power of the holders of the capital stock of the Corporation to alter, amend or repeal the By-laws; provided, however, that with respect to the power of the holders of the capital stock of the Corporation to alter, amend or repeal the By-laws of the Corporation, notwithstanding any other provision of this Restated Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any particular class or series of the capital stock of the Corporation required by law, this Restated Certificate of Corporation or any designation of Preferred Stock, the affirmative vote of the holders of at least 80% of the combined voting power of the Corporation's outstanding voting securities, voting together as a single class, shall be required to (i) alter, amend or repeal any provision of the By-laws, or (ii) alter, amend or repeal any provision of this Article SIXTH.

SEVENTH.  Subject to the rights of the holders of any series of Preferred Stock with respect to such series of Preferred Stock, (A) any action required or permitted to be taken by the stockholders of the Corporation must be effected at an annual or special meeting of stockholders of the Corporation and may not be effected by any consent in writing by such stockholders and (B) special meetings of stockholders of the Corporation may be called only by the

-16-

Board of Directors of the Corporation or the Executive
Committee of the Board of Directors of the Corporation.
Notwithstanding any other provision of this Restated
Certificate of Incorporation or any provision of law which
might otherwise permit a lesser vote or no vote, but in
addition to any affirmative vote of the holders of any
particular class or series of the capital stock of the
Corporation required by law, this Restated Certificate of
Incorporation or any designation of Preferred Stock, the
affirmative vote of the holders of at least 80% of the
combined voting power of the Corporation's outstanding
voting securities, voting together as a single class, shall
be required to alter, amend or repeal this Article SEVENTH.

EIGHTH.  A director of the Corporation shall not
be personally liable to the Corporation or its stockholders
for monetary damages for breach of fiduciary duty as a
director, except for liability (i) for any breach of the
director's duty of loyalty to the Corporation or its
stockholders, (ii) for acts or omissions not in good faith
or which involve intentional misconduct or a knowing
violation of law, (iii) under Section 174 of the General
Corporation Law of the State of Delaware, as the same exists
or hereafter may be amended, or (iv) for any transaction
from which the director derived an improper personal
benefit.  If the General Corporation Law of the State of
Delaware hereafter is amended to authorize the further
elimination or limitation of the liability of directors,
then the liability of a director of the Corporation, in
addition to the limitations on personal liability provided
herein, shall be limited to the fullest extent permitted by
the amended General Corporation Law of the State of
Delaware.  Any repeal or modification of this paragraph by
the stockholders of the Corporation shall be prospective
only, and shall not adversely affect any limitation on the
personal liability of a director of the Corporation existing
at the time of such repeal or modification.

NINTH:  The corporation shall, to the fullest
extent permitted by Section 145 of the General Corporation
Law of the State of Delaware, as the same may be amended and
supplemented, indemnify any and all persons whom it shall
have power to indemnify under said section from and against
any and all of the expenses, liabilities or other matters
referred to in or covered by said section, and the indemni-

171

fication provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any By-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

IN WITNESS WHEREOF, said Wave Systems Corp. has caused its corporate seal to be hereunto affixed and this Restated Certificate of Incorporation to be signed by Peter J. Sprague, its Chairman and Chief Executive Officer, and attested by Thomas R. Dilk, its Assistant Secretary, this ____ day of June, 1994.

WAVE SYSTEMS CORP.


By:_____
      Name: Peter J. Sprague
      Title: Chairman and Chief
               Executive Officer



ATTEST:



By:_____
      Name:  Thomas R. Dilk
      Title: Assistant Secretary


MCC124AF.WP

-18-

172