# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STEVE SACHS,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION** |
| **STEVEN SPRAGUE, ET AL,** | ) **NO.  04-30032-MAP** |
| **Defendant.** | ) |
| | ) |
| | ) **REQUEST FOR ORAL ARGUMENT** |
| | ) |
| | ) |
| | ) |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ………………………………………………………………… ii

PRELIMINARY STATEMENT……………………………………………………………1

I.    THE PLAINTIFFS CITE NO CASE HOLDING THAT MERE PAST
RELATIONSHIPS WITH A NON-DIRECTOR/NON-DEFENDANT COULD
EXCUSE DEMAND—AND THOSE CASES RELIED UPON DEFEAT THE
PLAINTIFFS' ARGUMENT ........................................................................ 2

    A.    The Plaintiffs' Attempt To Argue That The Complaint Alleges
"Domination And Control" By "The Spragues" Fails ........................................... 5

        1.    The Complaint Fails To Allege "Voting Control".................................... 5

        2.    The Complaint Alleges No Facts That Could Impugn The
Independence Of Either The 2001 Or The 2004 Board............................ 7

    B.    The Cases Cited By The Plaintiffs Provide No Support For Their
Argument, And Instead Demonstrate The Deficiencies Of The Complaint ........ 11

        1.    The Only Cases Cited By Plaintiffs Relying Upon "Personal
Relationships" Involved The Inapposite Context Of Special
Litigation Committees And In Any Event Are Factually Not
Analogous ........................................................................................ 11

        2.    As The Plaintiffs Here Fail To Particularize Any Financial
Dependence Of The Board On "The Spragues," Their Cases
Involving Demand Excusal In That Context Are Inapposite................... 12

        3.    The Plaintiffs Citations To Cases Decided Outside The Rule 23.1
Context Are Unavailing ...................................................................... 13

II.   THE OPPOSITION CITES NO CASE HOLDING THAT DEMAND IS
EXCUSED BASED ON CONCLUSORY ALLEGATIONS OF INSIDER
TRADING BY A MINORITY OF THE BOARD—BECAUSE THERE IS
NONE ................................................................................................... 14

III.  THE COMPLAINT FAILS TO STATE CLAIMS FOR WHICH RELIEF MAY
BE GRANTED ........................................................................................ 15

    A.    As Demonstrated By the Cases Cited By Plaintiffs, Rule 9(b) Applies to
the Plaintiffs' Breach of Fiduciary Duty-Based Insider Selling Claims,
And the Complaint Does Not Satisfy Rule 9(b) .................................. 15

    B.    To The Extent That The Plaintiffs Plead Negligence-Based Claims
Wave's Certificate Of Incorporation Properly Bars This Action ....................... 18

    C.    The Plaintiffs Have Not Pled Damages With Respect To Counts II-VI.............. 18

    D.    The Plaintiffs' Arguments Fail To Save Their Claims For Unjust
Enrichment And Waste ........................................................................ 19

CONCLUSION ................................................................................................. 20

TABLE OF AUTHORITIES

Page

**CASES**

*Beam ex rel. Martha Stewart Living Omnimedia*, 845 A.2d 1040 (Del. 2004) .............3, 11

*Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) ..........................................................11

*Bodkin v. Mercantile Stores Co., Inc.*, No. 13770, 1996 WL 652763 (Del. Ch. Nov. 1, 1996) ...................................................................................................................3

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...................................................................8, 9

*In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996) ...................................................................................................................................15

*Dollens v. Zionts*, No. 01 C02826, 2002 WL 1632261 (N.D. Ill. July 22, 2002) ........18, 19

*In re eBay, Inc. Shareholders Litigation,* No. C.A. 19988-NC, 2004 WL 253521 (Del. Ch. Jan. 23, 2004) ......................................................................................................13

*Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001) .....................................................18

*EPS Solutions Corp. v. Deloite & Touche, LLP*, No. 00 C 7411, 2002 WL 441510 (N.D. Ill. Mar. 20, 2002) .......................................................................................................16

*Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) ...................7

*Grace Brothers, Ltd. v. Uniholding Corp.,* No. Civ. A. 17612, 2000 WL 982401 (Del. Ch. July 12, 2000) .......................................................................................................12

*In re Grace Energy Corp. Shareholders Litigation,* No. Civ. A. 12,464, 1992 WL 145001 (Del. Ch. June 26, 1992) ................................................................................3

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ..........................................................17

*International Equity Capital Growth Fund, L.P. v. Clegg,* No. Civ. A. 14995, 1997 WL 208955 (Del. Ch. Apr. 22, 1997) ...............................................................13

*Isanaka v. Spectrum Technologies USA Inc.*, 131 F. Supp. 2d 353 (N.D.N.Y. 2001) ...................................................................................................................................16

*Krieger v. Gast*, , NO. 4:99-CV-86, 2000 WL 288442 (W.D. Mich. Jan. 21, 2000) ........16

*Landy v. D'Allesandro,* 316 F. Supp. 2d 49 (D. Mass. 2004)............................................14

*LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279 (D. Del. 2000)................................20

*Mehlman v. Anusavice,* No. Civ. A. 86-0394-S, 1987 WL 12553 (D. Mass. June 11, 1987) ................................................................................................16

*In re New Valley Corp.,* No. Civ. A. 17649, 2001 WL 50212 (Del. Ch. Jan 11, 2001) ...............................................................................................................12

*Official Committee of Unsecured Creditors of Integrated Health Services, Inc., v. Elkins, et al,* No.Civ.A. 20228, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004) ...........19

*Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 277 B.R. 20 (S.D.N.Y. 2002) .......................................................................................16

*In re Oracle Corp. Derivative Litigation,* 824 A.2d 917 (Del. Ch. 2003) .........................11

*Orman v. Cullman,* 794 A.2d 5 (Del. Ch. 2002) ........................................................4, 5, 14

*Parfi Holding AB v. Mirror Image Internet, Inc.,* 794 A.2d 1211 (Del. Ch. 2001) ...........13

*In re Ply Gem Industries, Inc. Shareholders Litigation,* No. Civ. A. 15779-NC, 2001 WL 755133 (Del. Ch. June 26, 2001) ................................................................14

*Rattner v. Bidzos,* No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ..............9, 14
.......................................................................................................................15, 17

*Roskos v. Shearson/American Exp., Inc.,* 589 F. Supp. 627 (E.D. Wis. 1984) .................17

*SSDD Enterprises, Inc. v. Village of Lansing,* No. 95 C 6064, 1996 WL 238931 (N.D. Ill. May 3, 1996) ................................................................................................7

*In re Sagent Technologies, Inc. Derivative Litigation,* 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......................................................................................................................18

*Seidel v. Public Service Co. of New Hampshire,* 616 F. Supp. 1342 (D.N.H. 1985) ........17

*Sekuk Global Enterprises Profit Sharing Plan v. Kevenides,* Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 WL 1982508 (Md. Cir. Ct. May 25, 2004) .............................................................................................................8

*Shapiro v. Miami Oil Producers, Inc.,* 84 F.R.D. 234 (D. Mass. 1979) ...........................16

*Shaw v. Digital Equipment Corp.,* 82 F.3d 1194 (1st Cir. 1996) ......................................17

*Steiner v. Meyerson,* No. Civ. A. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995) ...........................................................................................................................13

*Stepak v. Dean,* 434 A.2d 388 (Del. Ch. 1981) ..................................................................9

*In re Stratus Computer, Inc. Sec. Litigation,* Civ.A. 89-2075-Z, 1992 WL 73555
 (D. Mass. March 27, 1992) ........................................................................16

*In re Symbol Technologies Sec. Litigation*, 762 F. Supp. 510 (E.D.N.Y. 1991) ..............18

*Telxon Corp. v. Meyerson*, 802 A.2d 257 (Del. 2002) ......................................................14

*Wajda v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29 (D. Mass. 2000).....................16

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) .............................................................9, 10

*Zapata v. Maldonado*, 430 A.2d 779 (Del. Supr. 1981) ...................................................11

## PRELIMINARY STATEMENT

The Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motion To Dismiss ("Plaintiffs' Opposition" or "Opp.") only further demonstrates that the Complaint must be dismissed because the Plaintiffs were required to make pre-suit demand upon Wave's Board of Directors.  As the Opposition makes clear, the Plaintiffs' demand futility allegations rest almost entirely on purported "relationships" between Wave's current Board members and *Peter* Sprague—the non-director, non-defendant founder of the Company.  The Plaintiffs' arguments that the current Board is "dominated and controlled" by "the Spragues," however, are without substance.

To begin with, the Complaint, and the documents incorporated therein, establish that neither Peter Sprague nor the "Spragues" as a whole have voting control of the Company.  Even if that were not the case, the Delaware Supreme Court has affirmed dismissal on Rule 23.1 grounds where an interested board member (Martha Stewart) possessed 94% voting control because the remaining allegations, as here, failed to show a reasonable doubt about the board's independence or disinterest.   The Plaintiffs' allegations here about purported disabling relationships are even less persuasive than those rejected by the Delaware Supreme Court in *Beam*.   One of the Plaintiffs' centerpiece allegations, for instance, involves quotes from an August 2003 "Free Republic article" concerning certain Board member loan transactions in 2001.  As demand futility must be measured at the time the Complaint is filed (*i.e.* 2004), the article carries no weight.   But even if it did, the allegation that the Company made loans to directors (which were repaid) in no way supports demand futility.  Otherwise, the Plaintiffs rest their demand futility arguments on the *conclusions* drawn by the author of the article—a pleading tactic that the Delaware Supreme Court has roundly rejected.  It was the Plaintiffs'

1

burden to utilize the "tools at hand" (a Delaware corporate books and records request) to attempt to verify the article's editorialized conclusions, both as to Wave's Board in 2001 and in 2004. The Plaintiffs have not, and their Complaint must fail.

Even if demand were somehow excused, (and it is not), the Complaint fails to state a claim. With respect to insider trading, the very cases the Plaintiffs cite to argue that Rule 9(b) is inapplicable unequivocally hold that Rule 9(b) applies to fraud-based breach of duty claims. The Plaintiffs' insider trading claims are unmistakably fraud-based, yet the Complaint fails to satisfy Rule 9(b). The remainder of the claims are also properly dismissed because the Plaintiffs have failed to plead legally cognizable damages. While the Plaintiffs make the straw man argument that insider trading profits are sufficient damages, the Defendants have not moved for dismissal of the insider trading claims on this basis. Otherwise, the case law is clear—loss of market capitalization as a result of legal proceedings (exactly as alleged here regarding the drop in stock price following the SEC investigation) fails as a matter of law. Even if this were not the case, the Plaintiffs' negligence-based claims are barred by Wave's Certificate of Incorporation. To the extent the Plaintiffs' claims are intended as intentional tort claims, Rule 9(b) applies and the Complaint utterly fails to particularize the allegations, lumping the Defendants together as a group and otherwise failing to give adequate notice of each claim as against each defendant.

For these, and the reasons stated in the Defendants' Memorandum Of Law In Support Of their Motion to Dismiss the Complaint ("Def. Br."), the Complaint must be dismissed.

## **REPLY**

## I.    **THE PLAINTIFFS CITE NO CASE HOLDING THAT MERE PAST RELATIONSHIPS WITH A NON-DIRECTOR/NON-DEFENDANT COULD EXCUSE DEMAND—AND THOSE CASES RELIED UPON DEFEAT THE PLAINTIFFS' ARGUMENT**

Predictably, the centerpiece of the Plaintiffs' argument rests on purported "relationships"

between the directors and *Peter* Sprague, a non-director, non-defendant, mere minority shareholder of the Company. Also predictably, the Plaintiffs fail to cite a single case holding that such "relationships" with an individual who (i) has no means to affect the directors' financial interests, (ii) has no means to control the directors' participation on the board, and (iii) is neither a director nor a defendant and thus faces no potential liability, could suffice to excuse demand.[1]

There is good reason for the Plaintiffs' failure to adduce any authority in support of their position. First, as a general matter, mere allegations of personal relationships, particularized or not, are insufficient to excuse demand unless, in some circumstances, the relationship "border[s] on or even exceed[s] familial loyalty and closeness." *Beam ex rel. Martha Stewart Living Omnimedia*, 845 A.2d 1040, 1050 (Del. 2004). As demonstrated in the Defendants' moving brief, largely unanswered by the Opposition, even if Peter Sprague *were* a director facing liability, the Plaintiffs' generic allegations of moving in the same social circles, longtime friendship and professional affiliation would be insufficient. Def. Br. at 12. Rather, the Complaint here alleges no more than "structural bias"—presupposing "that the professional and social relationships that naturally develop among members of a board impede independent decisionmaking" which, as the Delaware Supreme Court has reaffirmed, is far from sufficient to excuse demand. *Beam*, 845 A.2d at 1050-51.

In any event, the relationships alleged must be with an "interested party"—typically a director who faces liability. *Beam*, 845 A.2d 1050; *Bodkin v. Mercantile Stores Co., Inc.*, No. 13770, 1996 WL 652763, at *4 (Del. Ch. Nov. 1, 1996) (rejecting demand futility allegations

---

[1] The Plaintiffs are correct to point out that no case precludes consideration of the directors' relationships with non-defendant Peter Sprague. Opp. at 12 n.13. The Plaintiffs overlook, however, that those few cases addressing the issue have held that mere relationships with a corporation's founding family member are insufficient. *See In re Grace Energy Corp. S'holders Litig.*, No. Civ. A. 12,464, 1992 WL 145001 (Del. Ch. June 26, 1992) (denying preliminary injunction to block minority shareholder cash-out merger, holding that mere assertion of a director's longtime personal friendship with corporation's founding family was insufficient to constitute director interest).

based on relationships with "the Millikens," a group of family members/directors;  "plaintiffs have not demonstrated a reasonable doubt that the Millikens are disinterested.  Without [a] link to an interested party, plaintiffs' allegations fail. . . .").  Peter Sprague—neither a director nor a defendant—is not an interested party.[2]

The Plaintiffs have responded with contentions that certain excerpts from reports in the media demonstrate that the Board is dominated and controlled by "the Spragues."  Opp. at 12-14.  As set forth below, to the extent such reports can be considered at all as a substitute for factual allegations resulting from an investigation culminating in a verified complaint, they fail to support the Plaintiffs' demand futility allegations.  In a word, the facts (as opposed to editorial conclusions) contained in these "reports" provide nothing by way of demonstration that the Board has been under the control of the Spragues, and even if that were not the case, the reports concern the Board in 2001, under different composition.

As for the authority relied upon by the Plaintiffs, the decisions cited have no applicability to the allegations at issue here.[3]  The Plaintiffs rely on cases decided outside the Rule 23.1 context, with burdens and legal standards that differ vastly from the evaluation this Court must make.  As for those cases actually decided in the Rule 23.1 context, each involve facts where the directors were *financially* interested (*i.e.* not mere personal relationships).  If anything, the cases demonstrate what is lacking from the Complaint.

---

[2]  While the Plaintiffs attempt to attribute the Defendants' alleged relationships with Peter Sprague to Steven Sprague, they fail to offer any particularized allegations as to how "the Spragues" may influence either the directors' participation on the Board or their economic worth.

[3]  The Plaintiffs argue that, while each of the allegations alone may be insufficient, taken together they excuse demand.  As the court held in *Orman*, relied upon throughout the Opposition, "*Inadequate pleadings* in support of separate allegations of interest and lack of independence *cannot be combined to create an inference that a director's conduct was improper.*"  *Orman v. Cullman,* 794 A.2d 5, 27 (Del. Ch. 2002).

A. **The Plaintiffs' Attempt To Argue That The Complaint Alleges "Domination And Control" By "The Spragues" Fails**

The Plaintiffs attempt to argue that demand is excused because the Complaint alleges "that a majority of Wave's Board is controlled and dominated by Sprague and P. Sprague . . . ." Opp. at 15. The Plaintiffs' arguments fail.

1. **The Complaint Fails To Allege "Voting Control"**

The Plaintiffs argue that the Board is dominated by the Spragues, because a "Hoover's Company profile" reported that, as of Oct. 6, 2004, "the Sprague family own 65% of Wave Systems Class B common shares, giving them voting control over the Company." Opp. at 15; *see* Exhibit A, Hoover's Company Profile of Wave Systems Corp., Oct. 6, 2004, *available at* 2004 WL 95353743. It is axiomatic that "[i]f a plaintiff's complaint alleges a fact that is unambiguously contradicted by an integral document incorporated into the complaint and there are no other facts in that document supporting the allegation, the Court need not accept as true the fact as alleged in the complaint." *Orman v. Cullman*, 794 A.2d 5, 16 n.9 (Del. Ch. 2002).

Here, the alleged "fact" of voting control, based on a Hoover's Company profile, is clearly contradicted by "an integral document incorporated into the complaint," namely the Company's April 29, 2004 Schedule 14A Proxy Statement, cited at Paragraph 94(g) of the Complaint. *See* Exhibit B, Proxy Statement and Security Ownership information excerpted from Schedule 14A Proxy Statement filed with the Securities and Exchange Commission on April 29, 2004. The Proxy Statement, which sets forth the beneficial ownership and voting power of the Sprague family, "unambiguously contradicts" the Plaintiffs' allegation of voting control.

When filing a Schedule 14A Proxy Statement, parties are required to describe the interests of directors and executive officers.[4]    Accordingly, the April 29, 2004 Proxy Statement—incorporated by reference into the Plaintiffs' Complaint—includes a table which sets

---

[4] The Schedule 14A instructions require the registrant to "describe briefly any substantial interest, direct or indirect, by security holdings or otherwise, of each of the following persons," including directors and executive officers.  See Item 5 of the Securities and Exchange Commission's Instructions for Schedule 14A, at 6, *available at* http://www.sec.gov/about/forms/sched14a.pdf.

forth the beneficial ownership information for (i) each stockholder who is known to own more than five percent of the outstanding Class A or Class B common stock, (ii) each director, and (iii) each executive officer.  *See* Ex. B at 3.  Under the Securities and Exchange Act, a beneficial owner is broadly defined as any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise, has or shares the power to direct the voting or disposition of securities.[5]

The Proxy Statement's beneficial ownership table identifies Steven Sprague as the beneficial owner of 3% of Class A common stock and 20.5% of the Class B common stock, for a combined 3% of all outstanding common stock.  *Id.*  Included within Steven Sprague's beneficial ownership is stock held in trust for his family, stock held jointly by his wife, and stock owned through a limited partnership under which he shares beneficial ownership with his father, Peter Sprague, and other members of his immediate family.  *See* Ex. B at 3 (4).  In addition, the table does not identify any stockholder who owns more than five percent of the outstanding stock (i.e., Peter Sprague).  *Id.*  Accordingly, the Proxy Statement unambiguously contradicts the Plaintiffs' allegation, as reported in the Hoover's Company profile, that "the Sprague family own 65% of Wave Systems Class B common shares."  Opp. at 15.

Moreover, even if the Sprague family did own "65% of Wave Systems Class B common shares," (and there is no allegation of fact to support such conclusion) under no circumstances would this give the Spragues "voting control of the Company."  *Id.*  As of April 2004, the Company had outstanding over *67 million* shares of Class A common stock, but only 205,725 shares of Class B common stock.  Ex. B at 1, paragraph entitled "Voting Rights."  Therefore, even if the Spragues owned 65% of the Class B common shares and—as the Plaintiffs' assert—

---

[5]  This definition of beneficial owner under the Act is provided by Rule 13-d.  17 C.F.R. § 240.13d-3(a); *see also* Section 13(d) of the Securities and Exchange Act of 1934, 15 U.S.C. §78m(d).  This definition also applies in the Schedule 14A context, where Rule 14-a provides:  Unless the context otherwise requires, all terms used in this regulation have the same meanings as in the Act or elsewhere in the general rules and regulations thereunder.  17 C.F.R. §240.14-a.  Rule 13d-3 is crafted broadly and sweeps within its purview informal, even oral, arrangements that confer upon a person investment power.  *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1221 (D.C. Cir. 1989).

in certain unidentified situations each Class B share entitled the Spragues to five votes, Compl. at 45 n.1, this would give the Spragues Class B voting power equivalent to only 668,638 shares, out of the Company's 67 million shares of outstanding Class A stock—or less than 1%—hardly "voting control."[6]

As established by the Proxy Statement that the Plaintiffs' incorporated into their Complaint, the "Spragues" do not have voting control over the Company, and did not as of February 2004.

### 2.    The Complaint Alleges No *Facts* That Could Impugn The Independence Of Either The 2001 Or The 2004 Board

As part of their "domination and control" theory, the Plaintiffs also argue that they have "alleged past actions by the present Board members that raise a reasonable doubt that the Board is capable of acting independently of the interests of P. Sprague and defendant Sprague." Opp. at 15.   In their Opposition, the Plaintiffs selectively excerpt from their Complaint an August 2003, "Free Republic article" concerning loans from the Company in *2001* and an alleged comment by Steven Sprague (concerning the 2001 Board and loans)—characterized by Plaintiffs as a "public admission by Sprague that the Board is incapable of acting independently of Sprague and his father."  Opp. at 17.   While under Delaware procedural law, a derivative plaintiff may rely on "factual statements" reported in the media,[7] *conclusions* drawn from those

---

[6]  The Proxy Statement establishes that the entire beneficial ownership and voting power of Steven Sprague and his family is only 3.2%.  *See* Ex. A at 3 (3).

[7]  The rule is different in federal court.  In *Geinko v. Padda*, No. 00 C 5070, 2002 WL 276236 (N.D. Ill. Feb. 27, 2002) the court rejected as insufficient under Rule 11 (and implicitly the hearsay rule) the plaintiff's incorporation by reference of allegations in complaints filed by the SEC and other parties, with reasoning fully applicable here:

> The pervasive defect in the Amended Complaint in this case, however, is that it does not make clear what Plaintiffs directly allege as fact, and what Plaintiffs merely are asserting that someone else has alleged.  *In other words, Plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances by merely stating that "the SEC alleges" certain additional facts.*

*Id.*, at *6 (emphasis added).  The court then cited with approval *SSDD Enterprises, Inc. v. Village of Lansing*, No. 95 C 6064, 1996 WL 238931 (N.D. Ill. May 3, 1996), which held that allegations based on

facts in the same reports are *not to be considered*. *Brehm v. Eisner*, 746 A.2d 244, 252 (Del. 2000) (affirming dismissal of suit based on media excerpts because only facts may be relied upon and the "quotations from the media in the Complaint simply echo plaintiffs' conclusory allegations").

A review of the *facts* (excluding conclusions) reported in the article (including those facts omitted from the Opposition, though included in the Complaint) provides no support for the Plaintiffs. The article reports that Wave was experiencing cash flow problems, which were alleviated in part by Board member capital contributions through the exercise of options and Peter Sprague's repayment of a loan issued in 2001. Peter Sprague's repayment was funded by his sale of stock at the time. As reported in the article, but omitted from the Opposition, Wave explained that "it made the personal loans to Feeney and Sprague [in 2001] so that they wouldn't have to sell shares to pay their debts" with defendant Gilder reportedly saying that "[h]aving insiders sell stock in a company that's precarious is more damaging than having the company make loans to its officers." Compl. ¶ 94(g). These "facts," concerning a Board decision in 2001 about whether to issue a loan versus the sale of a large block of stock by the founder of the Company—a transaction that is not even the subject of the Complaint—provide no support for the Plaintiffs' demand futility argument. To the contrary, they demonstrate that the Board simply gave consideration to available alternatives. Thus, there is no showing of "domination and control" arising from loans to directors that are later repaid.[8]

The Plaintiffs also excerpt the article's purported quote of Steven Sprague saying with regard to the 2001 Board, "[p]ut yourself in the shoes of any board of directors that has to make that call against somebody who probably hired all the people that are on the board," and

---

newspaper articles—such as the majority of the Complaint here—are hearsay and must be disregarded under Rule 11. *Id.,* at *2 n.7.

[8] *See Sekuk Global Enters Profit Sharing Plan v. Kevenides*, Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 WL 1982508, at *7 (Md. Cir. Ct. May 25, 2004) (reasoning from Delaware law, "a history of consistently approving financial deals, and the payment of millions of dollars in employment benefits to the [allegedly dominating directors], which served no legitimate business purpose" is insufficient to excuse demand).

"[Complying] was the right thing to do." *Alteration in original*. The Plaintiffs' assert that this purported quote (altered to read as the author saw fit, *i.e.* "[complying]")—on the very conclusion that the Plaintiffs are trying to support through hearsay—is somehow a "public admission by Sprague that the Board is incapable of acting independently of Sprague and his father." Opp. at 17. To the extent that this double hearsay, author-modified quote from an unknown publisher[9] of what appears to be an opinion (not facts) could carry any weight whatsoever as a pleading matter (and under *Brehm* it cannot), again—the statement was made with respect to a seven member Board, including Company-founder Peter Sprague, in 2001.[10] Accordingly, the statement does not raise a reasonable doubt that the five member 2004 Board, without Peter Sprague, is "incapable" of making a decision free from bias.[11]

The remainder of the article does nothing more than echo the Plaintiffs' conclusions alleged in the Complaint—*i.e.* that the 2001 Board lacked independence from Peter Sprague—and under *Brehm*, should be ignored.

Broadly speaking, the Plaintiffs' near wholesale reliance on conclusions in articles published in media of questionable reputation, without pre-suit investigation of the purported

---

[9]  The Delaware courts have held "that a derivative plaintiff may rely on the truthfulness of reports published by *reputable media*."  *White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) (emphasis added).  Apart from the fact that the Federal Rules (including Rule 23.1 which, unlike Delaware's counterpart, require verification, *see id.*) are more stringent, with all due respect, "Free Republic" is not the Wall Street Journal.

[10]  "[T]he futility of making the demand required by Rule 23.1 must be gauged *at the time the derivative action is commenced.*"  *Stepak v. Dean*, 434 A.2d 388, 390 (Del. Ch. 1981) (emphasis added). Importantly, facts intervening between the filing of the original complaint and the filing of an amended complaint are *irrelevant* to the analysis.  *See Rattner v. Bidzos,* No. 19700, 2003 WL 22284323, at *8 (Del. Ch. Sept. 30, 2003) ("demand is excused if the particularized facts of the Amended Complaint create a reasonable doubt that, *at the time the original complaint was filed,* a majority of the Board could have exercised disinterested and independent business judgment in responding to [the] demand").

[11]  In response to the Defendants' arguments, the Plaintiffs contend that it does not matter that the article concerns Wave's *2001*, seven member Board headed by *Peter* Sprague (as opposed to the 2004 five member Board, Peter not sitting) because the current five directors were also directors in 2001.  As a simple mathematical matter, a three-out-of-seven minority of the Board in 2001 could easily become a three-out-of-five *majority* in 2004.  Accordingly, to the extent that the Spragues could be viewed as a part of a majority in 2001, it does not follow that Steven Sprague was necessarily within a majority in 2004.

bases for excusing demand by the Plaintiffs, undermines their attempts to satisfy Rule 23.1 under Delaware law.  Rather, Delaware courts have urged plaintiffs time and again to use the "tools at hand"—a statutory corporate books and records request—as a means of investigating Board independence prior to filing suit.  Where a plaintiff, such as the Plaintiffs here, have not bothered with such pre-suit due diligence, the Delaware courts have given little leeway to plaintiffs attempting to cut and paste a complaint from scattered media:

> Plaintiff's answering brief cites authority to the effect that a derivative plaintiff may rely on the truthfulness of reports published by *reputable* media in verifying information alleged in his or her complaint.  While *Court of Chancery Rule 23.1, unlike its federal counterpart, does not require that derivative complaints be verified*, I agree that counsel may rely on factual information found in investigative reports published in leading periodicals.  *This principle, however, is limited* and *hardly relieves a plaintiff of the responsibility addressed in Rales of using the "tools at hand" to engage in further investigation needed to flesh out the matters reported upon*.  In this case, it is apparent at every turn that more information could and should have been obtained bearing on the actions taken by the Director Defendants and the impact of those actions on ICN. Information gained by means of a request to inspect corporate books or records might have led to the facts justifying an inference that the Director Defendants reached their conclusions because of considerations other than stockholder interest.  Of course, such further investigation might also have led plaintiff and his counsel to abandon their claim or to acknowledge that demand was not excused.

*White v. Panic*, 793 A.2d 356, 365 (Del. Ch. 2000).  So too here, the Plaintiffs could have engaged in a pre-suit investigation to determine whether the editorial invective of the "Free Republic article" had any basis in reality, either during 2001 or during 2004, the time at which the Complaint was filed and during which demand futility must be measured.  Instead, the Plaintiffs rest on editorial conclusions in the media, and with that, fail to pass the Rule 23.1 hurdle.

**B.    The Cases Cited By The Plaintiffs Provide No Support For Their Argument, And Instead Demonstrate The Deficiencies Of The Complaint**

**1.    The Only Cases Cited By Plaintiffs Relying Upon "Personal Relationships" Involved The Inapposite Context Of Special Litigation Committees And In Any Event Are Factually Not Analogous**

The Plaintiffs rely on a number of cases decided in the Special Litigation Committee ("SLC") context—*i.e.* where a board, in response to a shareholder litigation, forms a committee to investigate the allegations and recommend whether to pursue or dismiss them.  *See Zapata v. Maldonado,* 430 A.2d 779 (Del. Supr. 1981).  These SLC cases cited by the Plaintiffs are inapposite.  *In the SLC context, unlike here, the burden is on the defendants* to establish independence:

> Unlike the demand-excusal context, where the board is presumed to be independent, *the SLC has the burden of establishing its own independence by a yardstick that must be "like Caesar's wife"—"above reproach."*  Moreover, unlike the pre-suit demand context, the SLC analysis contemplates not only a shift in the burden of persuasion but also the availability of discovery into various issues, including independence.

*Beam*, 845 A.2d at 1055 (emphasis added).

Even if they could be relied upon, the SLC cases cited by the Plaintiffs demonstrate what is lacking from the Plaintiffs' Complaint:

- In *Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003) (Opp. at 14), prior to an SLC investigation, the company hired a law firm to investigate various allegations.  After the CEO announced that the investigation exonerated one of the principle defendants, it turned out that the investigating law firm disagreed with that conclusion.  Moreover, the SLC Chairman's public announcement that the CEO had not acted with the required *scienter* came in advance of the SLC's own investigation.  *Id.* at 1165-66.  Where a board announces a conclusion before even considering the derivative claims, it is not difficult to see how a court would conclude that the board is not independent.  The Plaintiffs here, by contrast, have alleged no facts showing any sign of pre-judgment on behalf of the majority of the Board.

- In *In re Oracle Corp. Derivative Litigation*, 824 A.2d 917 (Del. Ch. 2003) (Opp. at 11), the court considered whether an SLC comprised of a number of Stanford University faculty recruited by Oracle was capable of impartially reviewing insider trading allegations against a fellow professor, an Oracle director who had contributed millions to the university, and another individual who had publicly announced an intent to contribute millions to the university.  These indicia of financial interest and lack of independence were only emboldened by the fact that these same accused defendants were the same

individuals who recruited the SLC's members. Unsurprisingly, after weighing the evidence adduced during discovery, the court held that the SLC had not met its burden.

In short, the only cases cited by the Plaintiffs involving "personal relationships" as a basis for excusing demand involved facts far more egregious than those alleged here, and in any event were decided in the SLC context, where the burden is on the defendants to demonstrate independence.

      **2.    As The Plaintiffs Here Fail To Particularize Any Financial Dependence Of The Board On "The Spragues," Their Cases Involving Demand Excusal In That Context Are Inapposite**

The Plaintiffs cite a handful of decisions involving Rule 23.1 considerations. However, each case involved allegations of significant *financial interest* on the part of the subject boards—facts not alleged here:

- In *In re New Valley Corp.*, No. Civ. A. 17649, 2001 WL 50212 (Del. Ch. Jan. 11, 2001) (Opp. at 15), cited for the proposition that "past business, personal or employment relationships" suffice to excuse demand, the court held that demand was excused based on the *financial interest* of a majority of the directors concerning a transaction between New Valley and its controlling parent, Brooke. The demand excusal allegations concerned intertwining directorships and stock ownership between the parent (Brooke) and subsidiary (New Valley), in the context of allegations that the parent depleted the subsidiary. The complaint included particularized facts showing that the CEO of New Valley was also the controlling shareholder of Brooke, that other directors of New Valley were *paid to serve as directors by Brooke*, that other directors depended on the New Valley CEO for their lucrative employment positions outside of New Valley and that the directors received substantial compensation from New Valley, Brooke or other subsidiaries of Brooke. *Id.*, at *7. Devoid of any allegations of financial dependence on "the Spragues," the Complaint here alleges nothing similar to that in *New Valley*.

- In *Grace Bros., Ltd. v. Uniholding Corp.*, No. Civ. A. 17612 2000 WL 982401 (Del. Ch. July 12, 2000) (Opp. at 20) the court concluded that demand was excused regarding a derivative plaintiff's challenge to a freeze-out transaction designed to devalue the plaintiff's holdings. The plaintiff supported the allegations of demand futility with detailed public announcements and memos outlining the purposes of the transactions, and revealing numerous facts showing that the directors were the moving force behind them. *Id.*, at *4-7; 8-10. The complaint detailed the directors' large stock ownership interests that were directly at stake in the transactions, showed that the directors stood to gain significant compensation, that the directors were part of a controlling group that orchestrated the transactions, and that one other director was a close family member of

the principal moving force behind the deals, as well as CEO of a subsidiary company controlled by that director.

- *Steiner v. Meyerson*, No. Civ. A. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995) (Opp. at 19) likewise involved allegations of self-dealing or approval of wasteful transactions either directly involving one of the directors at issue or for demand purposes, involved financially interested directors.  *Id.,* at *9.

- In *In re eBay, Inc. S'holders Litig.*, No. C.A. 19988-NC, 2004 WL 253521(Del. Ch. Jan. 23, 2004) (Opp. at 19)*,* certain of the company's directors were allegedly the beneficiaries of Goldman Sach's (eBay's lead underwriter in its public stock offerings) "spinning" transactions—allocation of shares in select IPO's to the directors of eBay in exchange for the business of underwriting eBay's own IPO and secondary offerings. Three of the individual defendants (and directors of eBay's seven member board) received IPO allocations from Goldman Sachs and accordingly, were clearly interested in the transactions at the core of the controversy.  The same directors retained voting control over eBay.  *Id.,* at *2.  The court held that the other directors lacked independence from these controlling shareholders/directors because they had significant holdings of extremely valuable—but unvested—eBay stock options, that would never vest unless they remained directors of eBay.  *Id.*

- *International Equity Capital Growth Fund, L.P. v. Clegg*, No. Civ. A. 14995, 1997 WL 208955 (Del. Ch. Apr. 22, 1997) (Opp. at 12, 18), involved a  self-dealing transaction concerning a close corporation and a majority owner/director defendant who had a demonstrated record of removing other directors who disagreed with him. Mr. Clegg, a majority owner of both corporations, was alleged to have used his power in his management of each Board on several occasions for the purposes of removing directors who had exercised independent judgment.  *Id.,* at *3.

- In *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211 (Del. Ch. 2001), *rev'd on other grounds*, 817 A.2d 149 (Del. 2002) (Opp. at 12), the court held that demand was excused where the sole director in question was also a director on the board for another corporation with which the company at issue concluded the suspect transaction—in other words, he sat on both sides of the transaction, a circumstance which by statute amounts to directorial interest.  *Id.* at 1230-31.

### 3. The Plaintiffs Citations To Cases Decided Outside The Rule 23.1 Context Are Unavailing

Other cases cited by the Plaintiffs simply did not involve Rule 23.1, but rather, given the

nature of the claims or procedural posture, turned on legal standards entirely foreign to the Rule

23.1 inquiry:

- *Telxon Corp. v. Meyerson*, 802 A.2d 257 (Del. 2002) (Opp. at 12, 15), was on appeal from *summary judgment* regarding claims for misappropriation of corporate opportunities, involving analysis of disinterest as a threshold consideration to application of the business judgment rule. The Delaware Supreme Court merely held that there were *genuine issues of fact* concerning independence.

- Similarly, *Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002) did not involve a Rule 23.1 analysis. Rather, the court considered the question of whether a majority of the board was interested in a transaction to determine whether the business judgment rule presumption or the "entire fairness" standard of review would apply, an inquiry made under Rule 12(b)(6) standards. *Id.* at 29-30.

- *In re Ply Gem Industries, Inc. Shareholders Litigation*, No. Civ. A. 15779-NC, 2001 WL 755133 (Del. Ch. June 26, 2001) (Opp. at 15), was a shareholder challenge to a merger transaction, a cause of action to which only Rule 12(b)(6), and not the stringent requirements of Rule 23.1, applies. In any event, in *Ply Gem* the court held that sufficient facts for 12(b)(6) purposes were alleged because five of the six directors each had substantial financial interests at stake, and were solely dependent on their relationship with a controlling shareholder.

## II. THE OPPOSITION CITES NO CASE HOLDING THAT DEMAND IS EXCUSED BASED ON CONCLUSORY ALLEGATIONS OF INSIDER TRADING BY A MINORITY OF THE BOARD—BECAUSE THERE IS NONE

The Plaintiffs also argue that demand is futile because two directors, Sprague and Bushnell, sold stock. Opp. at 9-10.[12] The Plaintiffs fail to even address the Defendants' point that the alleged sale of stock by *two directors* cannot establish the lack of independence or disinterestedness of the *five-person board* as a matter of law.[13] Similarly, the Plaintiffs fail to explain how the Complaint, devoid of any allegations to show "that each sale by each individual defendant was entered into and completed *on the basis of, and because of,* adverse material non-public information," could even suffice to present a substantial likelihood of liability for

---

[12] It is important to recognize that the Plaintiffs' attempt to argue that the sales of non-director Feeney and non-defendant Peter Sprague somehow impact the futility analysis, is a non-starter. Opp. at 10.

[13] *See* Def's Brief at 21-22, citing *Rattner*, 2003 WL 22284323, at *10 (holding in case where 4 of 8 directors did not trade, "were Rattner's attack upon any of the four directors [] unsuccessful, a 'majority' of the Board would not be implicated and demand would not be excused"); *Landy v. D'Allesandro,* 316 F. Supp. 2d 49, 73 (D. Mass. 2004) ("One purchase by one director . . . does not create inappropriate interest on the part of the entire board"). The Plaintiffs do argue that they have alleged Feeney's prior trading practices (Opp. at 10), but Feeney is not a director, and accordingly his potential liability is irrelevant for *director* demand futility purposes.

Defendants Sprague and Bushnell.  *Rattner*, 2003 WL 22284323, at *11.[14]

In response, the Plaintiffs argue the bare conclusion that "[a]t minimum, Plaintiffs have alleged with particularity a substantial likelihood of defendant Sprague . . ."  Opp. at 9 n.7 and that "each of the director defendants breached his duty of good faith by permitting the Company and defendants Sprague and Bushnell, and Feeney to engage in the wrongful conduct alleged herein."  Opp. at 10.  The Plaintiffs cite no case to support their contention, because there is none.  Instead, the Plaintiffs drop a footnote to *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), for the apparent proposition that the Complaint states a claim for directorial failure to exercise oversight responsibility.  Opp. at 10 n.10.  In *Rattner*, however, the court recognized that a "*Caremark*" claim, based on failure of a board's oversight responsibilities (typically involving accounting issues), is "one of, if not the, most difficult theories upon which to prevail."  2003 WL 22284323, at *12.  The Plaintiffs' attempt to claim that they have alleged with particularity a substantial likelihood of liability under the demanding standards of *Caremark*, based on a casual reference to a conclusion in their Complaint, is patently without merit.  No facts are alleged which could demonstrate the "*gross negligence*" required to state such a claim.  The assertion falters further in light of Wave's exculpatory provision in its charter for claims based on alleged violations of the duty of care.

## III.    THE COMPLAINT FAILS TO STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED

### A.    As Demonstrated By the Cases Cited By Plaintiffs, Rule 9(b) Applies to the Plaintiffs' Breach of Fiduciary Duty-Based Insider Selling Claims, And the Complaint Does Not Satisfy Rule 9(b)

The Plaintiffs' claims for insider selling are premised on alleged misrepresentations of purportedly material fact, and the Complaint unequivocally pleads that those alleged

---

[14]  There are no arguments that the Plaintiffs have alleged what they must to show a substantial likelihood of insider trading—the "precise roles that [the Director Defendants] played at the [C]ompany [and] the information that would have come to their attention in those roles," "particularized facts that could lead to the inference that the timing of the trades reflected the Selling Defendants' impermissible insider trading," "particularized facts regarding the timing of the Director Defendants' trades in relation to permitted trading periods," or allegations that "shed light upon the trading practices of the Director Defendants prior to the Relevant Period."  *Rattner*, 2003 WL 22284323, at *11 (emphasis added).

misrepresentations were intentional, with the intent to cause the market to rely on them. *E.g.*, Compl. ¶¶ 10 ("defendants devised a plan to artificially and materially inflate the company's stock"); 37-40 ("conspiracy" allegations); 43 ("defendants believed [the scheme] would trick the public"); 67 (statements were "false and misleading, as Defendants knew, at the time the statements were made, as Defendants knew"). Rule 9(b) by its terms applies to "all averments of fraud" and the Complaint clearly avers fraud. Indeed, as Magistrate Judge Alexander held, and Judge Zobel adopted in *In re Stratus Computer, Inc. Sec. Litig.*, Civ.A. 89-2075-Z, 1992 WL 73555 (D. Mass. March 27, 1992), such intentional breach of fiduciary duty claims "sound in fraud" and are accordingly subject to Rule 9(b). *Id.,* at *7 (holding that derivative breach of fiduciary duty claims based on allegedly false and misleading statements were subject to Rule 9(b)).

The Plaintiffs argue that Rule 9(b) does not apply to their insider trading claims simply because the claims are for breach of fiduciary duty. The Plaintiffs are mistaken.[15] In any event, the cases cited by the Plaintiffs in support of their position defeat their argument:

- In *Shapiro v. Miami Oil Producers*, *Inc.*, 84 F.R.D. 234 (D. Mass. 1979) (Opp. at 21), Judge Keeton expressly announced "[t]he particularity requirement of Rule 9(b) extends to 'all averments of fraud or mistake.' Thus, *the rule extends to averments of fraud or mistake, whatever may be the theory of legal duty statutory, tort, contractual, or*

---

[15] *E.g.*, *Isanaka v. Spectrum Technologies USA Inc.*, 131 F. Supp. 2d 353, 361-62 (N.D.N.Y. 2001) (applying Rule 9(b) to fiduciary duty and dismissing claim because the complaint failed to separate out conduct among defendants: "When a claim for breach of fiduciary duty is based primarily on alleged fraudulent conduct, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply."); *EPS Solutions Corp. v. Deloite & Touche, LLP*, No. 00 C 7411, 2002 WL 441510, at *4 (N.D. Ill. Mar. 20, 2002) (because Counts I and II allege breach of fiduciary duty based on a underlying fraud claim, defendants are correct that the particularity requirement of Rule 9(b) applies, at least with respect to the allegations of the underlying fraud."); *Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20 (S.D.N.Y. 2002) ("The particularity requirement of Rule 9(b) governs where, as here, a claim for breach of fiduciary duty is premised on alleged fraudulent conduct"); *Mehlman v. Anusavice*, No. Civ. A. 86-0394-S, 1987 WL 12553 (D. Mass. June 11, 1987) (dismissing complaint for, inter alia, breach of fiduciary duty applying Rule 9(b) because the complaint sounded in fraud); *Krieger v. Gast*, , NO. 4:99-CV-86, 2000 WL 288442, at *6 n.4 (W.D. Mich. Jan. 21, 2000) ("As with breach of fiduciary duty claims, several courts have also held that Rule 9(b) applies to civil conspiracy claims where the conspiracy is linked to fraud."); *accord Wajda v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29, 33 (D. Mass. 2000) (holding Rule 9(b) applied to allegations against tobacco company that they misled the public about the harms of smoking).

*fiduciary." Id.* at 236.  While acknowledging that Rule 9(b) does not apply if the claim does not sound in fraud (as is not the case here) the Court ultimately held *"[t]he allegations that these representations were false or misleading are 'averments of fraud or mistake,' and Rule 9(b) requires that they be made with particularity." Id.* (emphasis added).

- In *Roskos v. Shearson/American Exp., Inc.*, 589 F. Supp. 627 (E.D. Wis. 1984) (Opp. at 21), the court noted, as Plaintiffs point out, that "[g]enerally, the Rule does not extend to allegations of breach of duty" but *held,* as Plaintiffs fail to point out*,* that "Count V, which alleges a breach of fiduciary duty, is also subject, under the circumstances of this case, to the particularity requirement." *Id.* at 631.

- In *Seidel v. Public Service Co. of New Hampshire*, 616 F. Supp. 1342, (D.N.H. 1985) (Opp. at 21), the court held that Rule 9(b) did not apply to sections 11 and 12 of the 1933 Act claims as those federal statutory claims were "grounded on conduct *not amounting to fraud or mistake*", *id.* at 1357—*i.e.* unlike the Complaint here.  Indeed, the First Circuit has held that, to the extent section 11 and 12 claims are grounded in fraud, Rule 9(b) applies.  *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1223-24 (1st Cir. 1996), *overruled on other grounds*.

The Complaint does not satisfy Rule 9(b), failing to particularize the most essential element of the insider trading claim under Delaware law—"that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003).  It is not enough, as Plaintiffs argue, to assume that the "proximity of the sales to positive press releases" (Opp. at 23) satisfies that high standard.  Moreover, the Complaint does not particularize how each defendant knew of the purported insider information from "access to and review of internal corporate documents" (which ones? we are not told) "conversations and connections with other corporate officers" (when? who? about what? we are left to guess) and "attendance at Board meetings" (when? discussing what? the Complaint is silent).  *See* Opp. at 22 (*quoting* Compl. ¶ 21-22, 24, 94(a))); *Rattner*, 2003 WL 22284323, at *10 (rejecting insider trading allegations because of absence of precise roles that defendants played at the company and how material inside information would become available).

### B.    To The Extent That The Plaintiffs Plead Negligence-Based Claims Wave's Certificate Of Incorporation Properly Bars This Action

The Plaintiffs argue that Wave's Certificate of Incorporation's exculpatory provision for breaches of the duty of care cannot be applied on a Rule 12(b)(6) motion because they allege breaches of the duty of loyalty and bad faith, which, they claim, cannot be adjudicated on a Rule 12(b)(6) motion.  Opp. at 26-27.  To the contrary, governing case law holds that, to the extent Plaintiffs fail to plead a non-exculpated claim, the Complaint may be dismissed at the pleading stage.  *See Emerald Partners v. Berlin*, 787 A.2d 85, 91-92 (Del. 2001) ("The Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss");  *In re Sagent Technologies, Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003) (holding exculpatory clause is properly considered on a motion to dismiss").

The Plaintiffs argue further that application of the exculpatory provision to claims for bad faith cannot be adjudicated on a motion to dismiss.  The allegations of Counts II-VI of the Complaint, however, purport to state claims for breach of duty grounded in negligence.  Accordingly, "to the extent that the complaint alleges *any negligent breach of 'fiduciary duty*, such a claim is precluded by the exculpatory clause in [Wave's] articles of incorporation."  *Id.* (emphasis added).  Of course, to the extent that the Plaintiffs are asserting intentional breaches of fiduciary duty, the claims are governed by Rule 9(b), (*see* Part A. above) and the Complaint utterly fails to comply with its particularity requirements.

### C.    The Plaintiffs Have Not Pled Damages With Respect To Counts II-VI

The Plaintiffs argue that *Dollens v. Zionts,* No. 01 C02826, 2002 WL 1632261, at *8 (N.D. Ill. July 22, 2002) and *In re Symbol Technologies Sec. Litig.,* 762 F. Supp. 510, 517 (E.D.N.Y. 1991) support their theory of having adequately pled damages for loss of goodwill and integrity in the marketplace.  Opp. at 27.  Suffice to say that the holdings of each case, dismissing claims based upon allegations virtually identical to those advanced here, teach otherwise.

The Plaintiffs further contend that "Defendants do not mention Plaintiffs' allegations of damages to Wave arising from more than $1 million in insider sales . . . and $183 million loss in

market capitalization . . . ." Opp. at 27. The Plaintiffs' contentions about insider trading profits as damages is a straw man argument—the Defendants do not challenge the adequacy of damages pled for insider trading. *See* Def. Br. at 25-26 (challenging only Counts II-VI). As for "loss in market capitalization," the Defendants did in fact point out that these damages are not legally cognizable as a matter of law, citing *In re Symbol* for the proposition that "an injury in the marketplace theory" is insufficient because "*damages must be shown to directly flow from the wrongful acts of defendants, and not the mere commencement of legal proceedings against the corporation.*" 762 F. Supp. at 517 (emphasis added). Def. Br. at 26. As the Complaint's marketplace damages theory rests solely on allegations that, following commencement by the SEC of an investigation, Wave's stock price dropped, (Compl. ¶¶ 87-88), the holding of *Symbol Technologies* is on all fours with this case.

### D.     The Plaintiffs' Arguments Fail To Save Their Claims For Waste and Unjust Enrichment

"There are only two ways for a waste claim to survive a motion to dismiss:  . . . the corporation received no consideration, or that a transfer of corporate assets served no corporate purpose." *Official Comm. of Unsecured Creditors of Integrated Health Services, Inc., v. Elkins, et al*, No.Civ.A. 20228, 2004 WL 1949290, at * 17 (Del. Ch. Aug. 24, 2004). The Plaintiffs' waste claim is based in part on the payment of "bonuses to certain of it executive officers." Compl. ¶ 118. However, the Plaintiffs fail to allege any *facts* establishing that these bonuses— paid to the Company's employees—were without consideration or corporate purpose. To the extent the Plaintiffs waste claim is based on "millions of dollars of legal liability and/or legal costs to defend the Defendants' unlawful actions," Compl. ¶ 118, those damages are speculative and cannot sustain a claim. *See, e.g., Dollens,* 2002 WL 1632261, at *8.

With respect to their unjust enrichment claim, the Plaintiffs' Complaint alleges *only* that "[b]y their the acts and omissions, the Insider Selling Defendants were unjustly enriched at the expense of and to the detriment of Wave Systems," Compl. ¶ 122, and not—as the Plaintiffs assert—that the "defendants were unjustly enriched as they received some sort of

compensation." Opp. at 25. Because the Plaintiffs have not adequately pled an insider trading claim (*see* Part A. above), this claim must fail. Even if the Plaintiffs' claim was based upon additional allegations of "profits, benefits and other compensation" obtained from "wrongful conduct and fiduciary breaches," Opp. at 25, the claim would still fail as a matter of law since the Plaintiffs have failed to allege facts establishing *each* of the elements of the claim.[16]

### CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed. Further, because this is the Plaintiffs' second complaint, filed after an additional eight months' time to develop sufficient allegations to support their claim of demand futility, but having failed to do so, the Complaint should be dismissed with prejudice.

Respectfully submitted,

**STEVEN SPRAGUE, GERALD T. FEENEY, JOHN E. BAGALAY, JR., NOLAN BUSHNELL, GEORGE GILDER, JOHN E. McCONNAUGHY, JR. AND NOMINAL DEFENDANT WAVE SYSTEMS CORP.**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Dated: March 3, 2005

---

[16] Under Delaware law, the elements of unjust enrichment are: 1) enrichment, 2) an impoverishment, 3) a relation between enrichment and impoverishment, 4) absence of justification and 5) absence of remedy provided by law. *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279 (D. Del. 2000); *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on March 3, 2005.

/s/ Michael D. Blanchard
Michael D. Blanchard