UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **STEVE SACHS,**<br>　　　　　　　　　　**Plaintiff,**<br>　　v.<br>**STEVEN SPRAGUE, ET AL,**<br>　　　　　　　　　　**Defendant.** | )<br>)<br>)　CIVIL ACTION<br>)　NO.  04-30032-MAP<br>)<br>)<br>)<br>) |

**DEFENDANTS'** *ASSENTED-TO* **MOTION**
**FOR LEAVE TO CITE SUPPLEMENTAL AUTHORITY**

Pursuant to Local Rule 7.1(b)(3), Defendants John E. Bagalay, Jr., Steven Sprague, Gerald T. Feeney, Nolan Bushnell, George Gilder and Nominal Defendant Wave Systems Corp. (collectively, the "Defendants") respectfully submit this *Assented -To* Motion For Leave To Cite Supplemental Authority,[1] attaching hereto the recent case decided by the United States District Court for the District of Massachusetts, *Caviness v. Evans*, No. Civ. A. 04-12524-JLT  2005 WL 1995389 (D. Mass. Aug. 18, 2005) (Tauro, J.).  The decision further supports the Defendants' motion to dismiss the derivative action on the grounds that the Plaintiffs have failed to plead with particularity adequate grounds for excusal from making the requisite pre-suit demand on Wave's board of directors pursuant to Rule 23.1.  Point by point, the *Caviness* decision dispenses with the allegations the Wave Plaintiffs make in an attempt to excuse demand.[2]

**I.     AUDIT COMMITTEE MEMBERSHIP IS INSUFFICIENT**

One of the grounds the Plaintiffs purport to plead here as a basis for demand futility is certain directors' membership on Wave's audit committee.  *See* Compl. ¶94((d).  In *Caviness*, the plaintiff alleged that certain directors were "interested" because they served on the audit

---

[1] Counsel for Plaintiffs has assented to Defendants filing this motion while reserving their rights to file a response. Defendants assent to the filing of a response.

[2] Issues related to the Rule 23.1 analysis that were neither raised nor addressed in the *Caviness* decision are addressed in Defendants' previously filed memoranda of law.

committee when the company issued materially false and misleading financial statements. The defendants argued that the plaintiff had not "provide[d] any particularized allegations regarding the knowledge of any member of the Audit Committee" concerning the transactions that were accounted for improperly. The plaintiff insisted, however, that the directors' "knowledge can be inferred from [his] particularized pleading of their Audit Committee duties." *Id*. at *4. The court rejected the argument, holding that the plaintiff had not pled sufficient facts to sustain a claim for breach of duty (and thus a substantial likelihood of liability excusing demand) based on an oversight regarding accounting improprieties that occurred for just one year, especially in light of the company's charter requiring indemnification of directors on such grounds. *Id.* at *4 & n.45. Notably, and unlike here, *Caviness* was an alleged accounting fraud case, making audit committee membership directly relevant to allegations of accounting fraud. In any event, the Plaintiffs here plead no more than some unparticularized assertion that Wave's audit committee erred by allowing misleading public disclosures in essentially one month, August 2003, concerning only two agreements (IBM and Intel). Compl. ¶¶ 55-84. And as pointed out in Wave's briefing, Wave's certificate of incorporation similarly insulates directors from ordinary breaches of the duty of care. *E.g.,* Reply at 18.

## II. D&O LIABILITY INSURANCE EXCLUSIONS DO NOT EXCUSE DEMAND

The Plaintiffs here also allege that demand is futile because Wave's Director and Officer liability insurance policy allegedly contains an "insured versus insured" exception that would preclude coverage for defense costs, compelling the directors not to institute an action. Compl. ¶94(n). The *Caviness* court rejected just that argument:

> Moreover, Plaintiff's argument that all the directors are interested because they are not covered by the Company's insurance in suits brought against them directly by the Company is unavailing. The Delaware Court of Chancery found this argument "to be nothing more than variations on the 'directors suing themselves' and 'participating in the wrongs' refrain." Such conclusory allegations fail to demonstrate that AspenTech's directors face a substantial likelihood of liability

*Id*. at *5.

2

### III. LONG-TIME PROFESSIONAL AFFILIATIONS DO NOT EXCUSE DEMAND

The plaintiff in *Caviness* also argued, as do the Plaintiffs in this case, that certain directors lacked independence because they were long-time business associates and would not take action against one another. *See* 2005 WL 1995389 at *5; Pl. Brief at 11-20. The Court rejected the argument, as should this Court, holding that "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." 2005 WL 1995389 at *5.

### IV. COMPENSATION COMMITTEE MEMBERSHIP DOES NOT EXCUSE DEMAND

The plaintiff in *Caviness* also argued that certain directors were beholden to others due to the latter directors' positions on the compensation committee -- just as the Plaintiffs here attempt to plead. *See* Compl. ¶94(b). The *Caviness* court, however, rejected the same argument, holding that the "fact that directors Haroian, Kingsley, McArdle, and Pehl receive a $25,000 annual fee for their services, a $2,000 fee for their attendance at each Board meeting, and stock options does not make these directors beholden to the members of the Compensation Committee." *Id.* at *5. Here, the Plaintiffs have not even alleged the amount of compensation at stake for the directors, excepting Steven Sprague. But even with respect to Sprague, the allegations of the Amended Complaint standing alone are insufficient to challenge his directorial independence. *See* 2005 WL 1995389 at *5 ("Plaintiff alleges that Evans lacks independence from members of the Compensation Committee due to the 'substantial monetary compensations' he receives from the Company. This fact alone, however, is

3

insufficient to challenge Evans's independence.")    The compensation committee allegations fail.

## V.    BALD ALLEGATIONS OF CONTROL OR THAT A DIRECTOR IS THE PRINCIPAL FOUNDER OF A COMPANY DOES NOT EXCUSE DEMAND

The plaintiffs in *Caviness* further argued, similar to the Plaintiffs here, that the board lacks independence because "Evans, as a principal founder and Chairman and CEO, effectively controlled the Board."    *Id.* at *5; Pl. Brief at 13-15.    The court disagreed, holding "Plaintiff's bald assertion that Evans controlled the Board does not particularize how 'the directors are beholden to [Evans] or so under [his] influence that their discretion would be sterilized.'"    *Id.*

The Plaintiffs here also allege "professional entanglements" between certain board members and, notably, *Peter* Sprague -- not a director at the time nor a defendant in this lawsuit.    Even if the allegations concerning alleged "entanglements" between *Peter* Sprague and the board could have excused demand had Peter Sprague been a defendant/director  -- and they could not -- *no facts* are pled that particularize how any director is "beholden to [*Steven* Sprague] or so under [his] influence that their discretion would be sterilized.'"    *Id.*    Plaintiffs' mere conclusory assertion of control by Steven Sprague is insufficient.

## VI.    "INSIDER" STOCK SALES ARE INSUFFICIENT

Also as in *Caviness*, the Plaintiffs here argue that certain stock sales by certain directors (two of five directors, Sprague and Bushnell) somehow excuse demand. Compl. ¶¶ 94(a)(i)-(ii); Pl. Brief at 9-10.    As Judge Tauro held, however, "Plaintiff's

conclusory allegation that [directors] sold stock during the relevant period, without 'any particularized basis' that [they] knew of the accounting improprieties [here, alleged misleading nature of public statements], does not show that [the directors] face[d] a substantial likelihood of liability." *Id*. The Complaint here is similarly deficient, alleging that directors Sprague and Bushnell sold stock, but failing to particularize how they knew that certain public statements were purportedly misleading.

### VII. GENERALIZED ALLEGATIONS OF LIABILITY UNDER A "*CAREMARK* CLAIM" FOR GROSS NEGLIGENCE ARE WITHOUT MERIT

The Plaintiffs here also contend that they have sufficiently pled a "*Caremark* claim" -- a claim recognized to be one of the most difficult to plead, claiming that the board was grossly negligent in violation of the duty of due care -- thus establishing demand futility. Compl. ¶94(e); Pl. Brief at 9 & n.10. The Plaintiffs attempt to claim that they have alleged that "each of the director defendants breached his duty of good faith by permitting the Company and defendants Sprague and Bushnell, and Feeney to engage in the wrongful conduct alleged herein." Pl. Brief at 10. So too did the Plaintiff in *Caviness* attempt to invoke liability under *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996), to no avail. *Id.* at *5. As in *Caviness*, the Plaintiffs here allege no facts with particularity demonstrating the requisite "clear notice" of improprieties necessary to state such a claim.

**WHEREFORE**, Defendants request that their *Assented-To* Motion For Leave To Cite Supplemental Authority be granted.

5

>Respectfully submitted,
>
>**JOHN E. BAGALAY, JR., STEVEN SPRAGUE, GERALD T. FEENEY, NOLAN BUSHNELL, GEORGE GILDER AND NOMINAL DEFENDANT WAVE SYSTEMS CORP.**
>
>By their attorneys,
>
>/s/ Michael D. Blanchard
>Robert A. Buhlman, BBO #554393
>Michael D. Blanchard, BBO #636860
>BINGHAM McCUTCHEN LLP
>150 Federal Street
>Boston, MA 02110

Dated: August 30, 2005

## RULE 7.1(a)(2) CERTIFICATION

I, Michael D. Blanchard, hereby certify that counsel for Defendants conferred with liaison counsel for Plaintiffs in good faith to resolve or narrow the issues presented in this motion, and Plaintiffs' liaison counsel has assented.

>/s/ Michael D. Blanchard
>Michael D. Blanchard

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon each attorney of record electronically on August 30, 2005.

>/s/ Michael D. Blanchard
>
>Michael D. Blanchard

Westlaw.

2005 WL 1995389                                                                                                                                           Page 1
--- F.Supp.2d ----, 2005 WL 1995389 (D.Mass.)
**(Cite as: 2005 WL 1995389 (D.Mass.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
Gary CAVINESS, Derivatively on Behalf of Aspen Technology, Inc., Plaintiff,
v.
Lawrence B. EVANS et al., Defendants,
and
ASPEN TECHNOLOGY, INC., Nominal Defendant.
**No. CIV.A.04-12524-JLT.**

Aug. 18, 2005.

Kevin B. Currid, Foley Hoag LLP, Boston, for Lawrence B. Evans, Defendant.

Kerry Dakin, Skadden, Arps, Slate, Meagher & Flom, Boston, for Aspen Technology Inc., Donald P. Casey, Douglas R. Brown, Douglas A. Kingsley, Gary E. Haroian, Gresham T. Brebach, Joan C. Mcardle, Mark Fusco, Michael Pehl, Stephen L. Brown, Stephen M. Jennings, Charles F. Kane, Joseph F. Boston, Defendants.

Justin J. Daniels, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, for Aspen Technology Inc., Donald P. Casey, Douglas R. Brown, Douglas A. Kingsley, Gary E. Haroian, Gresham T. Brebach, Joan C. Mcardle, Mark Fusco, Michael Pehl, Stephen L. Brown, Stephen M. Jennings, Charles F. Kane, Joseph F. Boston, Defendants.

Thomas J. Dougherty, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, for Aspen Technology Inc., Donald P. Casey, Douglas A. Kingsley, Gary E. Haroian, Gresham T. Brebach, Joan C. Mcardle, Mark Fusco, Michael Pehl, Stephen L. Brown, Charles F. Kane, Joseph F. Boston, Defendants.

Stephen J. Doyle, Aspen Technology, Inc., Cambridge, for Charles F. Kane, Joseph F. Boston, Defendants.

John J. Falvey, Jr., Goodwin & Procter LLP, Boston, for Lisa W. Zappala, Defendant.

Jeffrey P. Fink, Robbins Umeda & Fink, LLP, San Diego, CA, for Gary Caviness, Plaintiff.

John A.D. Gilmore, Piper Rudnick LLP, Boston, for David L. Mcquillin, Defendant.

Christopher C. Nee, Goodwin Procter LLP, Boston, for Lisa W. Zappala, Defendant.

Brian J. Robbins, Robbins Umeda & Fink LLP, San Diego, CA, for Gary Caviness, Plaintiff.

Mary T. Sullivan, Segal, Roitman & Coleman, Boston, for Gary Caviness, Plaintiff.

Nicholas C. Theodorou, Foley Hoag LLP, Boston, for Lawrence B. Evans, Defendant.

Brandon F. White, Foley Hoag LLP, Boston, for Lawrence B. Evans, Defendant.

MEMORANDUM

TAURO, J.

**\*1** Plaintiff Gary Caviness brings this shareholder derivative action on behalf of Aspen Technology, Inc. ("AspenTech" or "Company") against its current and former directors and certain of its officers for, among other things, breaching their fiduciary duties by misrepresenting AspenTech's financial results and failing to correct these misstatements. Pursuant to Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure, Nominal Defendant AspenTech and the individual Defendants [FN1] have moved to dismiss Plaintiff's verified amended shareholder derivative complaint ("amended complaint") because Plaintiff failed to make demand on AspenTech's Board before initiating this action and failed to allege particularized facts demonstrating why such demand should be excused.

> FN1. The Defendants in this case are Lawrence B. Evans, Lisa W. Zappala, David L. McQuillin, Charles F. Kane, Stephen M. Jennings, Joan C. McArdle, Michael Pehl, Douglas A. Kingsley, Gary E. Haroian, Mark Fusco, Donald P. Casey, Stephen L. Brown, Joseph F. Boston, Douglas R. Brown, and Gresham T. Brebach.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Background

AspenTech is a Delaware corporation that develops and markets "integrated software and services to the process industries, which consist of oil and gas, petroleum, chemicals, pharmaceuticals and other industries that manufacture and produce products from a chemical process." [FN2] From July of 1999 to September of 2004, Defendants "issued numerous positive statements and filed quarterly reports with the Securities and Exchange Commission ("SEC") which described the Company's increasing financial performance." [FN3] On October 27, 2004, however, AspenTech announced that its Audit Committee believed that one software licence transaction in fiscal year 2000 and service agreement transactions in fiscal year 2001 were accounted for improperly. [FN4] Two days later, on October 29, 2004, AspenTech also announced that federal prosecutors had "launched a probe into the Company's accounting practices from 2000 through 2002" and subpoenaed documents dating back to January 1, 1999. [FN5] These announcements caused the Company's stock price to fall. [FN6]

> FN2. Am. Compl. ¶¶ 5, 10.
>
> FN3. *Id.* ¶¶ 6, 67-105.
>
> FN4. *Id.* ¶ 107.
>
> FN5. *Id.* ¶ 109.
>
> FN6. *Id.* ¶¶ 108, 110.

In November of 2004, AspenTech announced that the NASDAQ Stock Market ("NASDAQ") had informed the Company that its stock was subject to delisting for failing to timely file its Form 10-Q for the period ending on September 30, 2004. The Company noted that the filing delay was due to the Audit Committee's investigation. The Company remarked, however, that its stock would remain listed pending the outcome of its appeal of the NASDAQ's decision. [FN7]

> FN7. *Id.* ¶¶ 111-12.

On November 24, 2004, in a press release entitled, "Aspen to Restate Four Years' Results," AspenTech explained that the Audit Committee had identified five transactions in 2000 and 2001 that were accounted for improperly. [FN8] The Company explained that its improper accounting for these transactions affected its results for fiscal years 2000 through 2004. The Company also noted that the Audit Committee had decided to expand its investigation to include certain agreements entered into during fiscal years 2003 and 2004. [FN9]

> FN8. *Id.* ¶ 113.
>
> FN9. *Id.*

By January 31, 2005, the Audit Committee had identified sixteen transactions the Company entered into during fiscal years 2000, 2001, and 2002, which were accounted for improperly. [FN10] The recorded revenue for these transactions ranged from $207,000 to $4.3 million. The Company "overstated" revenue for these transactions in fiscal years 2000 through 2002 and "understated" revenue in fiscal years 2003 and 2004. The Audit Committee also determined that the Company should have recorded "software license sales to resellers beginning in the fiscal year [2001] ... on a sell-through or consignment basis of accounting rather than a sell-in or upfront basis of accounting." [FN11]

> FN10. *Id.* ¶ 117.
>
> FN11. *Id.*

*2 On March 15, 2005, AspenTech announced that the Audit Committee had completed its investigation. The Company restated its financials for the 2000 through 2004 fiscal years and filed an amendment to its Annual Report on Form 10-K/A with the SEC. [FN12] The Company explained that the financial restatements were driven by its improper accounting of license transactions and software license sales. In addition, the Company "determined that accounting for tax withholdings involving transactions in Japan and an associated change in Japanese tax law required restatement." [FN13] As a result of the restatements, the Company's total revenues for fiscal years 2004, 2003, and 2002 increased by 2%, 7%, and 1%, respectively, and decreased by 4% in 2001 and 3% in 2000. [FN14]

> FN12. *Id.* ¶ 118.
>
> FN13. *Id.*
>
> FN14. *Id.*

In its Form 10-K/A, AspenTech indicated that Deloitte & Touche LLP had conducted an audit of the Company's restated financials. [FN15] In its report, Deloitte & Touche LLP identified a " 'material weakness' with respect to [the Company's] software

license revenue recognition controls and ... a 'reportable condition' with respect to [the Company's] process for recording restructuring accruals." [FN16] Based on this evaluation, AspenTech's chief executive officer and chief financial officer concluded that the Company's "disclosure controls and procedures were not effective as of June 30, 2004." [FN17]

> FN15. *Id.* ¶ 121.
>
> FN16. *Id.*
>
> FN17. *Id.*

Plaintiff alleges that during the relevant period, July 1, 1999 to the present, Defendants concealed the "prematurely recognized revenue for software licences and service agreement transactions ... to artificially inflate the price of the Company's shares" and failed to disclose that the Company lacked adequate internal controls. [FN18] Plaintiff also claims that "[w]hile in possession of the undisclosed material adverse information concerning improper revenue recognition," certain Defendants sold shares of AspenTech stock for proceeds totaling approximately $13 million. [FN19] Due to Defendants' actions, Plaintiff claims that "AspenTech's market capitalization has been damaged by over $11 billion." [FN20] Consequently, Plaintiff, on behalf of the Company, advances the following six counts against Defendants: (1) insider selling, (2) breach of fiduciary duty, (3) abuse of control, (4) gross mismanagement, (5) waste of corporate assets, and (6) unjust enrichment. [FN21] Plaintiff, however, did not make demand on AspenTech's Board before initiating this derivative action. [FN22]

> FN18. *Id.* ¶ ¶ 53, 106. Plaintiff further asserts that Defendants used the Company's inflated stock as partial consideration to acquire the Icarus Corporation and Hyprotech Ltd. *Id.* ¶ 55.
>
> FN19. *Id.* ¶ 125.
>
> FN20. *Id.* ¶ 123.
>
> FN21. *Id.* ¶ ¶ 132-59.
>
> FN22. *Id.* ¶ 129.

## Discussion

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." [FN23] In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact." [FN24] Rather, this court must accept as true the facts alleged in the complaint and construe all reasonable inferences in favor of Plaintiff. [FN25]

> FN23. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)) (quotations omitted).
>
> FN24. *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987).
>
> FN25. *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16 (1st Cir.1998).

**\*3** Before bringing a derivative suit on behalf of a corporation, a plaintiff must "demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." [FN26] Under Rule 23.1 of the Federal Rules of Civil Procedure, a plaintiff's derivative complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." As this court has previously noted, "Simply stated, [Rule 23.1] places the burden on the shareholder 'to demonstrate why the directors are incapable of doing their duty." ' [FN27]

> FN26. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95-96 (1991).
>
> FN27. *Grossman v. Johnson,* 89 F.R.D. 656, 659 (D.Mass.1981) (quoting *In re Kauffman Mut. Fund Actions,* 479 F.2d 257, 263 (1st Cir.1973)).

Plaintiff argues that he did not make demand on AspenTech's Board "because such a demand would have been a futile, wasteful and useless act." [FN28] Because AspenTech is a Delaware corporation, the Parties agree that Delaware law controls the futility exception. [FN29] And because Plaintiff "does not challenge a board decision, but rather challenges more general board action or a lack of action," the Parties also agree that this court should apply the demand futility standard articulated by the Delaware

Case 3:04-cv-30032-MAP     Document 40     Filed 08/30/2005     Page 10 of 13

2005 WL 1995389                                                                                                     Page 4
--- F.Supp.2d ----, 2005 WL 1995389 (D.Mass.)
**(Cite as: 2005 WL 1995389 (D.Mass.))**

Supreme Court in *Rales v. Blasband.* [FN30]

> FN28. Am. Compl. ¶ 129.
>
> FN29. Pl.'s Mem. Supp. his Resp. and Objection to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 6; Aspen Technology, Inc.'s, Current Outside-Directors' and Former Outside-Directors' Mem. Supp. Mot. to Dismiss ("Defs.' Mot. to Dismiss") at 2 n.1.
>
> FN30. Pl.'s Resp. at 7; Aspen Technology, Inc.'s, Current Outside-Directors' and Former Outside-Directors' Reply Mem. at 2-3.

Under the *Rales* test,

> [A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile. [FN31]

> FN31. *Rales v. Blasband,* 634 A.2d 927, 934 (Del.1993).

When Plaintiff filed his original complaint, there were eight directors on AspenTech's Board--one inside director, Lawrence B. Evans ("Evans"), and seven outside directors, Donald P. Casey ("Casey"), Mark Fusco ("Fusco"), Gary E. Haroian ("Haroian"), Stephen M. Jennings ("Jennings"), Douglas A. Kingsley ("Kingsley"), Joan C. McArdle ("McArdle"), and Michael Pehl ("Pehl"). [FN32] Plaintiff, therefore, must create a reasonable doubt concerning the disinterestedness or independence of at least four of these directors. [FN33]

> FN32. *See* Am. Compl. ¶¶ 129, 129(d), (i).
>
> FN33. *See Beam v. Stewart,* 845 A.2d 1040, 1046 n.8 (Del.2004).

A. *Interest*

"A director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." [FN34] "In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision" [FN35] The "mere threat" of personal liability, however, is insufficient to challenge the disinterestedness of a director. [FN36] Rather, a plaintiff must articulate particularized facts showing that a director faces "a substantial likelihood" of liability. [FN37]

> FN34. *Seminaris v. Landa,* 662 A.2d 1350, 1354 (Del. Ch.1995).
>
> FN35. *Rales,* 634 A.2d at 936.
>
> FN36. *Id.*
>
> FN37. *Id.*

*4 Plaintiff alleges that directors Fusco, Haroian, and McArdle are interested because they served on the Audit Committee when the Company issued materially false and misleading financial statements. [FN38] As members of the Audit Committee, Plaintiff notes that Fusco, Haroian, and McArdle had to ensure "the integrity of the Company's financial statements; the Company's compliance with legal and regulatory requirements; the independent auditor's qualifications and independence; and the performance of the Company's internal audit function and independent auditors." [FN39] Plaintiff contends that these directors breached their fiduciary duties and face a substantial likelihood of liability because "the Audit Committee recommended that the Board include the improper audited consolidated financial statements *not just for one quarter or for one year,* but in AspenTech's Annual Report on Form 10-K for FY:00, FY:01, FY:02, FY:03 and FY:04." [FN40]

> FN38. Am. Compl. ¶ 129(e).
>
> FN39. *See id.* ¶ 31.
>
> FN40. *Id.* ¶ 129(e) (emphasis added).

Defendants argue, however, that Plaintiff has not "provide[d] any particularized allegations regarding the knowledge of any member of the Audit Committee" concerning the transactions that were accounted for improperly during the 1999 through 2002 fiscal years. [FN41] Plaintiff does not deny this. [FN42] Instead, Plaintiff insists that Fusco's, Haroian's, and McArdle's "knowledge can be inferred from [his] particularized pleading of their Audit Committee duties." [FN43] Yet, in the amended complaint, Plaintiff notes that Fusco and Haroian served on the Audit Committee during only the 2004

fiscal year. [FN44] During Fusco's and Haroian's tenure, therefore, the Audit Committee recommended that the Board include improper audited financials on the Company's Form 10-K for *just one year.* As Plaintiff implies in his own amended complaint, failing to detect improperly audited financials for just one year is insufficient to show that Fusco and Haroian face a substantial likelihood of liability because AspenTech indemnifies its directors against liability for ordinary breaches of the duty of care. [FN45] And while McArdle served on the Audit Committee from fiscal years 2000 through 2004, Plaintiff's conclusory allegation that McArdle breached her supervisory duties, without more, fails to raise a reasonable doubt that McArdle is disinterested. [FN46]

> FN41. Defs.' Mot. to Dismiss at 11.
>
> FN42. Pl.'s Resp. at 12.
>
> FN43. *Id.*
>
> FN44. Am. Compl. ¶ 129(e). Both Fusco and Haroian became directors of AspenTech in December of 2003. *Id.* ¶¶ 19-20.
>
> FN45. *See Guttman v. Huang,* 823 A.2d 492, 501 (Del. Ch.2003) ( "[I]n the event that the charter insulates the directors from liability for breaches of the duty of care, then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." (emphasis in original)); *Certification of Incorporation of Aspen Tech., Inc.,* at 3, http://www.sec.gov/Archives/edgar/data/929940/000110465903019446/a03-2795_1ex4.htm. This court may consider public filings with the SEC when deciding a motion to dismiss. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).
>
> FN46. *See In re Xcel Energy, Inc.,* 222 F.R.D. 603, 607 (D.Minn.2004) (looking to Delaware law for guidance) (holding that generalized statements that Audit Committee members "knew or should have known" of false statements did "not constitute facts pleaded with particularity"); *Rattner v. Bidzos,* No. Civ.A. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003) (noting that conclusory allegations of directors' knowledge of wrongdoing based on their status as directors does not satisfy the demand futility pleading standard); *In re Sonus Networks, Inc. Derivative Litig.,* No. 040753, 2004 WL 2341395, at *1, *4 (Mass.Super.Ct. Sept. 27, 2004) (finding that "generalized allegations reflecting poor supervision over financial statements" by members of the Audit Committee and other directors did not excuse pre-suit demand).

Plaintiff's reliance on *In re Abbott Laboratories* and *In re Oxford Health Plans, Inc.* is misplaced. In *Abbott Laboratories,* the Seventh Circuit found that demand was excused where Audit Committee members knew of the company's noncompliance with Food and Drug Administration regulations, and the company failed to act for *six years.* [FN47] In *Oxford Health Plans,* the District Court concluded that demand was futile where the complaint indicated, among other things, that Audit Committee members were aware of problems, such as insufficient financial controls and "repeated misrepresentations to the financial markets regarding the extent and likely duration of [the company's] financial crisis," and still allowed the company "to continue its rapid and aggressive campaign of growth." [FN48] Such facts are not present in this case.

> FN47. *In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795, 806, 809 (7th Cir.2003).
>
> FN48. *In re Oxford Health Plans, Inc., Secs. Litig.,* 192 F.R.D. 111, 114-15 (S.D.N.Y.2000).

*5 Plaintiff's argument that the Audit Committee and other Board members face liability under a *Caremark* claim also fails. [FN49] "[A] claim for failure to exercise proper oversight is one of, if not the, most difficult theories upon which to prevail." [FN50] To advance such a claim, Plaintiff must plead particularized facts showing that

> FN49. *See* Pl.'s Resp. at 15 n.19 (citing *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch.1996)); Am. Compl. ¶ 129(e)(iii).
>
> FN50. *Rattner,* 2003 WL 22284323, at *12.

the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation. [FN51]

> FN51. *Guttman v. Huang,* 823 A.2d 492, 507 (Del. Ch.2003).

AspenTech had an Audit Committee that met thirty-nine times from fiscal years 2000 through 2004, [FN52] and Plaintiff has not plead that the Audit Committee had "clear notice" of the accounting improprieties.

> FN52. Am. Compl. ¶ 30.

Moreover, Plaintiff's argument that all the directors are interested because they are not covered by the Company's insurance in suits brought against them directly by the Company is unavailing. [FN53] The Delaware Court of Chancery found this argument "to be nothing more than variations on the 'directors suing themselves' and 'participating in the wrongs' refrain." [FN54] Such conclusory allegations fail to demonstrate that AspenTech's directors face a substantial likelihood of liability. [FN55]

> FN53. *Id.* ¶ 129(s).
>
> FN54. *Caruana v. Saligman,* Civ. A. No. 11135, 1990 WL 212304, at * 4 (Del. Ch. Dec. 21, 1990) (quoting *Decker v. Clausen,* Civ. A. Nos. 10,684-85, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)) (internal quotations omitted).
>
> FN55. *See id.*

B. *Independence*

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." [FN56] Plaintiff argues that directors Pehl and Kingsley lack independence because they are long-time business associates and will not take action against one another. [FN57] Plaintiff highlights that Pehl has been a director of Advent International Corporation ("Advent") since 2001, and Kingsley has been a managing director of Advent since 1997. [FN58] But "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." [FN59] Moreover, other than generalized allegations

against all the directors, Plaintiff has not plead particularized facts showing that Pehl or Kingsley are interested. [FN60]

> FN56. *Aronson v. Lewis,* 473 A.2d 805, 816 (Del.1984), overruled in part on other grounds by *Brehm v. Eisner,* 746 A.2d 244, 253 (Del.2000).
>
> FN57. Am. Compl. ¶ 129(g)(i).
>
> FN58. *Id.*
>
> FN59. *Beam v. Stewart,* 845 A.2d 1040, 1050 (Del.2004).
>
> FN60. *See Brehm,* 746 A.2d at 258.

Plaintiff also contends that Haroian, Kingsley, McArdle, and Pehl are beholden to Casey, Fusco, and Jennings due to the latter directors' positions on AspenTech's Compensation Committee. [FN61] The fact that directors Haroian, Kingsley, McArdle, and Pehl receive a $25,000 annual fee for their services, a $2,000 fee for their attendance at each Board meeting, and stock options does not make these directors beholden to the members of the Compensation Committee. [FN62] Plaintiff also has not plead any particularized facts to show that Casey, Fusco, or Jennings are interested. [FN63]

> FN61. Am. Compl. ¶ 129(c).
>
> FN62. *See White v. Panic,* 793 A.2d 356, 366 (Del. Ch.2000); Am. Compl. ¶ 129(i).
>
> FN63. In the amended complaint, Plaintiff notes that Jennings served on the Audit Committee during the 2003 fiscal year. Am. Compl. ¶ 29. Plaintiff, however, does not further discuss this issue in the amended complaint or in his response. Yet, similar to Fusco and Haroian, Jennings does not face a substantial likelihood of liability due to his purported one year of service on the Audit Committee.

Plaintiff further argues that the Board lacks independence because "Evans, as a principal founder and Chairman and CEO, effectively controlled the Board." [FN64] This court disagrees. First, even assuming that Evans is interested, Plaintiff's bald assertion that Evans controlled the Board does not particularize how "the directors are 'beholden' to [Evans] or so under [his] influence that their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discretion would be sterilized." [FN65]

>FN64. *Id.* ¶ 129(b).

>FN65. *See Rales v. Blasband,* 634 A.2d 927, 936 (Del.1993).

**\*6** Second, Plaintiff has not plead particularized facts demonstrating that Evans is interested. Plaintiff contends that Evans is interested because he sold stock during the restatement period. [FN66] Plaintiff notes that in December of 2000, more than four years before the Company restated its financials, Evans sold 5,000 shares of the Company's stock for $150,000. [FN67] Yet Plaintiff's conclusory allegation that Evans sold stock during the relevant period, without "any particularized basis" that he knew of the accounting improprieties, does not show that Evans faces a substantial likelihood of liability. [FN68] In addition, Plaintiff alleges that Evans lacks independence from members of the Compensation Committee due to the "substantial monetary compensations" he receives from the Company. [FN69] This fact alone, however, is insufficient to challenge Evans's independence. [FN70] And, as noted above, Plaintiff has failed to plead particularized facts to show that the members of the Compensation Committee are interested.

>FN66. Am. Compl. ¶ 129(a)(i).

>FN67. *Id.* ¶ 125.

>FN68. *See Guttman v. Huang,* 823 A.2d 492, 504 (Del. Ch.2003).

>FN69. Am. Compl. ¶¶ 129(c)-(d).

>FN70. *In re Sagent Tech., Inc., Derivative Litig.,* 278 F.Supp.2d 1079, 1089 (N.D.Cal.2003) (noting that if such "allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand").

Conclusion

For the foregoing reasons, Plaintiff has failed to raise a reasonable doubt that, at the time the complaint was filed, Evans, Casey, Fusco, Haroian, Jennings, Kingsley, McArdle, or Pehl were disinterested or independent. As such, Plaintiff has not plead sufficient facts with particularity to demonstrate that demand on AspenTech's Board was futile. Accordingly, Plaintiff's amended complaint is DISMISSED with prejudice.

AN ORDER WILL ISSUE.

--- F.Supp.2d ----, 2005 WL 1995389 (D.Mass.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3114365 (Trial Pleading) Verified Shareholder Derivative Complaint For, Breach of Fiductak Duty, Abuse of Control, Gross Mismanagement, Waste of Corporate Assets and Unjust Enrichment (Dec. 01, 2004)

END OF DOCUMENT